IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| O&G LEASING LLC | ) | Case No. 10-01851 EE |
| PERFORMANCE DRILLING COMPANY LLC | ) | Case No. 10-01852 EE |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | |

**MOTION FOR ORDER DIRECTING JOINT ADMINISTRATION
OF AFFILIATED CASES PURSUANT TO RULE 1015(b)**

COME NOW each of the above-captioned Debtors and debtors-in-possession (collectively, the "**Debtors**" or the "**Company**") in these reorganization proceedings, and submit their *Motion for Order Directing Joint Administration of Affiliated Cases Pursuant to Rule 1015(b)* (the "**Motion**"). In support of the Motion, the Debtors show as follows:

1. Each of the above-captioned Debtors has filed its voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

2. The Debtors remain in possession of their property and continue to operate their businesses as debtors-in-possession pursuant to §§ 1107 and 1108. No trustees, examiners or committees have been appointed in these cases.

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of these cases is proper in this Court pursuant to 28 U.S.C. § 1408. The relief requested in this Motion is sought pursuant to Bankruptcy Code § 105(a), Bankruptcy Rule 1015(b) and Local Rule 1015-1.

1

4. The Debtors have filed this Motion contemporaneously with their petitions, seeking to procedurally consolidate their cases for administrative purposes only. The Debtors are not seeking to substantively consolidate these cases.

### I. Company Background and History

A. *Formation and Business*

5. The Debtors own and operate five (5) oil and gas drilling rigs, three (3) being 1000HP, one (1) 1200HP and one (1) 1500HP. Debtor O&G Leasing, LLC ("**O&G**") owns the rigs and leases them to its operating subsidiary, Performance Drilling Company, LLC ("**PDC**"). PDC currently employs approximately one hundred (100) salaried and hourly employees. PDC's business is seeking contracts with exploration companies and providing drilling rigs to drill for oil and gas.

6. Drilling rigs are typically engaged by contract with exploration companies under terms known as "day rate contracts" or "turnkey contracts". A "day rate contract" is one under which PDC would be paid a fixed amount per day to drill, and as long as the rig is available and able to perform, the Company is entitled to be paid the applicable day rate. Under these types of contracts, the Company is usually responsible for certain expenses related to operation of the rig (maintenance, repair, etc.). A "turnkey contract" is one under which the Company assumes much more responsibility and risk and is responsible for all defined costs associated with the drilling of the well.

7. PDC has its own mechanics, electricians, safety compliance supervisor, drilling supervisors, marketing/sales personnel and other supervisory management employees. PDC maintains a substantial inventory of parts for all of its rigs. This capability minimizes downtime and maximizes the utilization of working rigs, enabling PDC to realize as much revenue as possible.

B.   *Summary of Financing*

8.   Beginning in 2006 with its inception, O&G, through its placement agent Crews & Associates, Inc., began issuing certain debentures (each individually, a "**Prior Debenture**" or collectively, the "**Prior Debentures**") to acquire components for and construct its rigs. The proceeds raised by the issuance of each of the Prior Debentures were used to finance the costs of acquiring or constructing an individual oil and gas drilling rig.

9.   Each Prior Debenture was purportedly secured by independent collateral (the particular rig financed) and contained varying revenue pledges and payment terms. None of the Prior Debentures were cross collateralized, nor were any revenues derived from the rig securing any particular Prior Debenture permitted to be used by the Company to make payments on any other series of Prior Debenture.

10.   In late 2008, the oil and gas drilling market collapsed along with the overall credit markets (described further below). This collapse, combined with the disparity in the terms of the Prior Debentures regarding the pledged revenue structure, created significant impediments to the Company's ability to make scheduled payments on the Prior Debentures. The Company approached its placement agent, Crews & Associates, Inc., advising that it could not make scheduled payments on the Prior Debentures and suggested at least a one year forbearance of all payments to allow for economic recovery. Instead, Crew & Associates, Inc. formulated a plan to create a unified debt structure whereby all Prior Debentures would be exchanged and cancelled in return for a new debenture to be issued under new terms and a new indenture.

11.   After requisite approval by 75% of each series of Prior Debentures holders, the exchange was consummated (the "**2009 Exchange**") and the Prior Debentures were cancelled and replaced in whole by the 2009 Debentures, which were issued in two (2) series: (a)

$25,955,000 of 10.50% Debentures, Senior Series 2009A due September 15, 2013 and (b) $7,610,000 of 16.00% Debentures, Senior Series 2009B due September 15, 2013 (collectively, the "**2009 Debentures**"). First Security Bank of Searcy, Arkansas, an affiliate of Crews & Associates, Inc, is the trustee ("**Trustee**").

12. The 2009 Debentures purport to be secured by grants of first priority security interests in and liens on four (4) of O&G's rigs and all associated drilling contracts, proceeds and revenues, and a second priority security interest and lien on O&G's remaining rig (Rig 48). As further collateral security for the 2009 Debentures, the Debtors' parent company, SAJAC O&G Investors, LLC, executed a pledge agreement purporting to pledge its membership interests in O&G. The Debtors contest the validity, enforceability and perfection of these purported security interests and liens.

13. Prior to the 2009 Exchange, O&G refinanced Rig 48 by obtaining a $5.25 million loan from Washington State Bank and paying off certain prior debentures. Washington State Bank holds a first priority security interest in and lien on Rig 48.

14. In relation to events surrounding the 2009 Exchange, the Washington State Bank credit facility and the acquisition and construction of Rig 14, O&G was forced to obtain additional private funding by securing loans from Octane Funding, LLC and Octane Funding II, LLC (collectively "**Octane**"), companies affiliated with the Debtors. Octane loaned O&G approximately $4.5 million as supplementary financing necessary to acquire Rig 14 and to meet other requirements. The Debtors granted Octane security interests in and liens on all of its assets. Octane is currently owed approximately $4.2 million.

C.  *Cause of Current Financial Difficulties*

15.  The oil and gas drilling market collapsed with the overall financial and credit markets in late 2008.  Many experts believed the problem would be short term for drilling companies, but demand for oil and gas drilling continued to plummet through 2009.  Oil and natural gas prices dropped 40-60% and the number of drilling rigs in use in the marketplace decreased by half based on reported utilization rates.  More land-based drilling rigs were "stacked" than in use and day rates naturally dropped with demand.  Those rigs that were still being used were those with higher horsepower (in excess of 1000HP) capable of drilling deeper wells or those under contract.

16.  Due to the lack of demand and utilization, and corresponding drop in drilling rates, Company revenues decreased substantially and left the Company severely overleveraged.  The value of O&G's drilling rigs also plummeted along with the overall industry.

17.  The Company believes the market has bottomed and is just now starting to improve.  PDC has two (2) of its rigs under long term (greater than 12 months) contracts and has secured work on the spot market for its remaining three (3) rigs.  PDC is actively marketing its services and rigs and believes it will have at least four (4) rigs working for much of the remainder of 2010.

D.  *Efforts to Restructure Pre-Petition*

18.  Due to the events described above, the Company was not able to make its semi-annual interest payment that was due on March 15, 2010, under the 2009 Debentures.  The Company engaged General Capital Partners as a financial and restructuring advisor in February 2010 with the stated goal of assisting the Company with developing and implementing a

5

restructuring plan to present to the holders of the 2009 Debentures without the need for reorganization proceedings in bankruptcy.

19. The Company and GCP analyzed and developed the bases for a restructuring of the Company's obligations in an effort to maximize value for the bondholders and engaged with the Trustee to provide this and related financial information in hopes of obtaining the consent of the holders of the 2009 Debentures to a restructuring proposal. For several reasons, this process was not successful, although the Company believes that significant progress was made toward enhancing the success of this reorganization.

**II. Joint Administration is in Best Interests of Estates and all Interested Parties**

20. Bankruptcy Rule 1015(b) authorizes joint administration of separate cases when filed by affiliated debtors. The Debtors constitute "affiliates" as the term is defined in Bankruptcy Code § 101(2) due to the fact that PDC is wholly owned by O&G.

21. More importantly, the Debtors' business operations, management structure, financing and business purpose are closely related, as O&G owns the drilling rigs that it leases to PDC which uses the rigs in its drilling operations. O&G has no employees.

22. PDC and O&G are each critical to the other's ability to reorganize.

23. As a result of the nature of the relationships of the Debtors, their common operating structure and consolidated financial obligations, the Debtors believe that the interests of all estates and all interested parties therein require that their cases be jointly administered under Bankruptcy Rule 1015(b).

24. Additionally, joint administration of these cases will result in the significant reduction in administrative expenses and effort in the handling of these cases for all parties. The expenses of the Debtors and their counsel will be reduced due to their ability to consolidate functions such as filing and noticing. Furthermore, the Court and the Clerk will enjoy reduced

expense of time and effort upon administrative consolidation of these cases, furthering the interests of judicial economy.

25. The Debtors suggest that the cases be jointly administered under the *In re: O&G Leasing, LLC* case, Case No. 10-01851 (the "**Lead Case**"), upon entry of an Order granting this Motion, all documents filed in these cases should be filed with the following caption:

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | CASE NO. 10-01851 EE |
| O&G LEASING, LLC, *et al.* | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

26. The Debtors request that the Clerk of Court maintain separate claims registers for each case and direct that all proofs of claim be filed with the Clerk of Court under the applicable Debtor's original case number and docketed on its claims register. Further, the Debtors propose to prepare and file a consolidated creditor matrix in the Lead Case.

WHEREFORE, the Debtors request that the Court enter an Order directing joint administration of the Debtors' cases under the Lead Case and that all pleadings and documents be filed herein as set forth above. The Debtors request such other relief that the Court deems necessary and just.

THIS the 24th day of May, 2010.

        Respectfully submitted,

        **O&G LEASING LLC and**
        **PERFORMANCE DRILLING COMPANY LLC**

        By: /s/ *Douglas C. Noble*

        Douglas C. Noble, MS Bar No. 10526
        **McCraney, Montagnet & Quin, PLLC**
        602 Steed Road • Suite 200
        Ridgeland, Mississippi 39157
        Telephone: (601) 707-5725
        Facsimile:  (601) 510-2939
        Email: dnoble@mmqlaw.com
        www.mmqlaw.com

## **VERIFICATION**

STATE OF MISSISSIPPI
COUNTY OF HINDS

I, JEFF GOODWIN, Chief Financial Officer of Debtors O&G Leasing, LLC and Performance Drilling Company, LLC, acknowledge and state on my oath that the matters set forth and contained in the above and foregoing *Motion for Order Directing Joint Administration of Affiliated Cases Pursuant to Rule 1015(b)* are, to the best of my knowledge and understanding, true and correct as stated therein and that the relief requested therein is warranted and will ease administration burden of the court and the parties.

JEFF GOODWIN

SWORN TO AND SUBSCRIBED BEFORE ME on this the 24th day of May, 2010.

Notary Public

My Commission Expires:

(SEAL)

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 67055
JOY K. McCALLUM
Commission Expires
Sept. 13, 2013
RANKIN COUNTY

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing pleading was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically and was separately served by e-mail on the following:

Ronald H. McAlpin
Trial Attorney, Office of the U.S. Trustee
ronald.mcalpin@usdoj.gov

Jim F. Spencer
WATKINS & EAGER
jspencer@watkinseager.com

SO CERTIFIED, this the 24th day of May, 2010.

/s/ *Douglas C. Noble*