**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| In re: ) | |
| ) | |
| O&G LEASING, LLC ) | Case No. 10-01851 EE |
| PERFORMANCE DRILLING COMPANY, LLC ) | Case No. 10-01852 EE |
| ) | Chapter 11 |
| Debtors. ) | Joint Administration Requested |
| ) | |

**EMERGENCY MOTION PURSUANT TO §§ 361 AND 363 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 4001 FOR *INTERIM* AND FINAL ORDERS
(1) AUTHORIZING USE OF CASH COLLATERAL;
(2) GRANTING ADEQUATE PROTECTION;
(3) SCHEDULING AND APPROVING METHOD OF NOTICE OF FINAL HEARING;
and (4) FOR RELATED RELIEF**

COME NOW the above-captioned Debtors and debtors-in-possession (collectively, the "**Debtors**" or the "**Company**") in these reorganization proceedings, by and through their undersigned attorneys, and file this *Emergency Motion Pursuant to §§ 361 and 363 of title 11 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules for Interim and Final Orders (1) Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; (3) Scheduling and Approving Method of Notice of Final Hearing; and (4) for Related Relief* (the "**Motion**") with respect to cash collateral in which the holders of those certain 10.50% Debentures, Senior Series 2009A and those certain 16.00% Subordinate Debentures, Series 2009B (collectively the "**Debentures**") issued by Debtor O&G Leasing, LLC, in the aggregate principal amount of $33,565,000 assert liens and security interests. First Security Bank serves as the trustee for the Debentures (the "**Trustee**"). The Debtors request immediate relief through entry of an *interim* order in substantially similar form to that filed herewith (the "**Interim Order**") pending final hearing. In support of this Motion, the Debtors respectfully state as follows:

1

## JURISDICTION and PRELIMINARY STATEMENT

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory bases for the relief requested herein are §§ 361 and 363 of title 11 of the United States Code (11 USC. § 101 *et seq.*, as amended, the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3. On May 21, 2010 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since that time, the Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No committees have been appointed and no request for appointment of a trustee or examiner has been made.

4. The Debtors have filed a their *Motion for Order Directing Joint Administration of Affiliated Cases Pursuant to Rule 1015(b)* ("**Joint Administration Motion**") requesting that these affiliated cases be jointly administered but not substantively consolidated. This Court is referred to ¶¶ 5-19 for a detailed discussion of the factual background and circumstances surrounding the Debtors' commencement of these Chapter 11 cases. Capitalized terms not defined herein are as defined in the Joint Administration Motion.

5. The Debtors contest the validity, extent, perfection and/or priority of the liens and security interests asserted by the Trustee. The Debtors will be filing as soon as possible an adversary proceeding pursuant to Rule 7001(2) of the Bankruptcy Rules to seek, among other things, avoidance of certain asserted security interests and to obtain adjudication of all related issues. Accordingly, all relief proposed to be granted to the Trustee for the benefit of the holders of Debentures is conditional pending such determination. The Debtors file this Motion as a

2

precautionary measure given a *bona fide* dispute exists as to the claims of the Trustee, but the Debtors also propose measures that will nevertheless provide adequate protection to the asserted interests of the Trustee in the event that the Debtors' position is proven incorrect.

## RELIEF REQUESTED

6. The Debtors request that the Court grant them (a) authorization and approval, pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 4001(c)(2), to (i) use cash which may constitute cash collateral on an *interim* basis in accordance with the Interim Order and in accordance with the budget attached hereto as <u>Exhibit A</u> (as may be amended, supplemented, modified or extended from time to time, the "**Budget**") (however, with respect to the Budget, on a weekly basis the Debtors seek authority to exceed each line item in the Budget by up to ten percent (10%), so long as the aggregate amount of the Budget on a monthly basis is not exceeded by more than five percent (5%)), (ii) grant conditional adequate protection liens to the Trustee and (iii) pending a final hearing on this Motion (the "**Final Hearing**"), obtain use of cash which may constitute cash collateral on a limited and *interim* basis through and including the date on which the Final Order is entered; and (b) in accordance with Bankruptcy Rule 4001(b)(2), that this Court schedule the Final Hearing and approve notice with respect thereto, all as more fully described in the proposed Interim Order.

7. Pursuant to § 363(c)(2) of the Bankruptcy Code, a debtor in possession may use cash collateral with court approval and after notice and a hearing. The Debtors seek authority to use all cash and proceeds of property created and obtained in the ordinary course of business (collectively, to the extent such cash constitutes cash collateral, the "**Cash Collateral**") in which the Trustee asserts a valid and perfected security interest. Section 363(e) permits the Court to condition the use of cash collateral "as is necessary to provide adequate protection of" the

3

asserted interests of the Trustee in the Cash Collateral. Further, pursuant to § 361, when a secured party's interest in cash collateral is entitled to adequate protection, such adequate protection may be provided by, among other things, an additional or replacement lien on assets generated post-petition "to the extent that such ... use ... results in a decrease in value of such entity's interest in the cash collateral."

8. The Trustee asserts liens and security interests on essentially all of the Debtors' assets, including but not limited to first priority liens on four (4) oil and gas drilling rigs and the proceeds derived from the Debtors' operation of those rigs, bank accounts and assignments of certain contracts relating thereto and second priority liens on one (1) drilling rig (collectively, the "**Collateral**") as security for the Debentures. The lien and security rights asserted against the Debtors primarily arise under the following documents:

   a. Amended and Restated Trust Indenture dated as of September 15, 2009 (the "**2009 Indenture**");

   b. Assignment of Drilling Contracts, Lease, Rents, Revenues and Pledge and Security Agreement in favor of Defendant Trustee dated September 15, 2009 (the "**Security Agreement**");

   c. Deposit Account Control Agreement dated September 15, 2009; and

   d. UCC Financing Statements filed on various dates prior to September 15, 2009, and one UCC Financing Statement filed on March 8, 2010.

9. The Debtors propose to grant a conditional continuing and/or replacement lien to the Trustee in accordance with §§ 361(2) and 552(b)(1) of the Bankruptcy Code on post-petition assets, having the same respective priority as the pre-petition liens, to secure any post-petition diminution in value thereof to the extent such interests are entitled to adequate protection against such diminution under the Bankruptcy Code.

10. As reflected in the Budget, the Debtors' operations show a projected accumulation of cash, net of operating expenses but not including payment of any debt service

4

(net operating income, or "**NOI**").  The Debtors propose to retain all NOI in a DIP account pending final determination of the validity and extent of Trustee's asserted liens.  Given positive NOI and the proposed isolation of excess cash, the Trustee's interests (if valid) in the Debtors' Cash Collateral will be adequately protected.

11.     The Debtors do not believe that any tangible personal property that the Trustee asserts constitutes its Collateral is depreciating in value from use or from passage of time that is not addressed by expenditures contained in the Budget providing for maintenance/capital expenditure, payment of taxes and insurance and satisfaction of other regular operating costs associated with ownership and operation of oil and gas drilling rigs.  Consequently, the Debtors submit that no further conditional adequate protection is required under § 361(1) with respect to such personal property.

## DISCUSSION

### A.  The Need for Use of Cash Collateral.

12.     The Debtors have an immediate need to use Cash Collateral for the purpose of meeting necessary expenses incurred in the ordinary course of their businesses, including payroll, costs of continued provision for goods and services to the residents of their facilities and the costs associated with their restructuring and these proceedings.  Cash Collateral, consisting largely of future receipts from continued operations, is sufficient to fund the Debtors' continued operations during the period set forth in the Budget.

13.     Additionally, the Budget provides for payment of restructuring costs, including periodic payments to professionals engaged in these chapter 11 cases.  As long as The Trustee is adequately protected, the Debtors' use of Cash Collateral to pay their professionals is allowed.  *See In re Proalert, LLC*, 314 B.R. 436 (9th Cir. B.A.P. 2004) ("plain language of § 363 allows a

debtor to use cash collateral [to pay its professionals] if the secured creditor's interest is adequately protected"); *In re Coventry Commons Assoc.*, 149 B.R. 109 (Bankr. E.D. Mich. 1992) (a debtor may use cash collateral to pay professional fees if the secured creditor is adequately protected, without regard to requirements of section 506 of the Bankruptcy Code); *In re Tri-County Water Ass'n., Inc.*, 91 B.R. 547, 550 (Bankr. D.S.D. 1988) (generally, only unencumbered assets may be used to pay administrative claimants, but such claims may be paid from collateral if they resulted in a direct benefit to the secured creditor, if the secured creditor consents or if the secured creditor is adequately protected).  As discussed above, because the asserted interests of the Trustee are sufficiently adequately protected, payment of the Debtors' professionals' fees and expenses using the Cash Collateral is proper.

14.     Without use of Cash Collateral, the Debtors will not be able to pay ordinary business expenses or pay their employees, of which there are currently approximately 100 Company-wide.  Inability to use Cash Collateral on the basis set forth in the Budget would likely threaten the ongoing operations of the Debtors' businesses and would most certainly cause irreparable harm to the Debtors' estates and the counterparties to current drilling contracts (which provide all sources of operating revenue).  Interruption of performance of these contracts threatens termination of the only source of funds available to the Debtors, which then makes liquidation a virtual certainty.  It is therefore critical that the Motion be heard and the relief requested herein be granted on an emergency *interim* basis.

### B.  Proposed Adequate Protection.

15.     Whether or not a creditor is adequately protected is determined on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987) (stating that the concept of adequate protection is a flexible one and that courts should determine whether it exists on a case-by-case basis); *In re Self*, 239 B.R. 877, 881 (Bankr. N.D. Tex. 1999) (determination of adequate

protection is not an "exact science"; rather, it requires a court to balance all relevant factors); *In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (stating that adequate protection is determined on a case-by-case basis).

16. Adequate protection exists by virtue of augmentation (or preservation) of the value of a secured creditor's collateral. *See In re Ralar Distribs., Inc.*, 166 B.R. 3, 6 (Bankr. D. Mass. 1994) ("[a]ctivities of a debtor can enhance collateral value and thereby provide adequate protection"); *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. D. Mass. 1988) ("[T]he stream of cash collateral will likely remain at an approximate even level over a sustained period, with new proceeds replacing old, the constant nature of this stream gives the [secured lender] protection for its cash collateral."); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716-717 (Bankr. D. Del. 1996) (court found secured creditor was adequately protected given lack of evidence that collateral was diminishing, debtor had operated profitably and was projected to continue operating profitably).

17. The conditional adequate protection provided above on account of the Debtors' use of Cash Collateral hereunder should be granted, effective immediately and without the necessity of the execution by the Debtors of financing statements, security agreements or otherwise, in accordance with § 361(2) of the Bankruptcy Code.  The conditional replacement security interests and liens (the "**Adequate Protection Liens**") in and upon post-petition Collateral on which the Trustee is determined to have held valid and perfected liens as of the Petition Date and all proceeds, rents and products of all of the foregoing and all distributions thereon (collectively, the "**Post-Petition Collateral**"), should conditionally attach in the same respective priority it held prior to the Petition Date.  The Adequate Protection Liens shall, until finally determined, be subject only to valid, perfected, enforceable and nonavoidable liens and

7

security interests superior in priority to the those held by the Trustee on and prior to the Petition Date, and only to the extent such prepetition senior liens are not otherwise subject to avoidance or subordination.  The Adequate Protection Liens are granted to secure the amount of any post-petition diminution in the value of tThe Trustee's interests in the Cash Collateral.  Notwithstanding the foregoing or anything herein to the contrary, the Post-Petition Collateral shall not include any claims, causes of action and proceeds thereof arising under §§ 510, 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code (collectively, "**Avoidance Actions**").

18.     The Debtors assert that all Cash Collateral now existing and hereafter acquired will be deposited and maintained by the Debtors pending disbursement in the ordinary course of business consistent and the provisions of the Interim Order and the Budget.

19.     The Budget includes the Debtors' aggregate projected sources and uses of cash over the Budget period on a consolidated, company-wide basis.  The Budget attached to the Motion demonstrates that the value of the Debtors' Cash Collateral should increase over the term of the Budget.

20.     Included in the Budget are proposed payment items for "Payroll" relating to the Debtors' regular employment obligations, including wages, salaries and related withholding taxes and benefits.  To the extent that any such payment items accrued, in whole or in part, prior to the Petition Date, the Debtors request that the Court, by approving the Budget herein, authorize payment of all regular payroll obligations incurred in the ordinary course of business as and when due.  The Debtors submit that all of the amounts paid, to the extent that any accrued prior to the Petition Date, would constitute priority unsecured claims under § 507(a)(4) and/or (5).

### C. Interim Approval of the Use of Cash Collateral Should Be Granted.

21. Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to § 363 may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

22. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court conduct a preliminary expedited hearing as soon as practicable (the "**Preliminary Hearing**") to enter the Interim Order authorizing the Debtors to use Cash Collateral in accordance with the Budget pending the Final Hearing.

23. The continued use by the Debtors of Cash Collateral is the best source of financing available to them at this time. The ability of the Debtors to finance, through the use of Cash Collateral, their ongoing operations as they reorganize is in the best interests of the Debtors, all of their creditors and their estates and imposes no prejudice or harm upon the Trustee or any other party-in-interest.

24. The relief requested herein is necessary in order to avoid immediate and irreparable harm and prejudice to the Debtors' estates and to all parties in interest in the Debtors' chapter 11 cases. The Debtors have an urgent and immediate need to use Cash Collateral to continue their business operations while prosecuting these chapter 11 cases.

25. The interests of the Trustee are and will remain adequately protected pursuant to the relief provided in the Interim Order. As indicated by the Budget, the Debtors' operations will be cash flow positive during the period covered therein after payment of essential expenses and expenses related to the administration of these chapter 11 cases.

26. The terms of the Interim Order are incorporated herein and made a part hereof by this reference. Pending the Final Hearing, this Motion should be granted on an interim basis, on the terms set forth in the Interim Order, in order to maximize the value of the estates and to prevent irreparable harm to the Debtors prior to the Final Hearing.

### REQUEST FOR FINAL HEARING

27. Finally, pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that this Court set a date for the Final Hearing, fix the time and date for filing objections to the terms of the Interim Order and the manner of service thereof, and approve the provisions for notice of such Final Hearing that are set forth in the Interim Order.

28. The Debtors request that they be authorized to serve, upon execution and entry by the Court, a copy of the Interim Order by first-class United States Mail upon (a) the Trustee, (b) all other secured creditors of record, (c) the Office of the United States Trustee, (d) the Debtors' twenty (20) largest creditors on a consolidated basis as determined in accordance with Bankruptcy Rule 1007(d), and (d) any party having filed a request to receive service in the Debtors' chapter 11 cases. The Debtors request that the Court consider service of the Interim Order as set forth above to constitute sufficient notice of the Final Hearing under Rule 4001 of the Bankruptcy Rules.

### NOTICE

29. Notice of this Motion has been given to: (i) the United States Trustee; and (ii) counsel for the Trustee.

WHEREFORE, the Debtors respectfully request that this Court (a) conduct an emergency hearing on this Motion; (b) enter the Interim Order substantially in the form submitted herewith;

(c) schedule a Final Hearing on the relief requested herein; and (d) grant such further relief as may be equitable and just.

  THIS the 24th day of May, 2010.

        Respectfully submitted,

        **O&G LEASING, LLC,** *et al.*

        By:  /s/ *Douglas C. Noble*

        Douglas C. Noble, MS Bar No. 10526
        **McCraney, Montagnet & Quin, PLLC**
        602 Steed Road • Suite 200
        Ridgeland, Mississippi 39157
        Telephone:  (601) 707-5725
        Facsimile:   (601) 510-2939
        Email:  dnoble@mmqlaw.com
        www.mmqlaw.com

## **CERTIFICATE OF SERVICE**

    I do hereby certify that the foregoing pleading was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically and was separately served by e-mail on the following:

| | |
|---|---|
| Ronald H. McAlpin | Jim F. Spencer |
| Trial Attorney, Office of the U.S. Trustee | WATKINS & EAGER |
| ronald.mcalpin@usdoj.gov | jspencer@watkinseager.com |

    SO CERTIFIED, this the 24th day of April, 2010.

                                                        /s/ *Douglas C. Noble*