RETENTION AGREEMENT BETWEEN
O&G LEASING, LLC & GENERAL CAPITAL PARTNERS, LLC

THIS AGREEMENT (the "*Agreement*") is made this 18th day of May 2010 (the "*Effective Date*") by and between **O&G LEASING COMPANY, LLC** located at 125 South Congress Street, Suite 1610, Jackson, MS 39201 (the "*Debtor*" or "*Company*") and **GENERAL CAPITAL PARTNERS, LLC**, a Colorado limited liability company with offices at 600 17th Street, Suite 2350 South, Denver, CO 80202 ("*GCP*"). The Debtor and GCP are collectively referred to herein as (the "*Parties*"); each of them is individually referred to herein as (the "*Party*").

RECITALS

WHEREAS, the Debtor is in the business of providing land drilling services for natural gas and oil exploration and production companies, operates throughout the Southern United States, and owns five drilling rigs (collectively, the "*Assets*");

WHEREAS, the Debtor has certain debentures outstanding of approximately $34,000,000 and bank debt of approximately $4,500,000 (collectively "*Indebtedness*") and desires to evaluate various strategic options for a restructuring or reorganization, or to raise capital or equity, or refinance;

WHEREAS, the Debtor may desire to raise capital in the form of debt or equity, for use by the Company as working capital or to restructure, or refinance, or facilitate a disposition of all or a portion of the assets or stock of the Company or to enter into a merger or joint venture;

WHEREAS, GCP is an enterprise that specializes in, and has substantial experience with the provision of financial advisory and investment banking services to financially troubled companies including but not limited to: procurement of debt or equity capital, and the merger, acquisition, restructuring, or disposition of the assets or stock of going concerns; and

WHEREAS, the Debtor and GCP desire to enter into this Agreement which establishes both the services to be performed by GCP and the compensation to be paid to GCP for said services.

NOW, THEREFORE, in consideration of the promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor and GCP hereby agree, subject to all the terms, covenants, conditions and provisions hereinafter set forth, as follows:

## ARTICLE I

1.1   General. The Debtor hereby retains GCP as its financial advisor and investment banker with respect to the evaluation of and pursuit of strategic options, contacting and negotiating with potential providers of debt or equity capital, or facilitating a reorganization, merger, acquisition or disposition of all or a portion of the assets or stock of the Debtor.

1.2   Retention. The term of this Agreement shall begin on the Date the Advisory Fee in section 4.2 is received by GCP but remains subject to Bankruptcy Court approval, and, unless the Bankruptcy Court orders otherwise, and shall continue until the later of (i) the date on which a order is entered by the Bankruptcy Court confirming a plan of reorganization, (ii) the date on which an order is entered by the Bankruptcy Court dismissing the Debtor's Chapter 11 Case or (iii) the date on which an order is entered by the Bankruptcy Court approving a disposition of the assets or stock of the Debtor (the "*Term*") or (iv) the consummation of a Transaction or confirmation of a plan of reorganization or execution of a merger or joint venture agreement or material modification of an existing loan, unless terminated sooner pursuant to the terms hereof.

1.3   Contact with Potential Transaction Partners. During the Term of this Agreement, the Debtor and their principals, managers, partners, employees, representatives, agents, or attorneys (collectively, the "*Debtor's Representatives*") agree that if the Debtor directly or indirectly contacts or approaches or is contacted or approached by any individual or entity (collectively, "*Potential Transaction Partners*") whom the Debtor should reasonably believe may be interested in providing debt or equity financing to the Debtor, or acquiring all or a portion of the assets or stock of the Debtor, or entering into a merger or joint venture with the Debtor, or selling all or a portion of the assets or stock of another Company to the Debtor and the Debtor has not yet communicated the identity of and contact information for the Potential Transaction partner, that the Debtor will promptly alert GCP of such contact. Further, the Debtor acknowledges and understands that it is in the best interest of the Debtor that GCP be involved in all communications with Potential Transaction Partners. Therefore the Debtor and the Debtor's Representatives agree to provide GCP within three (3) business days of such contact and to provide GCP with the Potential Transaction Partner's contact information.

## ARTICLE II
## GCP SERVICES & COMMENCEMENT

2.1   Financial Advisory Services. GCP shall perform financial advisory services (the "*Services*") in a diligent and timely manner, as follows:

AGREEMENT BETWEEN O&G LEASING, LLC AND GENERAL CAPITAL PARTNERS, LLC

2

(a) GCP shall diligently review and familiarize itself with the business, operations, properties, Indebtedness, financial condition, industry and prospects of the Company and assist and advise the company with the analysis of the Company's business, business and bankruptcy plans, and strategic and financial position. GCP shall advise the Debtor through the bankruptcy process, which will include assistance with development of alternative plans for reorganization, schedules and other required documents required for the plan.

(b) Appear and testify as an expert witness on behalf of the Debtor as required.

(c) Regularly interface with all respective parties and negotiate with Debtor's existing lenders or indebtedness holders to obtain temporary payment forbearance agreements, interest rate modifications, term modifications, release or relaxation of loan covenants or other changes to existing financing agreements as appropriate in support of Debtor's plan of reorganization;

(d) If additional financing is required, preparation of a marketing program and materials which may include solicitation of indications of interest via electronic communication, advertising on internet the or print media, mailing letters, posting fliers, and telephone solicitation and any other methods as GCP and the Debtor deem appropriate;

(e) Construct, with Debtor provided data and projections, pro-forma cash flow and profit and loss models, and any other financial models which GCP and Debtor deem appropriate;

(f) Assist in the preparation of due diligence materials prepared by the Debtor or the Debtor's representatives, including but not limited to a summary description of Debtor's existing business and financial condition, financial reports, valuations or appraisals, advertising materials, entity formation and operating documents, tax returns, asset lists, leases, or any other materials which GCP and the Debtor deem appropriate (collectively, the "*Due Diligence Materials*");

(g) Establish, maintain, and update, a secured, password-protected virtual data room (the "*VDR*") containing the Due Diligence Materials;

(h) Contact Potential Transaction Partners and attempt to consummate a transaction, on a best efforts basis, with who may be interested in providing debt or equity financing to, or acquiring the assets or stock of, or entering into a merger or joint venture with, or selling the assets or stock of another Company to the Debtor;

(i) Obtain and maintain a file copy of an executed non-disclosure and confidentiality agreement (the "*NDCA*") from all interested Potential Transaction Partners;

AGREEMENT BETWEEN O&G LEASING, LLC AND GENERAL CAPITAL PARTNERS, LLC

(j) Provide access to and monitor the activity of all Potential Transaction Partners which have properly executed a NDCA to the VDR;

(k) Respond to requests from Potential Transaction Partners for any additional due diligence materials, management interviews, or site visits;

(l) Advise the Debtor regarding the interest and capacity of Potential Transaction Partners;

(m) Assist the Debtor in obtaining and evaluating letters of intent, memorandums of understanding, term sheets, or any other indications of interest from Potential Transaction Partners;

(n) Assist the Debtor, Debtor's counsel and Debtor's other professionals in negotiating, coordinating and consummating a bankruptcy plan of reorganization, transaction for the provision of debt or equity financing to the Debtor, or acquiring the assets or stock of the Debtor, or entering into a merger or joint venture with the Debtor, or selling the assets or stock of another company to the Debtor in conjunction with confirming a plan of reorganization; and

(o) Regularly inform the Debtor of GCP's services and activities hereunder with regular periodic reports via electronic mail, voice conversations, or personal meetings.

## ARTICLE III
## GROSS VALUE, VALUATION AND TRANSACTION

3.1    Gross Value. If a Transaction (as hereinafter defined) is consummated under this Agreement the term Gross Value (the "*Gross Value*") as used in this Agreement shall be the sum of all cash consideration received by the Debtor, for the purpose of providing debt or equity financing to the Debtor, or entering into a merger or joint venture with the Debtor.

3.2    No Deductions of Transaction Costs. The fees of GCP, and all other closing costs or adjustments, including adjustments or payments of whatever kind to lien holders, secured parties, mortgagees or otherwise shall not be deducted when computing Gross Value or the fee to be paid GCP.

3.3    *(Intentionally Omitted)*

3.4    Transaction. As used herein the term Transaction (the "*Transaction*") shall include any transaction or series of transactions, which includes but is not limited to any merger, consolidation, business combination, or other transaction or series of transactions which is consummated pursuant to an approved plan of reorganization offered by the Company and provides debt or equity financing to the Debtor, or where all of the assets or stock of the Debtor are acquired by a Purchaser, or where the Debtor enters into a merger or joint venture with a Purchaser or a Partner, or where all or a portion of the

assets or stock of another company are acquired by the Debtor, but in any event only where such Transaction is with a party that the Company has agreed to in a separate writing with GCP.

3.5   Related Party Debt and Interest. Notwithstanding the foregoing definitions or anything to the contrary herein, neither the term *"Transaction", "Indebtedness"* nor *"Gross Value"* shall include, and no fees shall be payable to GCP on account of, any transaction between or debt, obligations and/or indebtedness owed by, to or among the Company, Octane Funding I, LLC, Octane Funding II, LLC and/or any other affiliate of the Company, or otherwise with respect to any transaction or party that GCP does not first identify, negotiate and consummate a Transaction.

## ARTICLE IV
## PAYMENT TERMS

4.1   Expenses. In addition to the fees described below, and regardless of whether or not any transaction contemplated by this Agreement shall be proposed or consummated, the Debtor agrees to promptly reimburse GCP, on a monthly basis, for all out-of-pocket Expenses (the *"Expenses"*) reasonably incurred by GCP in connection with the matters contemplated by this Agreement. Expenses may include, but are not limited to: copy, facsimile and telephone charges, travel and accommodation charges, marketing and shipping charges, and implementation and enforcement of the Agreement. Expenses shall not include any fees, compensation or other payments to or for subcontractors or any similar personal related compensation or wager. All Expenses will be payable within five (5) days of receipt of the bill therefor.

4.2   Advisory Fee. In consideration of financial advisory services rendered, GCP shall be paid a monthly Advisory Fee (the *"Advisory Fee"*) of twenty-three thousand dollars ($23,000) each month for the entire Term of this Agreement. The first Advisory Fee shall be due upon the Effective Date of this Agreement and each subsequent payment shall be due on monthly anniversaries of the Effective Date respectively.

>   4.2.1   Late Payment Fees and Interest. In addition to the Advisory Fees described in section 4.2 above there shall be an additional fee of three thousand Dollars $3,000 for any undisputed payment which is not received by GCP within five business days of the due date. In the event this late fee is not paid within ten (10) business days from the due date of the Advisory Fee then GCP may at its sole and exclusive option elect to either void this Agreement or to assess the Debtor an Advisory Fee twice the amount of the unpaid Advisory Fee which shall be paid as additional compensation to GCP upon consummation of a Transaction or confirmation of a plan of reorganization or execution of a merger or joint venture agreement or material modification of an existing loan.

4.3   Loan Modification Transaction Fee. *(Intentionally Omitted)*

4.4   Merger or Joint Venture Fee. In the event that a Transaction occurs in which there is a Merger or Joint Venture resulting in net new value to the Debtor's estate of at

least $3,000,000, GCP shall receive a success fee of $50,000 upon consummation of the Merger or Joint Venture pursuant to Debtor's reorganization plan (*"Merger or Joint Venture Fee"*)

4.5   Financing Transaction Fee. As used herein the term Financing Transaction Fee (the *"Financing Transaction Fee"*) shall include any transaction or series of transactions, which is consummated and provides debt or equity financing to the Debtor but strictly and only where such financing is derived from a party who GCP first identified, contacted and introduced to the Company (*i.e.* new money from a new source). The Success Fee to be paid to GCP for its services shall be derived from the aggregate of Gross Value from all of such Financing Transactions. The Fee shall be three percent (3%) of the Gross Value. This section shall only apply to new money loaned to the company from sources set forth above.

4.6   Combination Transaction Fee. In the event of a combination Transaction that includes financing and a merger, joint venture or similar combination, then in consideration for services rendered, GCP shall receive a *"Combined Transaction Fee"* equal to the greater of the Financing Transaction Fee as calculated from the Gross Value received from the Financing Transaction or the Merger or Joint Venture Fee. Only one success fee shall be paid for any Transaction or series of related Transactions.

4.7   Payment of Fees. The Financing Fee or Merger or Joint Venture Fee, if any, shall be paid in cash at the consummation of a Transaction or confirmation of a plan of reorganization offered by the Company describing the Transaction. The Debtor's execution of this Agreement authorizes any escrow agent or counsel to pay to GCP its Financing Fee or Merger or Joint Venture Fee, directly from the Gross Value received at the closing of any Transaction. Any Financing Fee or Merger or Joint Venture Fee shall be carved out of the Gross Value directly or indirectly received by the Debtor.

   4.7.1   Late Payment Fees and Interest. If GCP is not paid in cash at the consummation of a Transaction or confirmation of a plan of reorganization or execution of a merger or joint venture agreement or material modification of an existing loan then in addition to the Financing Fee or Merger or Joint Venture Fee, described in sections 4.3 through 4.6 above there shall be an additional fee of five thousand dollars $5,000 (the *"Late Payment Fee"*). If the Fees are not received by GCP within thirty (30) business days from the consummation of a Transaction or confirmation of a plan of reorganization or execution of a merger or joint venture agreement or material modification of an existing loan then interest shall accrue at the rate of one percent (1%) per month on any unpaid balance. Said interest shall be added to the unpaid balance and shall accrue interest at the same rate until the entire balance of any unpaid fees and unpaid interest is received by GCP.

   4.7.2   Fee Disclosure Included in Asset Purchase Agreement. The debtor shall notify and direct all parties to the transaction, and their respective representatives to include the following statement in any Plan of Reorganization, Joint Venture

Agreement or Loan Modification Agreement or Financing Agreement or Sale Agreement which the Debtor or Company enter into and where GCP is entitled to a Transaction Fee hereunder:

*"All parties to this Agreement hereby agree and understand that GCP has performed valuable services which have facilitated this Transaction. It is further agreed and understood that but for the Services provided by GCP this Transaction would not have been completed. It is further agreed and understood that GCP is to be paid at closing their Transaction Fee which is calculated according to the agreement filed with the court on _____, 2010. At the purchase price and terms contemplated in this document ($_____) said fee would be calculated as follows for the relevant transaction type:*

- If the Transaction falls under section 4.5 as a "Financing Transaction Fee", the following statement shall be included.

*In the event the purchase price is adjusted upward or downward as contemplated in this Agreement or by reason of an auction the fee paid to GCP shall be adjusted upward or downward in accordance with the agreement filed with the court on _____ 2010.*

*All Parties to this agreement agree to notify GCP within three (3) business days of receipt of said notification if the Debtor or a third party beneficiary objects to the completion of the Transaction or the payment of any fees from the proceeds of the Transaction. Any party which does not object is deemed to have waived any objection to the completion of the Transaction or the payment of the fees from the proceeds of the Transaction."*

4.7.3   Wiring Instructions.  All fees owed to GCP Under this agreement shall be paid to GCP by wire transfer to the following account:

        JP Morgan Chase Bank
        1125 17th Street
        Denver, CO 80202
        (303) 244-3188
        ABA# 021000021
        For credit to: General Capital Partners, LLC
        Account # 2197767185

4.8   Payment of Expenses.  The Expenses incurred by GCP from the Effective Date of this Agreement shall be reimbursed to GCP in accordance with Section 4.1. The Expenses to be paid by the Debtor are separate and in addition to any Advisory Fee and Transaction Fee collected by GCP.

4.9   Third-Party Broker. If GCP determines that additional Third-party Brokers representing a Purchaser has added value to a Transaction, then GCP reserves the sole right to determine whether the broker may be entitled to compensation to be paid out of the GCP Transaction Fee. GCP will consider all reasonable co-broker arrangements. This compensation will not be an additional fee paid by the Debtor. GCP hereby holds the Company, its agents, representatives and assigns harmless from, and will defend the Company, its agents, representatives and assigns against any claims that are made in conjunction with the existence or execution and performance of any such agreement. Any Third-Party Broker engaged by GCP on behalf of a Purchaser shall agree to indemnify and hold harmless GCP and the Debtor from any claims arising from any act or omission by Purchaser in conjunction with such a transaction.

4.10   Transaction Tail. In the event this Agreement expires or is terminated for any reason other than GCP's resignation or material breach, bad faith, gross negligence or willful misconduct, GCP shall be entitled to receive its Transaction Fee from any Transaction that results in Gross Value within nine (9) months from the date of expiration or termination of this Agreement (the "*Tail Period*"), provided that the Transaction involves a prospective lender, or an affiliate of such a lender who GCP first identified, contacted and introduced to the Company during the time this Agreement was in effect. In the event that this Agreement should terminate, GCP shall provide to the Debtor a list of all parties so identified and contacted.

## ARTICLE V
## BANKRUPTCY RETENTION

5.1   Bankruptcy Court Retention. The Debtors shall file a motion (the "*Retention Motion*") seeking entry of an order (the "*Retention Order*") approving this Agreement and authorizing the Debtors to retain GCP pursuant to the terms of this Agreement, as professional persons pursuant to sections 327 and 328(a) of the Bankruptcy Code, the Bankruptcy Rules, applicable local rules and orders of the Bankruptcy Court. In the event of a conflict in the terms of the Retention Order, the Retention Motion and this Agreement, then the terms of this Retention Order shall control. GCP reserves the right to, and may, terminate its obligations under this Agreement, upon written notice to the Debtors' counsel if the Bankruptcy Court enters an order that is inconsistent with this Agreement or which deletes key provision of the same.

## ARTICLE V
## TERMINATION

6.1   Termination. Either party may terminate this Agreement prior to the expiration of the Term with five (5) days written notice to the other party.

6.2    Termination by Foreclosure or Judgment. This Agreement may be terminated prior to the expiration of the Term by a foreclosure or other court judgment in which the Debtor losses control of its assets, in or out of Bankruptcy court.

6.3    Effect of Termination. In the event of termination of this Agreement as provided in this Article V, then this Agreement shall forthwith become void and there shall be no liability or obligation on the part of either Party or its respective affiliates, officers, directors or stockholders; provided, however that the Debtor shall be obligated to reimburse GCP for Expenses and that the Tail Period shall be in effect, as provided in Article IV. The Company is hereby granted an irrevocable, perpetual and fully paid right and license to use any documents, materials and information provided by GPC during the Term, provided that the GCP documents, materials and information are not used to actively pursue equity financing outside the terms/scope of this Agreement; this provision shall extend through the Tail Period.

### ARTICLE VII
### MISCELLANEOUS AND GENERAL

7.1    Notices. Any notice, request, instruction or other document to be given hereunder by any party to the other parties shall be deemed delivered upon actual receipt and shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, reputable overnight courier, or by facsimile transmission confirmed by phone as follows:

If intended for O&G Leasing, LLC:

    O&G Leasing, LLC
    Attn: Jeff Goodwin, CFO
    125 South Congress Street
    Suite 1610
    Jackson, MS 39201
    Fax: (601) 969-6424

With a copy to:

    Robert L. Holladay, Jr., Esq.
    YoungWilliams PA
    P. O. Box 23059
    Jackson, MS 39225-3059
    Fax: (601) 355-6136

If intended for GCP:

General Capital Partners, LLC
Attn: J. Gregory Barrow
600 Seventeenth Street, Suite 2350 South
Denver, Colorado 80202
Email: jgb@generalcapitalpartners.com
Fax: (720) 200-4501

Or other such addresses or entities as any of the parties hereto may from time to time direct by service of notice on the other parties.

7.2   Representations and Warranties by the Company. The Company represents and warrants to GCP that to the best of its knowledge and belief the Materials and Information (*"Information"*) regarding the business and financial condition of the Company does not contain any untrue statements of material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading. The Company shall advise GCP promptly of the occurrence of any event or any other change prior to a Transaction which could reasonably be expected to result in the Information containing any untrue statement of material fact or omitting to state any material fact necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

7.3   Assignment. Neither Party may assign or subcontract any or all of its rights, interest or obligations contained herein without first obtaining the other Party's written consent, which may be withheld in such other Party's discretion.

7.4   Entire Agreement. This Agreement constitutes the entire agreement between the Parties regarding the Transactions contemplated herein, and there are no other terms, covenants, conditions, provisions, warranties, representations or statements, oral or otherwise, of any kind whatsoever. This agreement supersedes and replaces that certain agreement between the parties dated February 15, 2010. Any agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Agreement in whole or in part unless such agreement is in writing and signed by the Party against whom enforcement of the change, modifications, discharge or abandonment is sought.

7.5   Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be original, but such counterparts together shall constitute one and the same instrument.

7.6   Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

7.7   Severability. If any term or other provision of this Agreement is invalid, illegal or unenforceable, all other provisions of this Agreement shall remain in full force and effect

so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party.

7.8   Indemnify/Hold Harmless. The Company agrees to indemnify and hold GCP, its affiliates and any permitted subcontractors ("US") and its owners, officers and employees harmless from and against any and all claims, liabilities, losses, damages and expenses (including, without limitation, attorneys fee) (collectively, *"Losses"*) related to or arising out of the engagement of GCP or the provision of the Services by GCP, except to the extent such Losses arise, in whole or in part, out of the gross negligence, willful misconduct, breach of this Agreement, or otherwise due solely to the indemnified party's actions or inactions. The Company shall not be obligated to fund more than one defense counsel firm at any one time for all indemnified persons.

GCP acknowledges that in the event a subcontractor is to be engaged, GCP will notify and obtain the approval of the Company prior to such engagement.

7.9   Press Announcements. GCP may request permission to use the name and logo of the Company and briefly describe the services it provided to Company in publications and/or marketing materials prepared and distributed by GCP at any time after the completion or public announcement of the closing of a Transaction and the Company will promptly grant or deny such request.

7.10   No Assurances.   By signing this Agreement, the Company expressly acknowledges that GCP does not guarantee, warrant or otherwise provide assurance that Company will be able to implement or consummate any Transaction.

7.11   Headings. The heading included in this Agreement are for the convenience and reference only and are not part of this Agreement and shall not in any way control, define, limit or add to the terms and conditions hereof.

7.12   Key Man. GCP represents and warrants that it shall assign qualified and competent personnel to the performance of the Services, that Kevin Lombardo shall devote significant time and efforts to the Services and this project, that all such personnel assigned shall use their best efforts to perform the Services described herein in the most expeditious and professional manner, with the exercise of good faith and all due diligence, consistent with the interests of the Company, and designed to accomplish the Stated Purpose.

7.13   Confidentiality. During the term of the Agreement and for three (3) years thereafter, GCP will keep confidential all non-public information about the Company, including without limitation the existence and content of this Agreement, made available to GCP by the Company, its management, representative, employees, or agents in connection with its engagement hereunder and will not use such confidential information other than in connection with its engagement hereunder or related engagements with Company; provided, such confidential information shall not include: (i) any information that is or becomes generally available to the public without breach of this Agreement; or (ii) any information which becomes available to GCP on a non-confidential basis from a

third party who is not bound by a confidentiality obligation to the Company and provided further, that such confidential information may be disclosed: (a) to GCP partners, employees, agents, advisors and representatives in connection with its engagement hereunder who shall be informed of the confidential natures of the information and be bound by confidentiality agreement no less restrictive than provided for herein; (b) to any person with the consent of the Company; or (c) if GCP is required to disclose such information pursuant to law, judicial or administrative process or regulatory demand or request of anybody having jurisdiction over GCP. GCP agrees to return all such confidential information and all records and copies thereof upon termination of this Agreement or at any time upon Company's request. Without limiting the foregoing in any way, GCP shall not engage in any discussions with or provide Company information to any party without first having such party execute a confidentiality agreement reasonably acceptable to the Company. This paragraph supersedes any prior agreement between the Company and GCP respecting confidentiality.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

**O&G LEASING, LLC**

By: _____ Title: CFO   Date: _____
   Jeff Goodwin

**GENERAL CAPITAL PARTNERS, LLC**

By: _____ Title: CEO   Date: 05-18-10

## CORPORATE RESOLUTION

**RESOLVED**, that Jeff Goodwin, the Chief Financial Officer of O&G Leasing, LLC is empowered, and directed to perform any necessary act to enter into an Agreement with **General Capital Partners, LLC** for the restructuring and/or reduction of certain Indebtedness (as further defined in the Agreement between O&G Leasing and General Capital Partners, LLC) of said Company.

**IN WITNESS THEREOF**, the undersigned Company has caused this application to be executed in its name by its Manager, this ____ day of February, 2010.

**ATTEST:**                             **O&G LEASING, LLC**

                                        By: _____
                                            Ben O. Turnage, Manager