# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| In re: ) | |
| ) | |
| O&G LEASING, LLC, *et al.* ) | Case No. 10-01851-EE |
| ) | Chapter 11 |
| Debtors. ) | Jointly Administered |
| ) | |

O&G LEASING, LLC and
PERFORMANCE DRILLING COMPANY, LLC                           PLAINTIFFS

vs.                                                                                                  Adversary Proceeding No. 10-_____

FIRST SECURITY BANK, AS TRUSTEE, and
DOE DEBENTURE HOLDERS 1-5000                                                          DEFENDANTS

## COMPLAINT FOR (I) DECLARATORY JUDGMENT
## TO DETERMINE VALIDITY, PRIORITY AND EXTENT OF LIENS, and
## (II) AVOIDANCE OF PREFERENTIAL TRANSFERS UNDER § 547

O&G Leasing, LLC ("**O&G**") and Performance Drilling Company, LLC ("**PDC**") as debtors and debtors-in-possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**") and plaintiffs herein, by and through their undersigned counsel, file this Complaint, pursuant to §§ 506(d) and 547(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") and Rules 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") seeking (i) a declaratory judgment and determination of the validity, priority and/or extent of certain liens on and/or affecting the Debtors' assets asserted for the benefit of the 2009 Debentures (defined below) and (ii) avoidance of preferential transfers pursuant to § 547 of the Bankruptcy Code.

## PARTIES

1. O&G is a Mississippi limited liability company with headquarters located at 125 South Congress Street, Suite 1610, Jackson, MS 39201.  O&G was formed in October 2006 for the purpose of purchasing and constructing oil and gas drilling rigs and leasing those rigs to its operating subsidiary, PDC, for drilling oil and gas wells primarily in the states of Alabama, Arkansas, Louisiana, Mississippi and East Texas.  O&G owns five drilling rigs, three (3) being 1000HP, one (1) 1250HP and one (1) 1500HP.

2. PDC, an oil field services company, is also a Mississippi limited liability company with its principal place of business located at 816 N. College Street, Brandon, Mississippi 39042.  PDC's business is seeking contracts with exploration companies that drill for oil and gas; PDC leases all five of the drilling rigs owned by O&G to conduct its business.  PDC currently employs approximately 100 salaried and hourly employees.

3. O&G and PDC each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court on May 21, 2010 (the "**Petition Date**").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Defendant First Security Bank is believed to be an insured banking institution organized under and existing by virtue of the laws of the State of Arkansas and the United States of America, and acts as trustee (the **"Defendant Trustee"**) under the Amended and Restated Trust Indenture dated as of September 15, 2009 (the **"2009 Indenture"**), incorporated herein by this  reference as if fully set forth herein but not attached due to size (but available upon request to Debtors' attorneys below) governing the 10.50% Senior Series 2009A Debentures, and 16.00% Subordinate Series 2009B Debentures issued by O&G in connection therewith

2

(collectively, the **"2009 Debentures"**). Defendant Trustee may be served with process pursuant to Bankruptcy Rule 7004(h).

5. Defendants Doe Debenture Holders 1-5000 (collectively, the "**Defendant Holders**," and together with Defendant Trustee, the "**Defendants**"), the identities of which are presently uncertain and/or unknown to the Debtors, are the entities and/or individuals that held, now hold or may in the future acquire ownership of the 2009 Debentures. Defendant Holders may be served with process by serving Defendant Trustee.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(1). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

7. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. This adversary proceeding is initiated under Bankruptcy Rules 7001(2) and (9), and the relief requested herein may be ordered pursuant to §§ 506(d) and 547 of the Bankruptcy Code.

## BACKGROUND FACTS

*Prior Debentures and Prior Indentures*

9. Beginning in 2006 with its inception, O&G, through its placement agent Crews & Associates, Inc. ("**Crews and Associates**," an affiliate of the Defendant Trustee), began issuing certain debentures (each individually, a "**Prior Debenture**" or collectively, "**Prior Debentures**") to acquire components for and construct its drilling rigs. The proceeds raised by the issuance of each Prior Debenture were used to finance a portion of the costs of acquiring and/or constructing an individual oil and gas drilling rig. Each Prior Debenture was secured by the specific drilling rig O&G purchased or constructed with the proceeds thereof.

10. Each series of Prior Debentures was issued under a particular trust indenture (each a "**Prior Indenture**" or collectively, "**Prior Indentures**"), was secured by independent collateral (the particular rig financed) and contained varying revenue pledges and payment terms. None of the Prior Debentures were cross-collateralized, nor did they allow any excess net revenues derived from the rig securing that series of Prior Debenture to be used by the Debtors to make payments on any other series of Prior Debentures.

*The 2009 Exchange*

11. In late 2008, the oil and gas drilling market collapsed along with the overall credit markets. Oil and natural gas prices dropped 40-60% and the number of drilling rigs in use in the marketplace decreased by half based on reported utilization rates. Due to the lack of demand and utilization, and corresponding drop in drilling rates, the Debtors' revenues decreased substantially.

12. O&G approached its placement agent, Crews & Associates, advising that it could not make scheduled payments on the Prior Debentures and suggested at least a one year forbearance of all payments to allow for economic recovery. Instead, Crews & Associates formulated a plan to create a new, unified debt structure for O&G whereby all Prior Debentures would be cancelled and exchanged in return for the issuance of new debentures under new terms (higher interest rates, etc.) and a new indenture (the "**Exchange Offer**").

13. The Exchange Offer provided that the four (4) rigs of O&G's that secured the Prior Debentures (and the revenues thereof) would be combined into a new, consolidated collateral pool as security and payment source for the new debentures. The stated purpose of the consolidation plan was to simplify Debtors' capital and debt structure and to balance the cash

4

flows from all of O&G's rigs securing the prior Debentures in order to make the pledged revenue process easier for Debtors and Defendant Trustee to manage.

14. After requisite approval by 75% of each series of Prior Debentures holders, the exchange was consummated on September 15, 2009 (the "**2009 Exchange**") and the Prior Debentures (and all obligations associated therewith) were cancelled and replaced in whole by the 2009 Debentures, which were issued in two (2) series: (a) $25,955,000 of 10.50% Senior Series 2009A Debentures, due September 15, 2013 and (b) $7,610,000 of 16.00% Subordinate Series 2009B Debentures, also due September 15, 2013.

*Terms of the 2009 Indenture and 2009 Debentures*

15. While Article XII of the 2009 Indenture provides in pertinent part that O&G's parent company, SAJAC O&G INVESTORS, LLC, as "Sole Member," and PDC, as "Operating Affiliate," irrevocably and unconditionally guarantee O&G's performance and obligations thereunder, the 2009 Indenture did not include signature pages for either SAJAC or PDC, and neither Sajac nor PDC is a party or signatory to the 2009 Indenture. The terms of the 2009 Indenture only apply to O&G, as issuer, and the Defendant Trustee, not SAJAC or PDC.

16. The 2009 Indenture contains certain granting clauses that purport to grant to the Defendant Trustee, as security for the 2009 Debentures, certain assets defined as the "Trust Estate." The "Granting Clause First" describes the collateral as:

> All rights of [O&G] in and to the (a) the Drilling Equipment (herein defined), (b) the Gross Pledgable Revenues (defined herein) senior to any other lien; (c) all other assets, real or personal, choate or inchoate, of [O&G] and [PDC] to the extent not otherwise pledged to the Rig #48 Senior Loan (defined herein), now owned or hereafter acquired, subject only to Permitted Encumbrances [emphasis added].

17. The term "Drilling Equipment" is defined in the 2009 Indenture as:

5

"Drilling Equipment" means the Rig #3 Drilling Equipment, the Rig #14 Drilling Equipment; the Rig #22 Drilling Equipment, the Rig #28 Drilling Equipment and the Rig #48 Drilling Equipment subordinate to the Rig #48 Senior Loan, **all as more fully described in Exhibit E attached hereto** and incorporated herein by this reference.  [emphasis added]

18. The "Rig #3 Drilling Equipment" is defined in the 2009 Indenture as:

"Rig #3 Drilling Equipment" has the meaning **as more fully described in Exhibit E attached hereto** and incorporated herein by this reference. [emphasis added]

19. The "Rig #14 Drilling Equipment," "Rig #22 Drilling Equipment," "Rig #28 Drilling Equipment," and "Rig #48 Drilling Equipment" are similarly defined.

20. The "Exhibit E" "Description of O&G Leasing, Rigs" attached to all drafts, execution copies and the final executed copy of the 2009 Indenture contained no description of any drilling rigs at other property.  However, the exhibit was blank, a true and correct copy of which is attached hereto as Exhibit "1" and made a part hereof.  The Debtors first learned of and had the opportunity to inspect an "Exhibit E" to the 2009 Indenture that contained a description of any property upon receiving Defendant Trustee's complaint filed against the Debtors and certain other parties on April 27, 2010, in the United States District Court for the Southern District for the Southern District of Mississippi (the **"Complaint"**).

21. In addition to the 2009 Indenture, the Defendant Trustee attempted to secure the 2009 Debentures with certain assets of the Debtors under that certain Assignment of Drilling Contracts, Lease, Rents, Revenues and Pledge and Security Agreement (the "**Security Agreement**"), a true and correct copy of which is attached hereto as Exhibit "2" and made a part hereof, wherein PDC purported to pledge certain collateral to O&G and O&G to Defendant Trustee.

22. The Security Agreement provides in pertinent part:

6

> . . . [PDC] and [O&G] concurrently, jointly and severally in turn to hereby sell, transfer, convey, set over and assign, absolutely, completely and unconditionally, all of their right, title and interest in, and further collaterally assign, transfer and pledge to [Defendant Trustee], and grant to [Defendant Trustee] a first and prior security interest in, all of [PDC's] and [O&G's] right, title and interest **in and to that personal, intangible and other property which is more fully described on EXHIBIT A attached hereto** [emphasis added]. . .

23.     Just as with the 2009 Indenture, "Exhibit A" "Description of Collateral" to the Security Agreement attached hereto as Exhibit "3" and made a part hereof, (including all drafts, the execution copy and the executed copy of the Security Agreement delivered to the Debtors) was blank and contained no description of any property to which a security interest could attach. However, again upon receiving a copy of the Defendant Trustee's April 27, 2010, Complaint, the Debtors for the first time had the opportunity to review and inspect an "Exhibit A" to the Security Agreement that actually contained any description of any collateral.

24.     In connection with the 2009 Exchange, SAJAC entered into that certain Membership Interest Pledge Agreement in favor of Defendant Trustee (the "**SAJAC Pledge**", which along with the 2009 Indenture, Security Agreement and/or other pre-petition documents executed in connection with the 2009 Exchange are, collectively, the "**Exchange Agreements**"), a true and correct copy of which is attached hereto as Exhibit "4", which claimed to pledge to Defendant Trustee a security interest in SAJAC's membership interest in O&G.

25.     With regard to the collateral pledged, the SAJAC Pledge provides in pertinent part that "[SAJAC] hereby pledges to [Defendant Trustee] the Pledged Interests . . . ." The "Pledged Interests" are defined by reference to Section 2.2 of the SAJAC Pledge which describes the interests as the "Membership interests in O&G is [sic] more particularly described in and evidenced by the securities described on Exhibit A attached hereto. . . ."

7

26.     "Exhibit A" to the SAJAC Pledge was not attached, and it therefore does not contain a description sufficient to identify the collateral that is to secure the debt. The SAJAC Pledge, along with the 2009 Indenture and the Security Agreement, is therefore ineffective as a security agreement.

27.     As stated above, the Exchange Offer was consummated on September 15, 2009. The Debtors made repeated requests for copies of the executed Exchange Agreements but were not delivered copies until December 15, 2009 (by electronic mail), three months to the day after the 2009 Exchange. The Debtors subsequently received bound, hard copies of the Exchange Agreements from the Defendant Trustee in the exact form and content as the electronic copies received on December 15, 2009.

28.     On March 9, 2010, one hundred seventy five (175) days after the 2009 Exchange occurred and four (4) days after O&G notified the Defendant Trustee that it would not be able to make the interest payment due under the 2009 Debentures on March 15, 2010, the Defendant Trustee caused a UCC financing statement to be filed with the Mississippi Secretary of State's office (the "**Financing Statement**") purporting to describe the collateral described in the 2009 Trust Indenture and the Security Agreement and to, for the first time, perfect its asserted security interests. A true and correct copy of the Financing Statement is attached hereto as Exhibit "5" and made a part hereof.

**COUNT I:**
**DECLARATORY JUDGMENT ON VALIDITY, PRIORITY AND EXTENT OF LIENS**
**(AGAINST DEFENDANT TRUSTEE)**

29.     The Debtors repeat and reallege the allegations contained in paragraphs 1 through 28 as if fully set forth herein.

30. As set forth above, a genuine and *bona fide* dispute exists as to whether any of the liens and security interests asserted against the Debtors and their property were validly granted, have validly attached and/or were properly perfected.

31. Section 544(a) of the Bankruptcy Code vests a trustee with the rights of a hypothetical lien creditor whose lien was perfected at the time of the bankruptcy petition, regardless of any knowledge of the trustee or of any creditor, and § 1107(a) of the Bankruptcy Code grants the Debtors, as debtors-in-possession, those same rights of a trustee serving in the matter under Chapter 11. As such, § 544(a) further allows the Debtors to avoid a lien claim of a creditor that has failed to properly perfect its security interest in a debtor's assets.

32. Section 9-203(a) of the UCC provides in relevant part that "[a] security interest *attaches* to collateral when it becomes *enforceable* against the Debtor with respect to the collateral . . . (emphasis added)". Miss. Code Ann. § 75-9-203(a).

33. Section 9-203(b) of the UCC provides in relevant part as follows:

> . . . *a security interest is enforceable against* the Debtor and third parties with respect to the collateral only if: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) . . . *the debtor has authenticated a security agreement that provides a description of the collateral* . . . (emphasis added).

Miss. Code Ann. § 75-9-203(b).

34. Section 9-108 of the UCC also provides that, in order for a description of personal or real property to be sufficient, it must "reasonably identify" the property to be conveyed. Miss. Code Ann. § 75-9-108(a).

35. All draft, execution copies and executed copies of the 2009 Indenture, the Security Agreement and SAJAC Pledge received by the Debtors describe the collateral only by reference to exhibits and the exhibits were blank and contained no descriptions of any collateral.

36. These failures render the 2009 Indenture, Security Agreement and SAJAC Pledge unenforceable pursuant to Mississippi law as security agreements.

37. The Defendant Trustee has asserted that it is entitled to rely on purported security interests granted pursuant to the Prior Indentures.  However, the 2009 Exchange resulted in a complete novation of the prior interests and agreements and any such purported interest did not survive.

38. Accordingly, the Debtors, as debtors-in-possession, may avoid the asserted secured claim of Defendant Trustee pursuant to § 544(a)(1) of the Bankruptcy Code and request that the Court enter a declaratory judgment so ruling.

## COUNT II:
## AVOIDANCE OF LIEN CLAIM PURSUANT TO 11 U.S.C. § 547
## (AGAINST DEFENDANT TRUSTEE)

39. The Debtors repeat and reallege the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

40. By filing the Financing Statement on March 9, 2010, Defendant Trustee attempted to perfect its purported interest in the Debtors' property to secure payment of the 2009 Debentures.

41. The filing of the Financing Statement constitutes a transfer of an interest in property of the Debtors and these estates.

42. The filing of the Financing Statement was made on account of an antecedent debt, specifically the indebtedness arising from the September 15, 2009, issuance of the 2009 Debentures pursuant to the 2009 Exchange.

43. The filing of the Financing Statement was made while the Debtors were insolvent.

44. The filing of the Financing Statement was made within ninety (90) days prior to the Petition Date.

10

45. If not avoided, the Financing Statement and transfer resulting from its filing would entitle Defendant Trustee, for the benefit of Defendant Holders, to receive more than (a) if this case were a case under Chapter 7 of the Bankruptcy Code, (b) if the transfer had not been made and (c) if Defendant Trustee received payment on its claims in accordance with the Bankruptcy Code.

46. The filing of the Financing Statement is avoidable as a preferential transfer under § 547 of the Bankruptcy Code, should therefore be avoided and declared null and void and cancelled of record in the office of the Mississippi Secretary of State.

**WHEREFORE**, for all of the foregoing reasons, the Debtors respectfully request entry of:

A. A declaratory judgment declaring Defendants' alleged liens and security interests upon the Debtors' assets to be invalid pursuant to Mississippi law and, as applicable, avoided pursuant to § 544 of the Bankruptcy Code;

B. A judgment avoiding the Financing Statement as a preferential transfer pursuant to § 547(b) of the Bankruptcy Code; and

C. An order granting such other and further relief as the Court may deem just and equitable.

THIS the 11th day of June, 2010.

Respectfully submitted,

**O&G LEASING, LLC,** *et al.*

By: /s/ *E. Stephen Williams*
E. Stephen Williams (MS Bar #7233)
Robert L. Holladay, Jr. (MS Bar #100713)
**YoungWilliams P.A.**
210 East Capitol Street
Regions Plaza
Suite 2000
P. O. Box 23059
Jackson, MS  39225-3059

Telephone:  (601)948-6100
Facsimile:  (601)355-6136
Email:  steve.williams@youngwilliams.com
Email:  rob.holladay@youngwilliams.com

Douglas C. Noble, MS Bar No. 10526
**McCraney, Montagnet & Quin, PLLC**
602 Steed Road • Suite 200
Ridgeland, Mississippi 39157
Telephone:  (601) 707-5725
Facsimile:   (601) 510-2939
Email:  dnoble@mmqlaw.com
www.mmqlaw.com