IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| In re: ) | |
| ) | |
| O&G LEASING, LLC, *et al.* ) | Case No. 10-01851-EE |
| ) | Chapter 11 |
| Debtors. ) | Jointly Administered |
| ) | |

**DEBTORS' BRIEF IN SUPPORT OF MOTION TO COMPEL
COMPLIANCE WITH FED. R. BANKR. P. 2019**

Debtors and debtors-in-possession (collectively, the "**Debtors**") in these reorganization proceedings, by and through their attorneys of record, file this *Brief* in support of their *Motion for an Order (A) Compelling First Security Bank's Compliance with Fed. R. Bankr. P. 2019; and (B) Prohibiting Further Participation in These Cases by First Security Bank Pending Compliance with Fed. R. Bankr. P. 2019* (the "**Motion**") [Dkt #133] as follows:

**STATEMENT OF FACTS**

In 2009, the Debtors issued $33,565,000 of aggregate debentures under that certain Amended and Restated Trust Indenture dated as of September 15, 2009 (the "**2009 Indenture**") in two series: (a) $25,955,000 of 10.50% Senior Series 2009A Debentures, due September 15, 2013, and (b) $7,610,000 of 16.00% Subordinate Series 2009B Debentures, also due September 15, 2013 (collectively, the "**2009 Debentures**"). First Security Bank of Searcy, Arkansas ("**First Security**") is the indenture trustee pursuant to the 2009 Indenture. As the indenture trustee, First Security is a fiduciary of and represents the entities and/or individuals that actually own the 2009 Debentures (the "**Bondholders**"). The Bondholders are creditors of the Debtors, holding over 70% of the Debtors' claims, who will obviously play an important role in any

1

reorganization of the Debtors. First Security has acknowledged that the Bondholders are the ultimate stakeholders here and has professed on numerous occasions that it "takes its orders from the Bondholders."

Prior to filing bankruptcy, the Debtors attempted to engage First Security and, as best they could, the Bondholders directly to implement an out-of-court restructuring of the 2009 Debentures. However, the Debtors attempts failed (because the Debtors had no one to negotiate a restructuring with and First Security filed liquidation proceedings in District Court), so the Debtors were forced, on May 21, 2010 (the "**Petition Date**"), to file voluntary petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, as amended (the "**Bankruptcy Code**").

The Debtors have requested on numerous occasions – before and after the Petition Date – that First Security provide the names and addresses of the Bondholders and to otherwise assist the Debtors with their efforts to negotiate a restructuring with the Bondholders. First Security has refused in all respects and on every occasion. As a result, the Debtors have been unable to make any meaningful progress toward a plan to exit bankruptcy due to the total inability to engage or negotiate with the Bondholders.

On August 5, 2010, the Debtors filed the Motion seeking an order (a) compelling First Security to comply with Rule 2019 by requiring First Security to file a **full and complete** verified statement in accordance with the requirements of Rule 2019, and (b) barring First Security's participation in the cases until proper and full disclosures were made as required by Rule 2019. First Security filed a response essentially refusing that it had any obligation to comply, arguing that the Debtors didn't have a right to request the information and that it was "not practical" for an indenture trustee to file such a statement when there could be hundreds of

different owners of the securities subject to the indentures." *See* ¶¶ 1, 9 of the *Response of First Security Bank, as trustee, to Debtors' Motion to Compel* [Dkt #166] (the "**Response**"). First Security's Response also contained a belated request for a declaration that it be relieved from compliance. Despite the denial of the obligation to do so, on September 16, 2010, First Security filed a *Verified Statement of First Security Bank, as Trustee, Pursuant to Bankruptcy Rule 2019* [Dkt #205] that provides none of the substantive information required by Rule 2019(a). Specifically, First Security's verified statement fails to set forth, among other things, (a) the name and address of each Bondholder, and (b) the nature and amount of the claim or interest and (c) the time of acquisition thereof. The Debtors filed their *Motion to Strike Verified Statement of First Security Bank, as Trustee, Pursuant to Bankruptcy Rule 2019* [Dkt #208] on September 21, 2010, based on these deficiencies.

## SUMMARY OF ARGUMENT

Compliance with Rule 2019 is mandatory in all bankruptcy cases for good reason. It is a part of the disclosure scheme of the Bankruptcy Code and is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly. Disclosure is a fundamental component of the Bankruptcy Code in every case, and First Security's unwillingness to comply with and attempt to circumvent the disclosure requirements of Rule 2019 raises the questions the rule was designed to address – issues of transparency, fairness and authority to act. These failures serve only to disadvantage the Bondholders it is obligated to protect, as well as the Debtors and the rest of the estate, and to delay efforts to efficiently and effectively administer these reorganization proceedings.

Under the plain wording of Rule 2019, First Security, and every other "indenture trustee," must comply with the disclosure requirements of Bankruptcy Rule 2019 unless the court directs

otherwise.  It is implicit that a court would rule otherwise only for good cause shown.  The rule itself dispenses with First Security's half-hearted arguments why it should not have to comply.

The core requirements of Rule 2019 provide disclosure and transparency of the true interests of creditors that actively participate in bankruptcy proceedings.  Rule 2019 serves "as a control device to provide to stakeholders complete disclosure of material facts in the solicitation and voting process and to prevent conflicts of interest…." *Alan N. Resnick and Henry J. Sommer,* 9 COLLIER ON BANKRUPTCY, ¶ 2019.02 (15th ed. Rev. 2008).  As such, the Debtors believe that a key part of First Security's fiduciary obligations to the Bondholders (and to the Court and Debtors considering its presence and positions in these proceedings) is to ensure the smooth and steady flow of timely and accurate information to all of the Bondholders.  First Security has acknowledged this as its "contractual obligation under the Trust Indenture." *See* Response at ¶ 1.

The plain wording of Rule 2019, as well as the Rule's historical underpinnings, make the necessity of filing this Motion and prosecution of this issue somewhat puzzling – there is no question that First Security must fully disclose the information required under the Rule 2019.  First Security has been the only active participant in these proceedings, and as trustee it has asserted positions in the cases and in response to the Motion that are inconsistent and puzzling , but in any case do not explain its vehement refusal to provide this information.  Moreover, First Security has not offered a single credible reason why it should not have to comply.  The issue before the Court is symptomatic of the larger problem that First Security has created and will perpetuate if the Court does not compel its compliance or bar its participation.

4

# ARGUMENT

### A.   The Plain Language of Rule 2019(a) Requires Compliance.

Pursuant to Rule 2019(a), any entity, committee **or indenture trustee** representing more than one creditor must file a verified statement setting forth the information required by that rule. *See* Fed. R. Bankr. P. 2019(a) (emphasis added); *In re N. Bay Gen. Hosp., Inc.*, 404 B.R. 443, 452 (Bankr. S.D. Tex. 2009) (recognizing that "[a]ny entity seeking to represent more than one creditor in a Chapter 11 case must file an application that conforms with the requirements of Federal Rule of Bankruptcy Procedure 2019"); *see also In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 391 (Bankr. D. Ariz. 1990). That verified statement must include names and addresses of the creditors, the nature and amount of the claims and the relevant facts and circumstances surrounding employment of the agent. *In re Northwest Airlines Corp.* ("**Northwest I**"), 363 B.R. 701, 702, 704 (Bankr. S.D.N.Y. 2007) (quoting Rule 2019(a) and finding that the rule cannot be "blithely avoided . . . . The Rule is long-standing, and there is no basis for failure to apply it as written."); *In re N. Bay Gen. Hosp., Inc.*, 404 B.R. 443, 452 (Bankr. S.D. Tex. 2009).

Interpretation of a statute or rule begins, as it must, with the language of the statute itself. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989). When language is plain on its face, "the sole function of the courts is to enforce it according to its terms." *Id*. (*quoting Caminetti v. United States*, 242 U.S. 470, 485 (1917)); s*ee also Sanderson Farms, Inc. v. NLRB,* 335 F.3d 445, 448 (5th Cir. 2003)*; S.D. v. Hood*, 391 F.3d 581, 590 (5th Cir. 2004). If a statutory term is undefined, courts rely on its ordinary meaning. *United States v. Santos*, 128 S. Ct. 2020, 2024 (2008).

5

Rule 2019(a), by its plain language, mandates that <u>unless otherwise directed by the court</u>, every indenture trustee "shall" file a verified statement "setting forth" the clearly specified information required by the Rule. Fed. R. Bankr. P. 2019 (emphasis added). The word "shall" makes the act of filing a verified statement "setting forth" the enumerated information mandatory, unless otherwise directed by the court. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); *Bolton v. City of Dallas*, 472 F.3d 261, 265 (5th Cir. 2006) (*citing Valdez v. Cockrell*, 274 F.3d 941, 950 ("The word 'shall' is mandatory in meaning."). Congress and the Supreme Court of the United States clearly intended for all "indenture trustees" to fully comply with the Rule, unless the court rules otherwise.

First Security's argument against compliance here is essentially that compliance would be a hassle because there are a lot of Bondholders and the actual holders could change. This argument is at best unpersuasive and fails based on the plain language and common sense behind the Rule. Congress and the Supreme Court, in promulgating the rule, surely envisioned that in virtually all cases involving trust indentures and trustees that there would be hundreds if not thousands of security holders under a single trust indenture. This, by definition, is the nature of a bond indenture.

Likewise, the plain language of Rule 2019(a) requires that, in addition to disclosing the names and addresses, etc. of the underlying creditors, indenture trustees file supplemental statements "setting forth any material changes in the facts contained in the statement filed ...." *See* Fed. R. Bankr. P. 2019(a). The number of security holders and the fact that these holders could change were clearly contemplated when Rule 2019 was promulgated and cannot serve as a legitimate basis for not complying, and nothing coming close to good cause has been shown to excuse non-compliance.

6

**B.      Legislative History Also Supports the Conclusion that Full Compliance is Required.**

Where, as here, the plain language of a statute or rule is clear on its face, there is no need to resort to the legislative history for interpretation. *See Ron Pair*, 489 U.S. at 241; *First Merchs. Acceptance Corp. v. J.C. Bradford & Co.* (*In re First Merchs. Acceptance Corp.*), 198 F.3d 394, 398 (3d Cir. 1999). Nevertheless, legislative history of the rule is instructive and further underscores that the intention and purpose behind Rule 2019 is just as broad as its language suggests.

Again, Rule 2019 is a disclosure rule. *In re Northwest Airlines Corp.* ("**Northwest II**"), 363 B.R. 704, 707 (Bankr. S.D.N.Y. 2007). It is premised on the concept that those creditors that actively and collectively participate in chapter 11 proceedings should be required to <u>fully</u> disclose their interest in the bankruptcy estate. Indeed, transparency is one of the hallmarks of the bankruptcy process generally. *In re Silicon Graphics, Inc.*, 2009 Bankr. LEXIS 1350 (Bankr S.D.N.Y. Apr. 24, 2009) (*citing In re Bell & Beckwith,* 44 V.R. 661, 664 (Bankr. N.D. Ohio 1984) ("This policy of open inspection, established in the Bankruptcy Code itself, is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised.")). When issues concerning the integrity and transparency of bankruptcy proceedings are involved, public policy interests favor disclosure. *In re Food Mgmt. Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007); *see also Ferm v. United States Trustee (In re Crawford)*, 194 F.3d 954, 960 (9th Cir. 1999) (access to bankruptcy case information "fosters confidence among creditors regarding the fairness of the bankruptcy system"); *San Antonio Express News v. Blackwell (In re Blackwell)*, 263 B.R. 505, 508-09 (W.D. Tex. 2000) (the framework regarding protecting information that should be disclosed in the bankruptcy case "begins with the presumption that [the] parties will not proceed in public

7

litigation anonymously"). Rule 2019 advances this goal of full disclosure and transparency. *In re CF Holding Corp./Colt's Mfg. Co.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) ("The purpose of Rule 2019 is to further the Bankruptcy Code's goal of complete disclosure during the business reorganization process . . .").

Rule 2019 is derived from prior Rule 10-211 of Chapter X of the Bankruptcy Act, which was adopted in the 1930s following a comprehensive report by the Securities and Exchange Commission (the "**SEC**") on committees in corporate reorganizations. *See Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees* (1937) (the "**SEC Report**"); *see also Northwest II*, 363 B.R. at 707. The SEC Report examined, among other things, perceived abuses by unofficial committees in corporate reorganizations and focused on the practice of formation of "protective committees." See Ilan D. Scharf, *Show and Tell: Ad Hoc Committees' Rule 2019 Disclosures Under Examination*, 28-2 ABIJ 58, 59 (2009). These committees were formed ostensibly to protect the interests of security holders, but in practice were often dominated by insiders, financial advisors or other parties with potential or actual conflicts. *Id.* However, the SEC report was not just concerned with the abuses of insiders. *Id.* According to the SEC Report, dominant members of the protective committees often acquired their claims or interests at "default process" and sought either to "capitalize on their nuisance value or endeavor to effectuate settlements or plans favorable to those who bought at depressed prices but disadvantageous to those who purchased at predefault prices." *Id.; See also SEC Report* at 897; *see also In re Washington Mut.*, 419 B.R. 271, 278 (Bankr. D. Del. 2009) (Walrath, J.) ("The predecessor of Rule 2019 was designed to

'provide a routine method of advising the court and all parties in interest of the actual economic interest of all persons participating in the proceedings.'") (*quoting SEC Report*).[1]

The Rule "is part of the disclosure scheme of the Bankruptcy Code and is designed to foster the goal of reorganization and plans which deal fairly with creditors and which are arrived at openly." 9 COLLIER ON BANKRUPTCY, ¶ 2019.01. This is the crux of the issue: First Security's failures are preventing the Debtors and the Bondholders from doing so. First Security is believed to have no real authority to what matters in this case, and its continued presence and actions coupled with its failure to make these disclosures renders it an obstructionist participant with no legitimate interest to further. Avoiding such detrimental forces in bankruptcies is what drove those promulgating the rules to include its plain requirements. Congress and the Supreme Court clearly intended for "indenture trustees" to comply with the Rule unless good cause was shown to override the stated benefits and policy in favor of full disclosure. No such cause has been shown here. The language of the rule is plain and should be applied as such, and the legislative history firmly establishes the policies behind its clear requirements.

**C.     First Security's Full Compliance with Rule 2019 is required.**

Certainly, Rule 2019 provides the Court with discretion not to require an indenture trustee to file a verified statement in certain situations, but it is also abundantly clear that the default rule is strict compliance. *See* Fed. R. Bankr. P. 2019(a). First Security appears to want to avoid the chore of complying with the Bankruptcy Rules. First Security is not entitled to "pick and choose" what is required to be disclosed; that is, however, what it has done in filing a hollow

---

[1] As noted in a recent Wall Street Journal article, investors are increasingly using tactics that raise questions of transparency and fairness as those investors "joust with bankruptcy judges and others over what they must disclose as they trade in and out of the company's debt, even while trying to influence its reorganization." *See Bankruptcy Court is Latest Battleground for Traders*, The Wall Street Journal, Mike Spector and Tom McGinty (September 6, 2010) (available at http://online.wsj.com/article/SB10001424052748703309704575413643530508422.html) (last visited September 29, 2010).

verified statement. Rule 2019 clearly sets forth the requirements. *See Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.,* 321 B.R. 147, 168 (D.N.J. 2005) (finding "no reason why Rule 2019, which seeks to ensure openness and good faith participation at a relatively early stage of a reorganization, should be construed more narrowly . . ."); *Century Indem. Co. v. Congoleum Corp.* (*In re Congoleum Corp.*), 426 F.3d 675, 690 n. 17 (3d Cir. 2005). First Security's argument that such disclosure is not practical is totally unsupported. Its positions on the issue call into question its ability to fulfill the duties incumbent upon it under the 2009 Indenture and its good faith willingness to do so.

In its Response, First Security contends that Rule 2019 "more appropriately" applies to the formal organization of a group of creditors holding similar claims that have elected to consolidate their collection efforts. See ¶ 4 of the Response. First Security's cites the case of *Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309 (E.D. La. 1992) but misconstrues the substance of the holding. The *Wilson* court actually held that "Rule 2019 more appropriately seems to apply to the formal organization of a group of creditors holding similar claims, who have elected to consolidate their collection efforts, **rather than to class actions.**" *Id.* (emphasis added). While the *Wilson* case involved class actions and this case obviously does not, the holding is still squarely in line with the purpose and plain language of the rule and supports the Debtors position: First Security is required to comply with the Rule because a trust indenture is, if nothing more, a "formal organization of a group of creditors holding similar claims." First Security has held itself out as the duly authorized spearhead for the Bondholders, which therefore must have "consolidate[ed] [their] collection efforts." *Wilson* therefore supports disclosure and compliance with the Rule.

      1.      **First Security can easily obtain information and has the obligation to do so.**

Although First Security contends that it "does not have the actual names of the debentures holders," presumably because "the actual debentures are held by the Depository Trust Company in the name of Cede and Company, as nominee," First Security can easily obtain the information required to satisfy the requirements of Rule 2019, including the names, addresses, and holdings of each Bondholder. First Security must simply request a record date security position report from the Depository Trust Company ("**DTC**"). *See Security Position Reports Provide Valuable Information on the Record Date Holdings of the Issuer's Security in DTC Customer Accounts* (available at http://www.dtcc.com/products/asset/services/spr.php#information) (last visited September 28, 2010). Such reports are available upon request to indenture trustees, such as First Security, on a scheduled or as-needed basis. It will not be impractical for it to comply with the Rule, nor should any of the foregoing be news to First Security.

As trustee, First Security owes fiduciary obligations to each of the Bondholders. First Security can't put its interests ahead of that of the Bondholders. *Dominion Nutrition, Inc. v. Cesca*, 467 F. Supp. 2d 870, 882 (N.D. Ill. 2006). The essence of a fiduciary duty is that the fiduciary must treat its principal as if it were itself. *See e.g, In re Francisco*, 204 B.R. 247, 249 (Bankr. M.D. Fla. 1996). First Security has impliedly asserted that the Debtors already have the Bondholders information (the Debtors have some information but no way to verify its accuracy or completeness) and therefore compliance is not required. This again provides no basis for an exception to the Rule. Its uncooperative and obstinate behavior has been inconsistent with furthering the best interests of the Bondholders and the reorganization process itself, much of which could have likely been obviated had First Security complied with the Rule to begin with.

**2.     First Security is an Intermediary, Not a True Party in Interest.**

The Debtors have never contested First Security's rights under the 2009 Indenture to sue, to act as intermediary for solicitation purposes, or to engage counsel to participate. Section 9.08 of the 2009 Indenture clearly provides the authority for First Security to participate in these cases. However, First Security has not and cannot claim the right to vote for the Bondholders. Pursuant to Rule 3017, upon approval of a disclosure statement, a copy of the plan, disclosure statement, notice of time to accept or reject the plan may be filed and any other information as the court may direct must be mailed to "all creditors and equity security holders." *See* Fed. R. Bankr. P. 3017(d).

In its Response, First Security has essentially acknowledged that it has the "contractual obligation" to "communicate with the [Bondholders]." In the same breath, however, First Security says that it is unable or unwilling to obtain and disclose that information. *See* ¶ 1 of the Response. What does First Security intends to do to ensure that a disclosure statement, plan and ballots are properly and timely delivered to Bondholders and solicitation is duly accomplished? If it is infeasible and/or impossible to do so, which is what First Security says about its present obligation, how then can a legitimate confirmation process ever be accomplished? The answer appears to be that First Security is a participant without true purpose with regard to resolving any issues with the holders of the claims with unjustified refusal to make required disclosures. And if the Debtors' conclusions are wrong, Rule 2019 requires that disclosure be made to show otherwise.

If full disclosure is not required, expect continued cost, time and effort expended due to inabilities and/or uncertainties with regard to facilitating information. First Security will remain involved in every detail of these cases without real or accurate accountability to the Court or to

the actual Bondholders. The purpose of the rule is to "further the Bankruptcy Code's goal of complete disclosure during the business reorganization process," and it was "designed to cover entities which, during the bankruptcy case, act in a fiduciary capacity to those they represent … ." *In re N. Bay Gen. Hosp.*, 404 B.R. at 452.

3. **Confusion.**

First Security also contends that the Debtors seek to "create as much confusion between First Security and the [Bondholders] as possible so the Debtors can bypass First Security and negotiate directly with the [Bondholders]. *See* ¶ 8 of the Response. The simple fact is that First Security has caused and/or enabled confusion and interference with progress due to its non-compliance and refusal to provide the information.

First Security would not negotiate (it had no authority and said so) prior to the Petition Date when the Debtors requested the opportunity to do so, and little, if any, effort was made to facilitate such an effort. First Security refused then, as it does now, to provide the list of Bondholders to permit the Debtors to contact the decision makers (the Bondholders), although it plainly stated that it was merely a trustee and had no authority to negotiate. Nothing said or done by First Security since the Petition Date indicates that its duties or authority has changed. That means the Debtors <u>must</u> bypass the trustee to do anything of substance.

To date, all that has been proffered as the source of First Security's authority is the 2009 Indenture, which clearly provides the trustee with no substantive authority to speak for the Bondholders with regard to their claims. While First Security says that the Debtors cannot contact Bondholders directly, *see* Response at ¶ 1, and the Bondholders cannot act for themselves, *see* Response at ¶ 2, First Security will not affirmatively state (and has made no disclosures indicating) that it holds the necessary authority (because it does not) to fill the void or

13

how the free flow of information and openness in these proceedings can be accomplished.  As has been disclosed, First Security's affiliate, Crews and Associates, Inc. ("**Crews**") was O&G Leasing, LLC's placement agent that sold the 2009 Debentures to the Bondholders.  Crews knows the investors and the brokers holding the claims in these cases and (because it was responsible for selling all the Debentures) currently controls a large block of the Debtors' claims.  Crews is also believed to be an instrumental party controlling the flow of information to many Bondholders.  The Debtors have received information that Crews has communicated inaccurate and misleading information to certain Bondholders and other creditors on a number of occasions.  Regardless, without regard to whether inaccurate and misleading information was intentionally or unintentionally provided by Crews or any other party, the result is hindering this reorganization process.  First Security offers no solution to these problems, thus requiring that the Motion be filed (along with other measures) to address them.

So, the Debtors continue to find themselves in litigation with First Security and mired in Chapter 11 because of its refusal to afford the Debtors or the Bondholders – either before or after filing – an opportunity to resolve their disputes directly.  More troubling is that the Debtors know that incorrect and untimely information is being provided to certain Bondholders and creditors while other Bondholders are not receiving any information at all.  First Security's record as controller of the flow of information has been remarkably poor thus far.  This has prevented progress.  First Security's non-compliance with the Rule is the primary impediment to any party's ability to remedy the problem, and that is what has lead to confusion in these proceedings and the need to bypass the trustee.  The Court has the simple ability to enforce Rule 2019 as written and help end the confusion, all of which the rule was designed to prevent.

**D.     First Security should be barred from Participating until it complies with Rule 2019.**

After the Motion was filed to force compliance, and after denying that it had to comply or that it was able to comply, First Security then filed a verified statement that makes none of the disclosures required by the Rule. Unless and until First Security complies with its disclosure obligations under Rule 2019(a), it should not be heard or allowed to participate further in this case. Such relief is specifically provided by Rule 2019(b), which states that where, as here, First Security has not complied with its Rule 2019(a) disclosure obligations, the Court may "refuse to permit that . . . indenture trustee . . . to be heard further or to intervene in the case" or may "hold invalid any authority, acceptance, rejection, or objection given, procured, or received" by the indenture trustee. Fed. R. Bankr. P. 2019(b); *see also In re N. Bay Gen. Hosp.*, 404 B.R. 443, 452 (Bankr. S.D. Tex. 2009) (finding "gross untimeliness" of 2019 disclosures and the circumstances prompting its filing warranted prohibiting an unsecured creditor agent from being heard further or intervening in the case)*; In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 390 (Bankr. D. Az. 1990) ("If there is a failure to comply with the disclosure provisions of Bankruptcy Rule 2019, the Court may, *inter alia*, refuse to permit the entity acting on behalf of the parties from being heard further in a Chapter 11 case.").

The Debtors seek no tactical advantage by filing and prosecuting the Motion, nor are these proceedings a product of gamesmanship as First Security ironically implies. The Debtors have requested this information and have sought to obtain it on their own since this dispute began in early March. The Debtors want and need the information to make a good faith attempt to reach a resolution to this restructuring process – just as it sought from First Security before it commenced foreclosure proceedings. Without this information, and if the *status quo* remains,

the estate will endure a long, expensive process during which the Bondholders' recovery and the Debtors' exit from bankruptcy will be delayed, First Security's true role will remain questionable and undetermined, and the entire estate will suffer – all because of a deliberate refusal to follow the rules.

## CONCLUSION

Requiring compliance with Rule 2019 keeps with the rule's plain language and legislative intent. It will further the goals of all parties by facilitating free and open communication between the true stakeholders, ensuring that all parties are privy to timely and accurate information regarding these cases. First Security's compliance will also ensure that the Code's policy of full disclosure is satisfied and risks of subterfuge are minimized. Most importantly, First Security has tendered no legitimate reason for its failure to fully comply or that justifies being relieved of complying with Rule 2019. The Motion should be granted pursuant to a plain application of the rule, or First Security should be barred from participating until it does.

THIS the 1st day of October, 2010.

        Respectfully submitted,

        **O&G LEASING, LLC,** *et al.*


        By:  /s/ *Douglas C. Noble*

        Douglas C. Noble, MS Bar No. 10526
        **McCraney, Montagnet & Quin, PLLC**
        602 Steed Road • Suite 200
        Ridgeland, Mississippi 39157
        Telephone: (601) 707-5725
        Facsimile: (601) 510-2939
        Email: dnoble@mmqlaw.com
        www.mmqlaw.com

        E. Stephen Williams, MS Bar No. 7233
        Robert L. Holladay, Jr., MS Bar No. 100713
        **YoungWilliams P.A.**
        210 East Capitol Street
        Regions Plaza, Suite 2000
        P. O. Box 23059
        Jackson, MS  39225-3059
        Telephone: (601) 948-6100
        Facsimile: (601) 355-6136
        Email: steve.williams@youngwilliams.com
        Email: rob.holladay@youngwilliams.com

## **CERTIFICATE OF SERVICE**

    I do hereby certify that the foregoing pleading was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically and was separately served by e-mail on the following:

| | |
|---|---|
| Ronald H. McAlpin | Jim F. Spencer |
| Trial Attorney, Office of the U.S. Trustee | WATKINS & EAGER |
| ronald.mcalpin@usdoj.gov | jspencer@watkinseager.com |

SO CERTIFIED, this the 1st day of October, 2010.

                                                        /s/ *Douglas C. Noble*