IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | |
| O&G LEASING, LLC, *et al.* | ) ) | Case No. 10-01851 EE |
|  | ) | Chapter 11 |
| Debtors. | ) ) | Jointly Administered |

## RESPONSE TO FIRST SECURITY BANK'S MOTION TO RECONSIDER

COME NOW the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in these reorganization proceedings and file their *Response* to *First Security Bank, as Trustee's Motion to Reconsider and/or Alter and Amend Order Granting Motion of Debtors to Compel Compliance With Federal Rule of Bankruptcy Procedure 2019* [DK #232] (the "**Motion to Reconsider**"), as follows:

1.    The Motion to Reconsider is First Security's latest attempt to delay and hinder these proceedings for still unexplained and unjustified reasons. Instead of providing a legal basis warranting the requested reconsideration, First Security continues to avoid the underlying issues and concerns regarding Rule 2019 and, despite contending that the matter is a legal issue in opposing discovery requested by the Debtors, cherry picks certain facts and information to support its continued efforts. Rule 2019, the Court's reasoning and the *Order Compelling First Security Bank, as Trustee's Compliance with Fed. R. Bankr. P. 2019* [DK # 229] (the "**Order**") are clear and the Motion to Reconsider should be denied.

2.    First Security claims that the Court committed a clear error of law in applying Rule 2019 to it, an indenture trustee, notwithstanding the abundantly clear language of the rule. The stated basis is that the Court relied on misrepresentations by the Debtors as to the ease of

obtaining and compiling a "list" of bondholders, *see* Motion to Reconsider at ¶¶ 3 and 4, and that there is, in fact, no "list" of beneficial owners of the debentures that First Security either possessed or could obtain. The Court made no such findings of fact.

3. Had it been acknowledged before the hearing that there would be factual issues that would weigh on whether or not the Rule should be applied as written, the proof at the hearing would have likely included Exhibit "A" hereto, which is a document entitled "Returned O&G Exchange Investor Letters" that was created by First Security's broker/dealer affiliate, Crews and Associates, in September, 2009. While the Debtors do not know the date First Security first obtained this document (or list of bondholders), the Debtors made it available to First Security and its counsel in document production **months ago** and have noted its existence many times.

4. This document (or list) clearly indicates that Crews and Associates sent letters to the Debtors' then-existing bondholders under the then-current indentures (under all of which First Security was the indenture trustee) seeking approval of the 2009 exchange offer.[1] To send a "letter" one must have contact information. The amount of bonds held by each holder is also listed. Considering that the bonds were issued as "restricted securities" which are not freely tradable for 12 months from the date of issuance (September 15, 2009), it appears that First Security had (or had immediate access to) the information needed to comply with Rule 2019 when this case was filed, but certainly as of August 5, 2010, when the Debtors filed their motion to compel First Security's compliance with Rule 2019. Whether the list is still 100% accurate or not is irrelevant to the Motion to Reconsider, except that it shows unequivocally that First

---

[1] Note that "Cede & Company" is not listed anywhere on this document, although First Security has stated numerous times that Cede is the only "registered owner" that it could communicate or interact with. It appears that at least in September, 2009, Crews and Associates and First Security acknowledged the actual holders as the real parties in interest whose consent was needed to effect a transaction in the debentures.

2

Security can comply, that it is not in an "impossible position" as stated in the Motion to Reconsider, and that First Security's endless complaints and belligerent refusal to comply continue to be baseless.

5.  That's not the only reason that First Security's excuses for not complying don't hold water.  The Debtors, which are not banks or brokerage firms with direct access to the securities markets (like First Security and its affiliate, Crews and Associates, are), were able with only a few clicks of the mouse and telephone calls to identify numerous companies whose business is identifying the actual beneficial owners of a company's securities.  One firm contacted by the Debtors stated that its average success rate is between 90-100%.  It is clearly not the case that First Security (an experienced indenture trustee that works in tandem with its broker/dealer affiliate Crews and Associates) can't comply with the Court's Order.  First Security simply does not want to comply, for whatever reason, thus the Motion to Reconsider.

6.  The processes available to First Security are simple and straightforward.  First Security would either (i) rely on a list compiled by Crews and Associates, (ii) hire a firm like those described above to create the list, or (iii) request a Security Position Report ("SPR") from the DTC.  If the latter route were chosen, the SPR would provide the names, contact details and amounts held by all of the banks and brokers holding the bonds.  These custodians hold the bonds for the beneficial owners who are classified into one of two categories:  (i) non-objecting beneficial owners (NOBOs), or (ii) objecting beneficial owners (OBOs).  First Security would send a notice (a simple form letter, signed and then copied 29 times) to the brokers who should release the NOBOs information to First Security with no questions asked.  The brokers would have to request permission to release the OBOs information, but as the Debtors and First Security already know, many bondholders here have already expressed their desire to get timely

3

information regarding the Debtors and this case so this would not be a problem.  Common sense dictates that most bondholders will want as much information as they can get on the Debtors and the restructuring because all of this will undoubtedly have a material effect on the value of the bonds.

7. None of this is news to First Security.  The Motion to Reconsider states that there are 29 brokers holding the Debtors' debentures so it appears First Security has either already ordered a SPR from the DTC or had Crews and Associates research the bonds.   So why the indignant consternation and apparent intent to keep the bondholders in the dark?  Even if First Security did not want to rely on a list that it could surely get from its affiliate, why would it not simply send a form letter to the 29 brokers holding debentures and provide in good faith whatever information it was able to obtain?  An order from this Court issued under § 105 would certainly be encouragement for any objecting broker/dealers to comply?

8. There is no "manifest injustice" if First Security were to have to issue subpoenas to "some of the firms" who might object.  As set forth above, the Debtors believe this would be the exception rather than the rule and therefore this argument is without merit.  Plus, if it had issued subpoenas two months ago, we wouldn't be fighting this today and the estate and the bondholders would have avoided thousands of dollars of expense forcing First Security to follow the rules.

9. As an aside, First Security mischaracterizes the Debtors' request to exercise its contractual right to require that the debentures be removed from the DTC registration program as being one made in recognition of  "the impossible position in which they have put First Security."  This was done, in part, to quell all the bickering and, frankly, because the Debtors expected First Security to continue to contest compliance.  But it was also done based on First

4

Security's conduct, purported excuses and positions with regard to what it can do/will do and what is "impossible" – all raising real questions as to whether it can fulfill its obligations as a fiduciary trustee under the terms of the indenture, whether it can verify any instruction it purports to receive and whether the plan will be properly solicited and voted upon.  Correspondence is still not reaching bondholders, although First Security encouraged the Debtors to transmit all information through it and, indeed, requested transmission by First Security to all bondholders.  The Debtors do believe that the debentures should either be removed from the DTC registration system – as if First Security's antics here aren't grounds enough – or, First Security should resign as trustee immediately.  The Debtors believe that other reputable institutions will gladly serve as a replacement trustee.

   10. The Motion to Reconsider is a continued waste of time, is presented without any basis for being sustained and supported by arguments that just don't fly.  If First Security would have spent the time it took to manufacture its argument and prepare its Motion to Reconsider in a good faith attempt to comply with the Court's Order, it could have already done so.  Once again, First Security's actions and apparent intentions are inconsistent with legitimate goals and positions (particularly those of a fiduciary), and the continued delay of these proceedings is detrimental to all interested parties.

   WHEREFORE, for the reasons set forth above the Court should deny First Security's Motion for Reconsideration.

   THIS the 21st day of October, 2010.

Respectfully submitted,

**O&G LEASING, LLC, et al.**

By: /s/ Robert L. Holladay, Jr.

Robert L. Holladay, Jr. (MS Bar #100713)
E. Stephen Williams (MS Bar #7233)
**YoungWilliams P.A.**
210 East Capitol Street
Regions Plaza Suite 2000
P. O. Box 23059
Jackson, MS  39225-3059
Telephone:  (601) 948-6100
Facsimile:  (601) 355-6136
Email:  rob.holladay@youngwilliams.com
Email:  steve.williams@youngwilliams.com

Douglas C. Noble, MS Bar No. 10526
**McCraney, Montagnet & Quin, PLLC**
602 Steed Road • Suite 200
Ridgeland, Mississippi 39157
Telephone:  (601) 707-5725
Facsimile:   (601) 510-2939
Email:  dnoble@mmqlaw.com
www.mmqlaw.com

## **CERTIFICATE OF SERVICE**

    I do hereby certify that the foregoing pleading was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically and was separately served by e-mail on the following:

| | |
|---|---|
| Ronald H. McAlpin<br>Trial Attorney, Office of the U.S. Trustee<br>ronald.mcalpin@usdoj.gov | Jim F. Spencer<br>WATKINS & EAGER<br>jspencer@watkinseager.com |
| Derek A. Henderson<br>Attorney at Law<br>d_henderson@bellsouth.net | |

SO CERTIFIED, this the 21st day of October, 2010.

                                                                      /s/ *Robert L. Holladay, Jr.*

# RETURNED O&G EXCHANGE INVESTOR LETTERS

| Rep | Account | 2007A 67084VAC3 | 2007B 67084VAD1 | 2008A 67084VAE9 | 2008B 67084VAF6 | 2008C 67084VAG4 | 2008D 67084VAH2 | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Bart Barnwell | Firtan | 865 | 50 | 3,380 | 600 | 1,500 | 500 | 6,895 |
| Bart Barnwell | Bart Barnwell | | 235 | | 480 | | | 715 |
| Roland Pennington | Willis Shaw | 80 | | 250 | | 185 | 150 | 665 |
| Bart Barnwell | Alpa & Co | 615 | | 825 | | 300 | | 1,740 |
| Clint Davis | Clint Davis | | | | 10 | | | 10 |
| Clint Davis | Sam Eaton | | | | | | | |
| Alan Barksdale | Alan Barksdale | | 30 | 225 | 300 | 15 | 15 | 570 |
| Bart Barnwell | Farmers Home | 80 | | 50 | | 50 | 30 | 210 |
| Bart Barnwell | OGM Corp | 20 | | | | 25 | 25 | 70 |
| Scott Highfill | Gayle Buff | 15 | | 155 | | | | 170 |
| Steve Selakovich | Smith Cap | 120 | | 400 | | | | 520 |
| Bart Barnwell | Gene Cauley | | | | 500 | | | 500 |
| Bart Barnwell | Jeff Anile | | | | 20 | | | 20 |
| Bart Barnwell | Lewis Anile | | 40 | | 65 | | 50 | 155 |
| Mark Young | Prophet Asset | 95 | | 120 | | | | 215 |
| Bart Barnwell | Schmidtberger Trust | | | | 30 | | | 30 |
| Bart Barnwell | Luanne Anile | | | | 50 | | | 50 |
| Owl Thurmond | Frank Thurmond | | | 25 | | 50 | | 75 |
| Owl Thurmond | Barbara Thurmond | | | | | 20 | | 20 |
| Rush Harding | Hal Crafton | 20 | | | | | | 20 |
| Rush Harding | Harding Crafton Inv. | | | | 25 | | | 25 |
| Bart Barnwell | Joan Rollins | | | 100 | | 55 | | 155 |
| Leroc Spradlin | Girvin Financial | 20 | | 100 | | | | 120 |
| Tim Craig | NFI Advisors | 165 | | 988 | 236 | 240 | 180 | 1,809 |
| Wiley Grubbs | Wiley Grubbs | 5 | | | | | | 5 |
| Trip Pumphrey | Magaly Brabner | | | 55 | | | | 55 |
| Bart Barnwell | James Davison | | | 3,000 | 500 | | | 3,500 |
| Scott Highfill | Hudson Heritage | 20 | | 200 | | 125 | | 345 |
| Scott Highfill | Scott Highfill | | | | 10 | | | 10 |
| Bart Spradlin | Bachman Trust | 400 | | 245 | 130 | | | 775 |
| Crews & Associates | Crews & Associates | | | | | 15 | | 15 |
| Ho McNeil | Todd Kiper | 40 | | 85 | | | | 125 |
| Scott Highfill | Chadwick & D'amato | | 45 | | | 225 | 125 | 350 |
| Tim Craig | White Pine Inv. | | | 35 | | | | 35 |
| Brian Odle | Allied Funeral | 25 | | | | | | 25 |
| Ben Eiler | TX Fund | | | 170 | | 135 | | 305 |
| Dosh Daniel | Mina Knippel | 20 | 5 | 25 | | | | 50 |
| Wiley Grubbs | Columbia Vlahos | 5 | | | | | | 5 |
| Tim Craig | Sigma Financial | | | | | | | |
| Scott Highfill | Richard Lamping | | | | 50 | | | 50 |
| Bart Barnwell | Schmidtberger IRA | | | 50 | | | | 50 |
| Ben Eiler | Ronald Lamping | | | 25 | | | | 25 |
| Ben Eiler | Jim Snyder | | | | 200 | | | 200 |
| Bart Barnwell | Arthur Taylor | 30 | | 100 | | 20 | | 120 |
| Trip Pumphrey | Linda Pavlick | | | | | 25 | | 25 |
| Wiley Grubbs | | | | | | | | |
| Trustee Vote | | 125 | 435 | 2,545 | 670 | 120 | 370 | 4,265 |
| | TOTAL | 2,765 | 840 | 13,153 | 3,886 | 3,020 | 1,515 | 25,179 |
| Total Par Amount Outstanding | | $ 4,855,000 | $ 1,110,000 | $ 17,600,000 | $ 4,400,000 | $ 3,500,000 | $ 2,100,000 | $ 33,565,000 |
| Percentage Approval | | 56.95% | 75.68% | 74.73% | 88.32% | 86.29% | 72.14% | 75.02% |



EXHIBIT "A"

|                 | Rig 48      | Rate  | Rig 3       | Rate   | Rig 22/Rig 28 | Rate   |
|-----------------|-------------|-------|-------------|--------|---------------|--------|
| Sr Note Current | $ 4,652,000 | 8.00% | $ 4,855,000 | 9.25%  | $ 17,600,000  | 10.00% |
| Sub Note Current| $      -    |       | $ 1,110,000 | 15.00% | $  4,400,000  | 15.00% |
| **Total**       | **$ 4,652,000** |   | **$ 5,965,000** |    | **$ 22,000,000** |     |