**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| O&G LEASING, LLC, et al. | ) | Case No. 10-01851 EE |
| | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |
| | ) | |

## PLAN OF REORGANIZATION

This Plan of Reorganization is proposed and submitted on July 1, 2011, by O&G Leasing, LLC ("**O&G**") and Performance Drilling Company, LLC ("**Performance**"), the above-captioned debtors and debtors-in-possession (each generally a "**Debtor**" and, collectively, the "**Debtors**").

## INTRODUCTION

The Debtors propose this Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "**Plan**"). ALL CREDITORS ARE ENCOURAGED TO CONSULT THE ACCOMPANYING DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. NO OTHER SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## ARTICLE 1.
### Definitions

For purposes of this Plan and any subsequent amendments or modifications hereof, the following words and phrases shall have the meaning set forth below when used herein, and any term used herein that is defined in the Bankruptcy Code, but not otherwise defined herein, shall have the meaning set forth in the Bankruptcy Code:

1.1.    "**2009 Debentures**" are, collectively, the Senior Debentures and the Subordinate Debentures issued by O&G pursuant to the 2009 Indenture.

1.2.    "**2009 Indenture**" means that certain Amended and Restated Trust Indenture dated as of September 15, 2009 entered into by O&G and First Security.

1.3.    "**2011 Senior Debentures**" means the debentures issued to the Holders of Allowed Class 2 Claims, if any, in accordance with Section 5.2 of this Plan.

1.4.    "**2011 Subordinate Debentures**" means the unsecured debentures issued to the Holders of Allowed Class 5 Claims in accordance with Section 5.5 of this Plan.

1.5. **"Administrative Claim"** means any indebtedness or obligations incurred or assumed by the Debtors in connection with administration of these estates or performance of this Plan, any fees and expenses of Professionals that are or become an Allowed Claim under § 503(b) of the Bankruptcy Code, the fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), and any other Allowed Claims for actual, necessary costs and expenses incurred after the Filing Date for preserving the estate and operating the businesses of the Debtors asserted under §§ 503(b) and 507(a)(1).

1.6. **"Administrative Bar Date"** is the deadline for assertion of Administrative Claims against the estate as established in Section 4.1.2 of the Plan.

1.7. **"Allowed"** or **"Allowed Claim"** means a claim (a) in respect of which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 of the Federal Rules of Bankruptcy Procedure, or filed thereafter with the Court pursuant to a final order, or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b) of the Federal Rules of Bankruptcy Procedure and not listed as disputed, contingent, or unliquidated as to amount, and in either case, as to which no written objection to the allowance thereof has been filed within any applicable period of limitation, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include unmatured or post-petition interest on the principal amount of such claim, except as specifically provided herein.

1.8. **"Ballot"** means, with respect to any class of Claims that is Impaired and whose members are entitled to vote under this Plan, the forms which will be distributed to Holders of Claims to be used for showing acceptance or rejection of this Plan.

1.9. **"Bar Date"** is respectively, the deadline dates by which a proof of claim was required to be filed with the clerk of the Bankruptcy Court, as established by (a) the *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines* [Dkt #45] filed on May 28, 2010, said general deadline being September 20, 2010 for all Creditors except a Governmental Unit, and November 17, 2010 for all Governmental Units; (b) *the Notice to Creditors Added to Debtor(s) Creditor List/Matrix/Schedules* [Dkt #58] filed on June 2, 2010; (c) the *Notice to Creditors Added to Debtor(s) Creditor List/Matrix/Schedules* [Dkt #253] filed on November 3, 2010; and (d) the *Notice to Creditor of Amendment to Scheduled Claim* [Dkt #256] filed on November 4, 2010.

1.10. **"Budget"** means, with respect to any particular period, the operating budget for the Debtors setting forth, in reasonable detail, projected operating income and expenses, capital expenditures, other costs and expenses, accruals, revenues from operations and any other source, amounts and sources of capital that the Reorganized Debtors will require, amounts and character of distributions under the Plan, and any other financial information that the Debtors deem relevant with respect to operations for that particular period, prepared on both a quarterly and year-to-date basis through the last day of each quarter of the subject fiscal year. The Budget will be generally consistent with the Debtors' thirteen (13) week budgets prepared and approved pursuant to the Debentures Cash Collateral Order in these Cases.

1.11. **"Case"** or **"Cases"** means, as applicable, the chapter 11 case of each Debtor or the jointly administered chapter 11 cases of the Debtors, collectively, currently pending in the Southern District of Mississippi.

1.12. **"Cash"** is lawful currency of the United States of America.

1.13. **"Causes of Action"** means any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, debts, dues, sums of money, accounts, judgments, claims and demands

whatsoever of any of the Debtors, whether arising before or after the Petition Date, known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, including all Causes of Action and rights to recover money or property under Chapter 5 of the Bankruptcy Code.

1.14.    **"Claim"** shall have the meaning set forth in Bankruptcy Code § 101(5) with regard to any claim asserted against either of the Debtors.

1.15.    **"Code"** or **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. § 101, et seq., and any amendments thereto.

1.16.    **"Company Property"** is the assets and property of the Debtors that are not Senior Debentures Collateral or WSB Collateral and includes all "Expansion Assets" as defined in the 2009 Indenture.

1.17.    **"Confirmation Hearing"** is the hearing held by the Bankruptcy Court in accordance with Bankruptcy Code § 1128 to consider confirmation of this Plan.

1.18.    **"Confirmation Order"** means the order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code, whether or not such order shall have become a Final Order.

1.19.    **"Court"** or **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Mississippi in which the Debtors' Cases are pending, and any court having competent jurisdiction to review its orders of or to hear appeals from its decisions.

1.20.    **"Covered Parties"** means the employees, officers, managers and members of the Debtors, and all of the Professionals currently employed by the Debtors whose retention has been approved by the Bankruptcy Court, from and after the Petition Date, up to and including the Effective Date.

1.21.    **"Debentures Cash Collateral Order"** is, collectively, the *interim* and final orders entered by the Bankruptcy Court in this Case bearing Docket Nos. 46 and 101 governing the Debtors' use of Cash asserted by First Security to be Cash Collateral (as defined in said orders) upon which it holds a Lien.

1.22.    **"Debenture Funds"** has the meaning set forth in Section 7.2.d of this Plan.

1.23.    **"Debenture Retirement Program"** is the program set forth and described on Exhibit hereto by which the Holders of the New Debentures will be given the opportunity to present their New Debentures for early and priority redemption and retirement.

1.24.    **"Debt Reserve Account"** means that account to be established on the Effective Date into which the Reorganized Debtors will make deposits of Free Cash, after funding all amounts required to first be funded into the Interest Reserve Account, to make the payments called for under this Plan in accordance with Section 7.2 hereof.

1.25.    **"Debtor"** or **"Debtors"** shall have the meaning set forth in the preamble of this Plan, above.

1.26.    **"Disclosure Statement"** is the disclosure statement accompanying this Plan and approved by the Court as containing adequate information concerning the Plan, in accordance with Bankruptcy Code § 1125.

1.27.    **"Disputed"** with respect to any Claim or Interest is one (i) to which an objection is timely filed, or which is otherwise disputed, until such objection is resolved by Final Order, or (ii) which is listed as disputed, contingent or unliquidated on the schedules filed by the relevant Debtor in accordance with Bankruptcy Rule 1007.

1.28.    **"Drilling Rigs"** means the five (5) drilling rigs owned by O&G currently referred to as Rig 3, Rig 14, Rig 22, Rig 28, and Rig 48.

1.29.    **"Effective Date"** means the date after the entry of the Confirmation Order confirming this Plan upon which all conditions to the effectiveness of the Plan have been satisfied or waived.

1.30.    **"Executory Contract"** means any executory contract of any of the Debtors as such term is used in § 365 of the Bankruptcy Code.

1.31.    **"Final Order"** shall mean an order or judgment of the Court as to which the time to modify, amend, or appeal, petition for certiorari, or seek reargument or rehearing has expired and as to which no modification, amendment, appeal, reargument, certiorari petition, or rehearing is pending, or if such action has been sought, the order of the Court has been affirmed by the highest court to which the order was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, or the appeal is dismissed or rendered moot, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.

1.32.    **"First Security"** is First Security Bank of Searcy, Arkansas, as indenture trustee under the 2009 Indenture.

1.33.    **"Free Cash"** means, for any period, the excess of all revenues and other income generated by the Reorganized Debtors from the use and operation of the Drilling Rigs, after deducting (i) all operational expenditures of the Reorganized Debtors, including without limitation all expenses required to own and operate the Drilling Rigs, including without limitation all maintenance, repair, salaries and benefits, insurance, supplies, replacements, improvements, fuel, rentals, property taxes, and other direct expenses, charges and deductions incurred or accrued by the Reorganized Debtors in connection therewith; (ii) sales, general and marketing expenses incurred, including without limitation costs of prosecution of Claims and Causes of Action, (iii) federal and state taxes attributable to the Reorganized Debtors' income derived from the ownership and use of the Drilling Rigs whether currently due, paid or accrued during the relevant period; (iv) amounts payable to the Holders of Allowed Claims in Class 3 and Class 4 under this Plan; and (v) amounts set aside for reserves in an amount not to exceed $2,000,000; all generally consistent with the Budget.  Notwithstanding the foregoing or anything in this Plan to the contrary, Free Cash shall not include proceeds or receipts from the sale or other disposition of the WSB Collateral or Company Property.

1.34.    **"General Unsecured Claims"** shall mean all Unsecured Claims against the Debtors that are not otherwise separately defined and classified.

1.35.    **"Holder"** means the beneficial owner of any Claim or Interest.

1.36.    **"Impaired"** means, with regard to any Class of Claims or Interests, that the rights of the Claimants in such Class are deemed impaired under § 1124 of the Bankruptcy Code.

1.37.    **"Interest"** is the legal, equitable and contractual rights of the owner or Holder of an equity interest in any of the Debtor entities.

1.38.    **"Interest Reserve Account"** means that account to be established on the Effective Date into which the Reorganized Debtors will make deposits from Free Cash necessary to fund all payments of interest to the Holders of Class 1 Claims and, if applicable, Class 2 Claims under this Plan in accordance with Section 7.2 hereof.

1.39.    **"Lease"** means any unexpired lease of any of the Debtors as such term is used in § 365 of the Bankruptcy Code.

1.40.    **"Lien"** is any lien, security interest, encumbrance, charge against or other interest in property or assets of any of the Debtors which secures payment of a Claim or performance of an obligation of any of the Debtors.

1.41.    **"Lien Adversary"** means those consolidated adversary proceedings styled O&G Leasing, LLC, et al. vs. First Security Bank, as Trustee, et al., Adversary Proceeding No. 10-00054, and First Security Bank, as Trustee vs. O&G Leasing, LLC, et al., Adversary Proceeding No. 10-00070.

1.42.    **"New Debentures"** are, collectively, the 2011 Senior Debentures, if any, and the 2011 Subordinate Debentures issued by the Reorganized Debtors pursuant to this Plan.

1.43.    **"New Indenture"** is the indenture to be executed, and pursuant to which the 2011 Senior Debentures will be issued to the Holders of Allowed Class 2 Claims, in accordance with Section 5.2 of this Plan and in form and substance substantially similar to the 2009 Indenture except as modified by the terms of this Plan with regard to the Senior Debentures Secured Claim.

1.44.    **"New Trustee"** means the indenture trustee to be named by the Debtors to serve in such capacity under the New Indenture.

1.45.    **"O&G"** shall have the meaning set forth in the preamble to this Plan.

1.46.    **"Octane"** is, collectively, Octane Funding, LLC and Octane Funding II, LLC.

1.47.    **"Other Secured Claims"** shall include all Holders of Secured Claims against the Debtors other than the WSB Secured Claim and the Senior Debentures Secured Claims.

1.48.    **"Performance"** shall have the meaning set forth in the preamble to this Plan

1.49.    **"Petition Date"** shall mean May 21, 2010, the date each of the Debtors filed their voluntary Chapter 11 petitions for relief with the Court.

1.50.    **"Plan"** shall mean this Plan, all addenda, exhibits, schedules, releases and other attachments, and any amendments, modifications, or alterations thereof.

1.51.    **"Plan Supplement"** is the document containing the various supplementary documents and pleadings referenced in this Plan to be filed in these Cases prior to solicitation of votes on the Plan.

1.52.    **"Priority Claim"** shall mean an allowed unsecured claim entitled to priority under §§ 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), 507(a)(7) and 507(a)(8) of the Code.

1.53. **"Professionals"** means the professionals retained by the Debtors and approved by the Court, and any other professionals that are authorized to be compensated from the estate by Final Order of the Court.

1.54. **"*pro rata*"** shall mean in the same proportion that the amount of any Allowed Claim or Interest in a class bears to the aggregate amount of all Claims or Interests in such class, including in such aggregate amount both the Allowed Claims and any then unresolved Disputed Claims in such class as of the date of any distribution payment pursuant to this Plan.

1.55. **"Rejection Claim"** is any Unsecured Claim asserted under § 502(g) of the Bankruptcy Code resulting from the rejection of any Executory Contract or Lease pursuant to § 365 of the Bankruptcy Code.

1.56. **"Reorganized Debtors"** shall mean the Debtors, as of and after the Effective Date and implementation and consummation of this Plan.

1.57. **"Sajac"** means Sajac O&G Investors, LLC, which is the sole owner of the equity membership Interest in O&G.

1.58. **"Secured Claim"** shall mean, unless otherwise Disputed in whole or in part, an Allowed Claim which is secured by a Lien against or other interest in property in which any Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value of such secured claim as determined in accordance with § 506(a) of the Code.

1.59. **"Senior Debentures"** means the $25,955,000 of 10.50% Senior Series 2009A Debentures, dated September 15, 2009, and due September 15, 2013, issued pursuant to the 2009 Indenture.

1.60. **"Senior Debentures Collateral"** shall mean that certain property and assets of the Debtors, if any, determined by the Bankruptcy Court in the Lien Adversary to be collateral security in which First Security holds a valid and unavoidable Lien under the 2009 Indenture but which does not include WSB Collateral or Company Property.

1.61. **"Senior Debentures Secured Claims"** means the Secured Claims asserted by First Security (filed as O&G Claim No. 8-1, Performance Claim No. 7-2), under the 2009 Indenture and on behalf of the Holders of Senior Debentures, to be secured by the Senior Debentures Collateral. The Senior Debentures Secured Claims are Disputed by the Debtors, and determination as to the Allowed amount of and extent to which the Senior Debentures Secured Claims are Secured Claims shall be made by adjudication or other resolution of the Lien Adversary.

1.62. **"Subordinate Debentures"** means the $7,610,000 of 16.00% Subordinate Series 2009B Debentures, dated September 15, 2009, and due September 15, 2013, issued by O&G pursuant to the 2009 Indenture.

1.63. **"Tax Claim"** means any Claim, or portion thereof, entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code to the extent it becomes an Allowed Claim.

1.64. **"Unimpaired"** means, as to any Class of Claims or Interests, that the rights of the Claimants in such Class are not Impaired.

1.65.    **"Unsecured Claim"** shall mean any Claim which arises under any Executory Contract or Lease which has been rejected, any deficiency Claim, any Claim of a general trade creditor, any Claim for unpaid wages or benefits (including Claims for vacation, sick and holiday pay) to the extent not entitled to priority and any other obligation, liability or Claim of any kind or nature held against the Debtors which was incurred on or before the Petition Date; *provided, however,* that an Unsecured Claim shall not include any Secured Claim, Administrative Expense, Priority Claim or Tax Claim.

1.66.    **"Unsecured Debentures Claims"** shall mean the Unsecured Claims of the Holders of 2009 Debentures which shall receive one of the alternative treatments provided to them as members of Class 5 of this Plan.

1.67.    **"Unsecured Deficiency Claims"** shall mean, in the event that the Senior Debentures Secured Claims are determined to be Allowed Claims, the Unsecured Claims comprising the difference between the aggregate asserted amount of Class 2 Claims and the aggregate amount to be paid to Holders of Class 2 Claims under this Plan.

1.68.    **"WSB"** means Washington State Bank.

1.69.    **"WSB Collateral"** is the property and assets of the Debtors securing the WSB Secured Claim, being that certain Drilling Rig currently referred to as "Rig 48" and related parts and equipment, and the income, revenue and proceeds generated by or from such collateral, all being more specifically described in those certain loan and security documents entered into between the Debtors and WSB prior to the Petition Date.

1.70.    **"WSB Funds"** has the meaning set forth in Section 7.2.d of this Plan.

1.71.    **"WSB Secured Claim"** is the Allowed Secured Claim of WSB that is secured by its Liens on the WSB Collateral.

**ARTICLE 2.**
**Plan Summary**

The Plan is a plan of reorganization and is to be implemented and executed through substantive consolidation and reorganization of the Debtors as of the Effective Date. The Debtors will accomplish their reorganization, primarily through restructuring of their significant long term indebtedness to the Holders of the 2009 Debentures and to WSB. Because of the pending Lien Adversary, the Holders of the 2009 Debentures will be classified in Classes 2, 5 and/or 7, and the Plan provides for alternate and provisional treatment to those Holders for different outcomes of the Lien Adversary. In either instance, the 2009 Debentures will be cancelled, and Reorganized Debtors will issue the 2011 Subordinate Debentures and, if the Class 2 Senior Debentures Claims are Allowed, the 2011 Senior Debentures to those entitled to receive them hereunder. The WSB Secured Claim will be restructured through a new secured loan. The Plan provides for the payment in full of all Allowed Administrative Claims, Tax Claims and Priority Claims, if any, and provides for payment to Unsecured Claims from property on hand as of the Effective Date or from the revenues earned from the Reorganized Debtors' operations after the Effective Date. The Interest in O&G will be cancelled, and the holders of such Interest will not receive any distribution under the Plan.

## ARTICLE 3.
### Classification Of Claims and Interests

3.1.    *Unclassified Claims*.    Administrative Claims, Tax Claims and Priority Claims of the Debtors are not classified.

3.2.    *Classified Claims and Interests*.    Claims against and Interests in the Debtors are classified in the following classes:

3.2.1.    Class 1: WSB Secured Claim

3.2.2.    Class 2: Senior Debentures Secured Claim

3.2.3.    Class 3: Other Secured Claims

3.2.4.    Class 4: Unsecured Trade Claims

3.2.5.    Class 5: Unsecured Debenture Claims

3.2.6.    Class 6: Octane Claims

3.2.7.    Class 7: Unsecured Deficiency Claims

3.2.8.    Class 8: Interests

## ARTICLE 4.
### Treatment of Unclassified Claims

4.1.    *Administrative Claims*.

4.1.1.    Unless otherwise agreed, each Holder of an Allowed Administrative Claim shall be paid in Cash equal to the amount of the Holder's Allowed Administrative Claim on the later of the Effective Date or the date on which the Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable.

4.1.2.    All requests for the payment of previously unpaid Administrative Claims, including without limitation final applications of Professionals for payment of fees and reimbursement of expenses, shall be filed with the Court no later than thirty (30) days after the Effective Date or such other date as may be fixed by the Court, otherwise such unpaid Administrative Claims shall be waived, discharged and forever barred.

4.1.3.    All fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 that become due prior to the Effective Date shall be paid by the Debtors on the Effective Date, and all such fees which become due thereafter, if any, shall be paid by the Debtors when due.

4.2.    *Tax Claims*.    Tax claims that become Allowed Claims shall be paid in full, together with any applicable interest required by applicable state or federal law, in Cash on the later of the Effective Date or the date such Claim is Allowed.

4.3.    *Priority Claims*.    Priority Claims that are or become Allowed Claims shall be paid in full in Cash on the later of the Effective Date or the date such Claim is Allowed.

8

## ARTICLE 5.
## Treatment of Classified Claims and Interests

5.1.    *Class 1:  WSB Secured Claim*

**Treatment**.  Class 1 consists of the WSB Secured Claim, which is an Allowed Secured Claim determined pursuant to § 506(b) of the Bankruptcy Code in the amount of $4,504,177 and which is secured by the WSB Collateral.  The Debtors' obligations for repayment of the Class 1 Claim shall be evidenced by a new secured five (5) year term loan, with quarterly payments of interest only at the floating interest rate of Prime plus 2% but with a floor of 5% and a ceiling of 8%, with a balloon payment upon maturity.  WSB shall receive payments of interest and principal in accordance with Section 7.2 of this Plan.  The Debtors shall, on or before the Effective Date, place on deposit with WSB in a restricted reserve account the amount of $125,000.  These funds shall be used only in the event that the Reorganized Debtors become unable to make regular interest payments as and when due.  If after depletion of the amounts in the restricted reserve account the Reorganized Debtors are unable to make regular interest payments, then the default provisions below shall be implemented.  On the Effective Date, the Reorganized Debtors shall execute and deliver to WSB the loan and security documents described in Section 6.7.1, below, which shall be substantially similar to those existing on the Petition Date except as modified by the terms of this Plan with regard to the WSB Secured Claim granting to WSB valid, enforceable, first priority Liens in the WSB Collateral, which loan and security documents, together with all payments and performance called for thereunder, shall be in full satisfaction, discharge and release of said Allowed Class 1 Claim.

In the event of default by the Reorganized Debtors on its payment or performance obligations to WSB, the Debtors shall have the following remedies available to them if taken within thirty (30) days of notice of default having been given:

a.    Elect to engage a broker, mutually agreeable to WSB and the Reorganized Debtors, to (i) sell, within One Hundred Twenty (120) days, such of the WSB Collateral as is necessary to cure the defaults and reinstate the loan, with all excess proceeds to be applied to reduction of the principal amount owed to WSB, or (ii) sell all of the WSB Collateral in a commercially reasonable manner; or

b.    Elect to undertake transfer of such of the WSB Collateral to WSB, at the Reorganized Debtors' election, in partial or full satisfaction of the indebtedness owed, based upon a valuation either to be agreed upon between the Reorganized Debtors and WSB or to be determined by the Bankruptcy Court after notice and a hearing, and, if the transfer is one in partial satisfaction and any amounts received by WSB exceed that necessary to cure the defaults, such excess proceeds shall be applied to reduction of the principal amount owed to WSB.

**Impairment**.  Class 1 is Impaired and entitled to vote to accept or reject the Plan.

5.2.    *Class 2: Senior Debentures Secured Claims*

Class 2 consists of the Senior Debentures Secured Claims, all of which are Disputed.  The nature and extent to which the Senior Debentures Secured Claims are Allowed Claims, if at all, shall be determined in the Lien Adversary.  If after final resolution of the Lien Adversary it is determined that the Senior Debentures Secured Claims are Allowed Claims, in whole or in part, the Allowed amount of Class 2 Claims shall be determined based on the value as of the Confirmation Date pursuant to § 506(a)(1) of the Bankruptcy Code of the applicable Senior Debentures Collateral determined to secure the Allowed Class 2 Claims.

**Treatment**.  If the Class 2 Claims are determined to be Allowed Claims, then within sixty (60) days after the date that the order finally resolving the Lien Adversary becomes a Final Order, the Reorganized Debtors shall execute and deliver to the New Trustee the New Indenture, pursuant to which the 2011 Senior Debentures will be issued and a valid, enforceable, first priority Lien in the applicable Senior Debentures Collateral, as determined by the Court, will be granted, which loan and security documents, together with all payments and performance called for thereunder, shall be in full satisfaction, discharge and release of said Allowed Class 2 Claims.

The 2011 Senior Debentures shall be issued in the principal face amount equal to the Allowed amount to be determined by the Bankruptcy Court, not to exceed $25,955,000.  The 2011 Senior Debentures shall bear interest at five percent (5%), payable quarterly, and shall have a maturity date that is ten (10) years from the date of issuance.  The 2011 Senior Debentures shall receive payments of interest and principal in accordance with Section 7.3 of this Plan.

In the event of default by the Reorganized Debtors on its payment or performance obligations to the Holders of Class 2 Claims under the New Indenture, the Debtors shall have the following remedies available to them if taken within thirty (30) days of notice of default having been given:

        a.      Elect to engage a broker, mutually agreeable to the New Trustee and the Reorganized Debtors, to sell, within One Hundred Twenty (120) days, such of the Senior Debentures Collateral, at the Reorganized Debtor's election, as is necessary to cure the defaults, with all excess proceeds to be applied to reduction of principal or returned to the Company, as appropriate; or

        b.      Elect to undertake transfer of such of the Senior Debentures Collateral to the New Trustee, at the Reorganized Debtors' election, in partial or full satisfaction of the indebtedness owed, based upon a valuation either to be agreed upon between the Reorganized Debtors and the New Trustee or to be determined by the Bankruptcy Court after notice and a hearing, as is necessary to cure the defaults, and, if the transfer is one in partial satisfaction and any amounts received by the New Trustee exceed that necessary to cure the defaults, such excess proceeds shall be applied to reduction of principal or returned to the Company, as appropriate; or

**Impairment**.  All Class 2 Claims are Disputed, but for purposes of the Plan, shall be deemed for purposes of voting on the Plan to hold temporarily Allowed Claims pursuant to Bankruptcy Rule 3018(a), in the amount of $25,955,000.  All Class 2 Claims are Impaired and entitled to vote on the Plan.

5.3.    *Class 3: Other Secured Claims*

**Treatment**.  Holders of Allowed Class 3 Claims shall have the terms of their respective loan and security agreements existing on the Petition Date reinstated in full force and effect on the Effective Date and shall receive payments on account of their Class 3 Claim in accordance with said terms, except as modified herein.  Payments shall commence on the first installment payment date arising after the Effective Date, and all delinquent amounts owed by the Debtors whether accruing prior to or after the Petition Date shall be added to the outstanding principal amount of the Allowed Claim as of the Effective Date, with the number of additional monthly installment payments increased as necessary to repay the delinquent amounts.  Such payments shall be in full satisfaction, discharge and release of all Class 3 Claims.

**Impairment**.  All Class 3 Claims are Impaired and therefore entitled to vote on the Plan.

5.4.    *Class 4: General Unsecured Claims*

**Treatment**.  Each Holder of an Allowed Class 4 Claim will receive quarterly payments of Cash in full satisfaction, discharge, and release of its allowed Class 4 Claim.  If such Claims are not Disputed, Holders shall receive the first of eight (8) quarterly payments on the last day of the first calendar quarter after the Effective Date, and each payment thereafter shall be made on the last day of each successive quarter until such claims are paid in full.  If any such Claim is Disputed and becomes Allowed after the Effective Date, Holders shall begin receiving quarterly payments on the last day of the first calendar quarter after such Claim becomes an Allowed Claim.  Quarterly payments shall continue over a twenty four (24) month period after which the Allowed amount of each Class 4 Claim shall have been fully paid, in full satisfaction, discharge and release of said Allowed Class 4 Claims.

**Impairment**.  Class 4 is Impaired and entitled to vote on the Plan.

5.5.    *Class 5:  Unsecured Debenture Claims*

**Treatment**.  Until the Lien Adversary has been resolved, the number and amount of Holders of Allowed Class 5 Claims will not be finally determined.  The alternative treatment of Allowed Class 5 Claims shall be made as follows:

a.    If it is determined that the Class 2 Secured Claims are Allowed and that the Liens held by First Security on behalf of such Holders are valid, perfected and unavoidable, then Holders of Subordinate Debentures shall hold Allowed Class 5 Claims and receive their *pro rata* share of 2011 Subordinate Debentures in the principal face amount of $7,610,000.  The Holders of 2011 Subordinate Debentures will receive quarterly payments, in an amount equal to the Debenture Funds available for distribution to the Holders of such Claims in each particular quarter, payable as of the last day of each calendar quarter and commencing as of the last day of the first calendar quarter, commencing on the eleventh (11th) anniversary of the date of issuance of the 2011 Subordinate Debentures and shall be paid in full no later than the fifteenth (15th) anniversary of the date of issuance of the 2011 Subordinate Debentures; provided, however, that such Holders may receive earlier or different payments in accordance with Section 7.3.c upon repayment of the Class 1 Secured Claim and/or the Class 2 Secured Claims or as otherwise provided for in the Debenture Retirement Program.  Under this scenario, the 2011 Subordinate Debentures shall be issued simultaneously with the issuance of the 2011 Senior Debentures in full satisfaction, discharge and release of all Allowed Class 5 Claims.

b.    If it is determined that the Class 2 Claims are Disallowed and that the Liens held by First Security on behalf of such Holders are invalid, unperfected and/or otherwise avoidable, then all Holders of 2009 Debentures shall hold Allowed Class 5 Claims and receive their *pro rata* share of 2011 Subordinate Debentures in the principal amount of $33,565,000 in full satisfaction, discharge and release of all Claims arising from or under the 2009 Debentures, the 2009 Indenture and said Allowed Class 5 Claims.  In this case, the 2011 Subordinate Debentures shall be issued within sixty (60) days after the date that the order finally resolving the Lien Adversary becomes a Final Order.  The Holders of 2011 Subordinate Debentures will receive quarterly payments until satisfied and retired, payable as of the last day of each calendar quarter and commencing as of the last day of the calendar quarter that is sixty (60) days after the date on which the Lien Adversary is resolved, in an amount equal to the Debenture Funds available for the particular quarter; provided, however, that such Holders may receive earlier or different payments in accordance with Section 7.4 upon repayment of the Class 1 Secured Claim or as otherwise provided for in the Debenture Retirement Program.

**Impairment**.  Class 5 is Impaired and entitled to vote on the Plan.

5.6.   *Class 6: Octane Claims*

**Treatment**.  Class 6 consists of the Allowed Unsecured Claims of Octane.  On the Effective Date, the Holders of such Claims will be deemed to have contributed the full amount of their Class 6 Claims to the capital of O&G and receive the newly issued membership interests in O&G, and such distribution shall be in full satisfaction and release of said Allowed Class 6 Claims.

**Impairment**.  Class 6 is Impaired and entitled to vote on the Plan.

5.7.   *Class 7: Unsecured Deficiency Claims*

If after final resolution of the Lien Adversary it is determined that the Class 2 Senior Debentures Secured Claims are Allowed Claims, and therefore Class 5 Claims will receive the treatment provided under Section 5.5.a. of this Plan, all Unsecured Deficiency Claims shall constitute Class 7 Claims.

**Treatment**.  Holders of Class 7 Claims shall receive no distribution or payment under the Plan on account of such Claims.

**Impairment**.  Class 7 is Impaired and conclusively presumed to reject the Plan.

5.8.   *Class 8:  Interests*

**Treatment**.  The Interest in O&G will be cancelled on the Effective Date, and the Holder of such Interests will receive nothing on account of its Class 8 Interest.

**Impairment**.  Class 8 is impaired and conclusively presumed to reject the Plan.

## ARTICLE 6.
## Means for Implementation of Plan

6.1.   *Substantive Consolidation*

On the Effective Date, the estates of the Debtors will be substantively consolidated for all purposes with respect to solicitation, voting, confirmation, implementation, execution of and making distributions under this Plan, and the Confirmation Order shall constitute an order entered pursuant to § 105 of the Bankruptcy Code approving such substantive consolidation.  On the Effective Date, all assets and liabilities of the Debtors shall be treated as merged, all guaranty obligations of either Debtor of any obligation of the other will be eliminated, and all Claims filed against either Debtor shall be deemed filed against the single consolidated estate of the Debtors for all purposes relating to this Plan and to satisfaction of the Claims of Classes 1 through 7.

6.2.   *Corporate Existence and Vesting of Assets*

Each of the Debtors will, as the Reorganized Debtors, continue to exist after the Effective Date, with all the powers of a limited liability company organized under the laws of the State of Mississippi and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law. Except as otherwise provided herein, as of the Effective Date, all assets and property of the Debtors' estates, and all property acquired by the Debtors or Reorganized Debtors under the Plan, shall vest in the Reorganized Debtors, free and clear of all Liens, Claims and Interests except for those expressly provided for under this Plan. The Holder of any Liens cancelled and discharged pursuant to this Plan shall cancel of record such Liens on, or within a reasonable time after,

the Effective Date, failing in which the Debtors shall be authorized to effect such cancellations of record. On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and compromise or settle any Claims without supervision of or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that it incurs on or after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including fees relating to the preparation of Final Fee Applications) without application to the Bankruptcy Court.

6.3.    *Corporate Action*

The entry of the Confirmation Order shall constitute authorization for the Debtors to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and the transactions contemplated in the Plan prior to, on and after the Effective Date and, except as expressly provided herein, all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, any action required by the members or managers of the Debtors, including, among other things, (a) the adoption of new organizational documents for any Debtor, (b) the election and/or appointment of new officers and/or managers, (c) the termination and cancellation of any outstanding instrument, document or agreement evidencing Claims or Interests in the Debtors, (d) all transfers of assets that are to occur pursuant to the Plan, (e) the incurrence of all obligations contemplated by the Plan and the making of all Plan distributions, (f) the implementation of all settlements and compromises as set forth in or contemplated by the Plan, (g) entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation, and (h) any other action consistent with the terms of the Plan.  The manager and officers of the Debtors are authorized and empowered to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of and on behalf of the Debtors and Reorganized Debtors.

6.4.    *Corporate Restructuring*

On or as of the Effective Date, the Debtors will perform or cause to occur the following corporate restructuring actions and transactions.

6.4.1.    <u>Restructuring Transactions Generally</u>. On, as of or after the Effective Date, the Debtors or Reorganized Debtors may enter into restructuring transactions and may take such actions as the Debtors or Reorganized Debtors may determine to be necessary or appropriate to effect a corporate restructuring of their respective businesses or simplify the overall corporate structure of the Reorganized Debtors, to the extent not inconsistent with any other terms of the Plan. Such restructuring transactions may include one or more mergers, consolidations, restructurings, dispositions, liquidations or dissolutions, as may be determined by the Debtors or the Reorganized Debtors to be necessary or appropriate without further order of the Bankruptcy Court.  The actions to effect these transactions may include, but shall not be limited to: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable state law and such other terms to which the applicable parties may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable entities may agree; (c) the filing of appropriate certificates or articles of merger, consolidation, dissolution or change in corporate form pursuant to applicable state law; and (d) the taking of all other

actions that the applicable parties determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions.

6.4.2.   <u>Issuance of Membership Interest</u>.   On the Effective Date, the Reorganized Debtors shall issue and deliver to Octane all membership interests in O&G, *pro rata*, in full and complete satisfaction of the Class 6 Claims.  Performance will initially remain a wholly-owned subsidiary of O&G.

6.4.3.   <u>Obligations of Any Successor Entity in a Restructuring or Other Transaction</u>. In no case shall a restructuring transaction or any other restructuring relieve the Reorganized Debtors or any successor to the Reorganized Debtors from performing the obligations of the Debtors or the Reorganized Debtors pursuant to the Plan including, without limitation, to pay or otherwise satisfy the Allowed Claims against the Reorganized Debtors.

6.5.   *Certificate of Formation and Operating Agreements of the Reorganized Debtors*

As of the Effective Date, the certificates of formation of the Reorganized Debtors shall be the respective certificates that existed for each Debtor on the Petition Date.  The limited liability company agreements of O&G and Performance will be adopted substantially in the forms to be contained in the Plan Supplement. The certificates of formation and limited liability company agreements of the Reorganized Debtors will, among other things, prohibit the issuance of nonvoting equity securities to the extent required by § 1123(a) of the Bankruptcy Code.  After the Effective Date or the effective time of any applicable restructuring transaction, the Reorganized Debtors may amend and restate its respective certificate of or limited liability company agreement as permitted by applicable state law, subject to the terms and conditions of such constituent documents.

6.6.   *Managers and Officers of Reorganized Debtors*

Subject to any requirement of Bankruptcy Court approval pursuant to § 1129(a)(5) of the Bankruptcy Code and except as otherwise provided in this Plan, the Reorganized Debtors shall be managed by the respective manager of such entity as of the Petition Date.  The initial officers of the Reorganized Debtors will consist of the officers of the Debtors immediately prior to the Effective Date. Each such manager and officer will serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until the earlier of his or her death, resignation or removal in accordance with the terms of the certificate and operating agreement of the Reorganized Debtors and state law.

6.7.   *Financial Restructuring*

On, as of or at the appropriate time after the Effective Date, the Debtors will perform or cause to occur the following financial restructuring actions and transactions.

6.7.1.   The Reorganized Debtors will enter into and execute loan and security agreements with WSB as may be necessary or appropriate to document the terms for repayment of the Class 1 Allowed Secured Claim of WSB and the granting of security interests in the WSB Collateral, in a form reasonably acceptable to the Debtors and WSB.   The Liens granted as collateral security for the Class 1 Claim shall constitute valid, binding and enforceable first priority Liens on the WSB Collateral.

6.7.2.   Within sixty (60) days after the order of the Bankruptcy Court resolving the Lien Adversary becomes a Final Order, the Reorganized Debtors will issue and deliver the 2011 Subordinate Debentures described under Section 5.5 of this Plan.  If any portion of the Class 2 Senior Debentures Secured Claims becomes Allowed Claims, the Reorganized Debtors will execute and deliver to the New

Trustee the New Indenture, the 2011 Senior Debentures and such additional documents and security agreements as may be necessary or appropriate to document the terms for repayment of the Class 2 Senior Debentures Secured Claim and the granting of security interests in the Senior Debentures Collateral, all in a form substantially similar to those executed in connection with the 2009 Indenture, except as modified by the terms of this Plan. The Liens granted as collateral security for Class 2 Claims, if any, shall constitute valid, binding and enforceable first priority Liens on the applicable Senior Debentures Collateral.

      6.7.3.    The Plan constitutes a new contract between the Reorganized Debtors and all Holders of Claims and Interests in these Cases. Pursuant to § 1123(a)(5) and except for the Executory Contracts and Leases assumed by the Plan and loan and security agreements between the Debtors and Holders of Allowed Class 3 Claims, the Plan shall supersede any and all existing contracts, notes, mortgages, security agreements, decrees, judgments and other memorialization of any financial obligation existing between the Reorganized Debtors and the parties in interest in the Cases. Except as otherwise provided in this Article 6 with respect to the treatment of Secured Claims under the Plan, it shall not be necessary to execute any additional documentation, nor shall it be necessary to file any additional instruments, to perfect the obligations created by the Plan. The terms of this Plan shall be deemed incorporated into any documents, agreements or instruments that are executed and/or delivered pursuant to this Plan.

      6.8.    *Cancellation of Indentures and Debt Securities*

      6.8.1.    Except for the purpose of evidencing a right to distribution under this Plan, and except as otherwise set forth herein, on the Effective Date the 2009 Indenture, and the 2009 Debentures, and any other obligations in respect thereof, and any other debt securities or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors, including but not limited to the Unsecured Claims and Other Secured Claims, shall be deemed automatically canceled and terminated, as permitted by § 1123(a)(5)(F) of the Bankruptcy Code. The Holders of or parties to such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided pursuant to the Plan. As of the Record Date to be established by the Bankruptcy Court in the order approving the Disclosure Statement, the transfer registers or ledgers maintained by First Security and/or the Depository Trust Company ("**DTC**") for the 2009 Debentures shall be closed, and there shall be no further changes in the record Holders of any 2009 Debentures.

      6.8.2.    As a condition to participation under this Plan, the Holder of any Claim evidenced by a note, debenture or other evidence of indebtedness of or equity interest in either of the Debtors that desires to receive any distributions or payment on account of an Allowed Claim or Interest based on such note, debenture or other evidence of indebtedness or equity interest shall surrender such note, debenture or other evidence of indebtedness or equity interest to the respective Debtors, or their designee (unless such Holder's Claim will be reinstated by this Plan, in which case such surrender shall not be required), and shall execute and deliver such other documents as are necessary to effectuate this Plan; *provided, however*, that if a claimant is a holder of a note, debenture or other evidence of indebtedness for which no physical certificate was issued to the but which instead is held in book-entry form by the DTC or custodian thereof in the name of Cede and Co., then the Debtors may waive the requirement of surrender provided that satisfactory evidence of ownership (determined in Debtors' sole discretion) is supplied to the Debtors or their designee. With respect to any 2009 Debentures held by or in the name of DTC, DTC shall surrender such Debentures to First Security for cancellation, and First Security shall surrender the same to the Debtors or certify in writing that such Debentures have been cancelled.

6.8.3.    Except as otherwise provided in this section, if no surrender of a note, debenture or other evidence of indebtedness or equity interest occurs and a Holder of a Claim does not provide an affidavit and indemnification agreement, in form and substance satisfactory to the Debtors, that such note, debenture or other evidence of indebtedness or equity interest was lost, then no distribution may be made to any Holder of a Claim or Interest that is based on such note, debenture or other evidence of indebtedness or equity interest thereof.  The Debtors shall make subsequent distributions only to those who surrender the securities for exchange (or their assignees) and the record holders of such securities shall be those Holders of record as of the Record Date.

6.9.    *DGFI Transaction*

On the Effective Date, Performance will enter into a purchase agreement and close a transaction with David Grumpy Farmer, Inc. providing for the purchase and sale of the trucks, trailers and equipment presently owned by DGFI and leased to Performance and which will be specifically identified in the Plan Supplement (collectively, the **"Trucks"**).  Performance will assume the outstanding loans on the Trucks ($142,391.64 as of May 31, 2011) and set off a Company deposit of $75,000 as the purchase price for the Trucks.  As of May 31, 2011, the Trucks had a "blue book" average trade-in value of approximately $379,413.37.

## ARTICLE 7.
## Plan Implementation and Execution

7.1.    *Continuation of Operations*

The Reorganized Debtors will on and after the Effective Date continue to operate their businesses and use, acquire, or dispose of property, as they deem necessary or appropriate in the exercise of their business judgment, free and clear of any restrictions except as otherwise provided under and in all respects consistent with this Plan and the Confirmation Order.  Management and control of the Reorganized Debtors shall be vested in their managers and officers, in accordance with their respective certificates of formation and operating agreements and as set forth in Section 6.6 hereof.

7.2.    *Establishment of Interest Reserve Account and Debt Service Account*

On Effective Date, the Debtors will establish both the Interest Reserve Account and the Debt Service Account.  The amount held in the "Debt Reserve Escrow" created and existing pursuant to the Debentures Cash Collateral Order as well as all Free Cash remaining after making all payments to be made under this Plan on the Effective Date will be deposited first into the Interest Reserve Account then into the Debt Service Account from which payments to Holders of Allowed Claims in, if and as applicable, Classes 1, 2 and 5 will be made by the Reorganized Debtors after the Effective Date.  From and after the Effective Date, all Free Cash will be deposited into these accounts on a monthly basis as provided herein.  The Reorganized Debtors shall allocate Cash from and after the Effective Date pursuant to the following procedures:

a.    The Reorganized Debtors shall first allocate and use Cash from operations to fund the Budget and the payment of Allowed Class 3 and Class 4 Claims.

b.    The Reorganized Debtors shall then allocate all Free Cash for deposit into the Interest Reserve Account in an amount sufficient to pay all interest payments due to Holders of Secured Claims under this Plan for the immediate upcoming period.

16

c.      After the Interest Reserve Account is fully funded for the applicable period, all remaining Free Cash shall be deposited, on a monthly basis, into the Debt Service Account.

d.      The funds in the Debt Service Account shall be allocated twenty percent (20%) to WSB (the **"WSB Funds"**) and eighty percent (80%) to the Holders of Allowed Claims in Classes 2 and 5 (the **"Debenture Funds"**), as applicable, pursuant to the terms of this Plan.

e.      WSB will receive quarterly interest payments on its Class 1 Claim from the Interest Reserve Account and will receive quarterly accelerated principal reduction payments in an amount representing WSB Funds for the applicable period.

f.      The Holders of Allowed Claims in Classes 2 and 5 shall receive interest and principal payments as provided for in Section 7.3 or 7.4 of this Plan, as applicable; provided, however, that until the Lien Adversary is resolved, no payment or distribution to the Holders of Claims in Class 2 or Class 5 will be made.

7.3.    *Administration of Debenture Funds if Senior Debentures Determined to Hold Secured Claims*

If the Class 2 Senior Debentures Secured Claims are Allowed, then such Claims shall receive the treatment set forth in Section 5.2 of this Plan, and the following procedures shall apply:

a.      The Holders of 2011 Senior Debentures will receive quarterly interest payments on their Class 2 Claims from the Interest Reserve Account;

b.      The 2011 Senior Debentures will be eligible to receive accelerated principal reduction from the Debenture Funds in the Debt Service Account pursuant to the terms of the Debenture Retirement Program; and

c.      The Holders of Allowed Class 5 Claims will receive the 2011 Subordinate Debentures and the treatment set forth in Section 5.5.a of this Plan, and after the obligations owed by the Reorganized Debtors to WSB have been satisfied in full, the WSB Funds previously allocated to payment of WSB's Class 1 Claim shall be deemed Debenture Funds and allocated to payment of the 2011 Subordinate Debentures pursuant to the terms hereof. Likewise, after all 2011 Senior Debentures have been satisfied in full, then all Debenture Funds shall be used to retire the 2011 Subordinate Debentures on the terms set forth and described in this Plan.

7.4.    *Administration of Funds if Senior Debentures Determined to Hold Unsecured Claims*

If the Class 2 Senior Debentures Secured Claims are Disallowed, and the Holders of Senior Debentures therefore hold Allowed Class 5 Unsecured Debenture Claims, then such Claims shall receive the treatment set forth in Section 5.5.b of this Plan, and the following procedures shall apply:

a.      The Holders of the 2011 Subordinate Debentures will receive quarterly payments from the Debenture Funds on the terms described in the Debenture Retirement Program.

b.      After the obligations owed by the Reorganized Debtors to WSB have been satisfied, the WSB Funds previously allocated to payment of WSB's Class 1 Claim shall be deemed Debenture Funds and allocated to payment of the 2011 Subordinate Debentures.

7.5.    *Distributions to Holders of Debentures*

Distributions to Holders of 2011 Debentures made hereunder shall be made, as determined by the Debtors in their sole discretion, to the Holder at the address of such Holder as set forth in its response to a properly completed letter of transmittal or otherwise obtained by the Debtors through alternate means satisfactory to the Debtors.  Consistent with Section 6.8 of the Plan, no Holder of 2011 Debentures shall be entitled to receive a distribution under the Plan unless and until the Debtors (or their designee) shall have received from or on behalf of such Holder either (a) such Holder's surrendered 2009 Debenture or (b) other satisfactory documentary evidence of ownership.

7.6.    *Distributions Generally*

Allowed Claims that are entitled to receive distributions of Cash under the Plan and that are not otherwise specifically provided to be paid from either the Interest Reserve Account or the Debt Service Account shall be paid by the Reorganized Debtors from Cash on hand and accumulated after the Effective Date from continued business operations.

7.6.1.    Timing.  All distributions or transfers to be made by the Debtors shall be made on or as soon as practicable after the dates called for under the Plan.  Distributions to Holders of Claims that are Disputed or that are not Allowed on the Effective Date shall be made at such time as such Claims are no longer Disputed or they become Allowed Claims, except as provided below.

7.6.2.    Undeliverable Distributions.  If any distribution or notice provided to the Holder of a Claim or Interest in connection with the Plan is returned to the Debtors (or their designee) as undeliverable or otherwise is unclaimed, the Debtors will make no further distribution to the Holder unless and until the Debtors are notified in writing of such Holder's proper address.  If and when the Debtors determine that a previously undeliverable distribution becomes deliverable and claimed, the Debtors will make such distribution as soon as practicable and without interest thereon.  Any Holder that fails to assert a Claim hereunder for an undeliverable or unclaimed distribution within one (1) year after the Effective Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting such Claim against the Debtors, these estates, the Reorganized Debtors or their property.  After the first anniversary of the Effective Date, all property or interests in property not distributed pursuant to this Section 7.6.2 shall be deemed unclaimed property pursuant to § 347(b) of the Bankruptcy Code, and any Claim of any Holder in or to such property shall be discharged and forever barred.  Nothing herein shall require or be construed to require the Debtors or their designee to locate any Holder of any Allowed Claim.

7.6.3.    Nominal Distributions.  If the amount of any distribution to the Holder of an Allowed Claim other than the final distribution is less than $100.00, the Reorganized Debtors may elect to defer distribution of such amount until a subsequent distribution of $100.00 or greater is made.

7.6.4.    Distributions Pending Allowance.  Except as otherwise specifically provided herein, if any Claim or any portion of a Claim is Disputed, no payment or distribution provided in the Plan shall be made on account of such Claim unless and until the Disputed Claim is resolved and becomes Allowed.  Thus, until final resolution of the Lien Adversary, no distributions shall be made to either the Holders of Class 2 Claims or Class 5 Claims.

7.7.    *Administration of Claims; Objection to Claims*

The Reorganized Debtors shall file objections to any Claims, or continue to prosecute any objections filed prior to and remaining unresolved on the Effective Date, asserted against the Debtors'

estates and deemed by the Reorganized Debtors to be improper, inaccurate or otherwise not qualified to be fully Allowed.  The Reorganized Debtors shall have the power, without notice to or approval of the Bankruptcy Court, and in the exercise of its best business judgment, to preserve, abandon, settle, compromise or litigate any Claim filed or otherwise asserted herein.

7.8.    *Causes of Action*

7.8.1.    <u>Preservation of Causes of Action</u>.  The Reorganized Debtors shall retain all Causes of Action, whether known or unknown, including all "bankruptcy causes of action" arising under or pursuant to Chapter 5 of the Code.  No doctrine of preclusion, waiver, estoppel, laches or similar defense shall apply to any Cause of Action preserved hereby (whether or not specifically identified heretofore, known or unknown or that may arise or exist by reason of additional facts or circumstances not yet known by the Debtors or that may change from those now believed to exist) based on the Disclosure Statement, the Plan or the Confirmation Order, unless such Cause of Action was expressly released pursuant to the Plan or prior order of the Court.

7.8.2.    <u>Prosecution and Settlement of Claims and Causes of Action</u>.  The Reorganized Debtors may, if so determined in the exercise of their discretion and sound business judgment, (a) commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any Cause of Action which the Debtors had or had power to assert immediately prior to the Confirmation Date, and (b) without notice to or approval of the Bankruptcy Court, and in the exercise of sound business judgment, settle, compromise or terminate prosecution of such Cause of Action.

7.8.3.    <u>Compromise and Settlement of Potential Claims Against Octane.</u>  To the extent any claims exist against Octane, this Plan shall constitute a motion under Bankruptcy Rule 9019 to resolve and compromise all such claims, and the defenses thereto, on the following terms as agreed upon between and among Octane Funding, LLC and Octane Funding II, LLC and the Debtors.  Octane Funding, LLC and Octane Funding II, LLC shall hold Allowed Unsecured Claims.  Octane Funding, LLC and Octane Funding II, LLC agree to waive and forego payment of Cash on account of its Allowed Unsecured Claim and for the Allowed amount of their Claims to be deemed a capital contribution to Reorganized O&G.  Both Octane parties agree and stipulate to waiver and release of any asserted Secured Claim against the Debtors.  The Debtors agree to waive and release any claims or Causes of Action that may exist against Octane Funding, LLC or Octane Funding II, LLC.  Both Octane parties agree to the treatment of their Allowed Claims provided to them as Holders of Allowed Class 6 Claims.

## ARTICLE 8.
## Procedure for Resolving Disputed Claims

8.1.    *Objection Deadline*.  On or before the date that is ninety (90) days after the Effective Date, unless otherwise extended or authorized by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each Claim to which objection is made.

8.2.    *Determination by Bankruptcy Court*.  The amount of any Disputed Claim, and the rights, if any, of the Holder of such Claim to payment, shall be determined by the Bankruptcy Court, unless it otherwise becomes an Allowed Claim prior to such determination.

8.3.    *Treatment of Disputed Claims*.  Cash shall be distributed to a Holder of any type of Disputed Claim when, and only to the extent that, such Disputed Claim becomes an Allowed Claim pursuant to a Final Order or agreed resolution between the Reorganized Debtors and the Holder of said Claim, except that Holders of Secured Claims may receive Cash collateral and adequate protection

19

payments.  Such distribution shall be made in accordance with the Plan to the Holder of such Claim based upon the amount in which such Disputed Claim becomes an Allowed Claim.

8.4.    *Civil Claim and Claims Subject of Pending Causes of Action are Disputed*.  All Claims that are subject of pending or threatened litigation shall be Disputed unless and until they become Allowed.  Following the Effective Date, the automatic stay shall be lifted with respect to the prosecution of any Claim which may then be adjudicated in any appropriate court having jurisdiction over the Claim.  Only after the Claim has been liquidated shall the same become an Allowed General Unsecured Claim in Class 4.  Nothing in this Plan or this Section 8.4 shall be deemed a waiver of any defenses, counterclaims or cross-claims to or relating to such Claim or the Debtors' rights under 28 U.S.C. §§ 157(b) or 1452.

8.5.    *Disallowed Claims*.  All Holders of Claims against whom either of the Debtors has, or has asserted, a Cause of Action that arises under Chapter 5 of the Bankruptcy Code shall be deemed disallowed pursuant to § 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, until the Cause of Action against them has been settled or a Final Order entered and all sums due the Debtors on account thereof have been received by the Debtors.

8.6.    *Estimation of Claims*.  The Debtors, prior to the Effective Date, and the Reorganized Debtors, after the Effective Date, may for any purpose, including for purposes of making distributions hereunder, request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to § 502(c) of the Bankruptcy Code without regard to whether such Claim has been subject to a previous objection or whether such objection has been ruled upon or is subject to continued proceedings, including appeal.

## ARTICLE 9.
## Executory Contracts and Leases

9.1.    *Assumption*.  On the Effective Date and unless otherwise specifically provided herein, all Executory Contracts and Leases described in each of the Debtors' Schedule G filed in these Cases shall be assumed by the applicable Debtor, at which time and as to which each Debtor shall, except as to defaults described in § 365(b)(2) of the Bankruptcy Code, (i) cure, or provide adequate assurance that they will promptly cure, any existing default in the Executory Contract or Lease, (ii) compensate, or provide adequate assurance that they will promptly compensate, another party to the Executory Contract or Lease for any actual pecuniary loss to such other party resulting from such default, and (iii) provide adequate assurance of future performance by the applicable Debtor under such Executory Contract or Lease.

9.2.    *Prior Action*.  All Executory Contracts and Leases previously assumed during the pendency of the Cases shall continue in effect on and after the Effective Date.  The Debtors reserve the right to amend or supplement Schedule G or to rescind its election to assume any Executory Contract or Lease.

9.3.    *Rejection*. Except for those Executory Contracts and Leases previously assumed or rejected during the pendency of these Cases, all Executory Contracts and Leases listed on <u>Schedule 9.2.1</u> shall be rejected.  Subject to the occurrence of the Effective Date, the rejection of any Executory Contract or Lease pursuant to this Article shall be effective upon the earliest of (i) the date that the Debtors provide notice to the counter-party of the effectiveness of such rejection and (ii) the date specified as the effective date of rejection in any order of the Court.

9.3.1.   <u>Approval of Rejection</u>.   Entry of the Confirmation Order shall constitute the approval, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the Executory Contracts and Leases rejected pursuant to Section 9.2 hereof.

9.3.2.   <u>Bar Date for Asserting Rejection Claims</u>.   Rejection Claims arising out of the rejection of an Executory Contract or Lease pursuant to Section 9.2 of this Plan must be filed with the Court within thirty (30) days after the Effective Date.   The Confirmation Order shall provide that notice of the Effective Date be provided to all counter-parties to any rejected Executory Contract or Lease.   Any Rejection Claim arising from rejection of a previously rejected Executory Contract or Lease during the pendency of the Cases shall have been filed by the date set by the Court in the order approving such rejection.   Any Rejection Claims not filed within such times are/will be forever barred from assertion against any applicable Debtor, its estate, and its property.   If any Rejection Claim becomes an Allowed Claim, it shall be treated as a General Unsecured Claim under Class 4.

## ARTICLE 10.
### Cramdown and Plan Modification

10.1.   *Confirmation by "Cramdown"*.   If any Impaired Class does not vote to accept the Plan as provided in § 1126 of the Bankruptcy Code, the Debtors request confirmation of the Plan pursuant to § 1129(b) of the Code with respect to any Impaired Class.   The Debtors also reserve the right to amend the Plan pursuant to this Article 10.

10.2.   *Right to Modify*.   The Debtors reserve the right, according to the Bankruptcy Code, to amend or modify the Plan before the Effective Date.   After the Effective Date, the Debtors may, upon order of the Bankruptcy Court, and according to § 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intentions of the Plan.

10.3.   *Deemed Acceptance or Rejection*.   A Claimant that has accepted or rejected the Plan will be deemed to have either accepted or rejected, as the case may be, the Plan as modified or amended, even if the modifications or amendments are made after the solicitation of votes of acceptance or rejection of the Plan, unless the Bankruptcy Court orders that such Claimant may change its previous vote within a time established by the Bankruptcy Court for such change to be made.

## ARTICLE 11.
### Conditions to Confirmation and Effective Date of Plan

11.1.   *Conditions to Confirmation*.   The Plan shall not be confirmed unless the Confirmation Order and the Plan, as confirmed pursuant to the Confirmation Order, shall be in a form and substance satisfactory to the Debtors.

11.2.   *Conditions to Occurrence of the Effective Date*.   The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied, waived or extended, as the case may be, in writing by the Debtors:

11.2.1.   The Confirmation Order shall have been entered, unstayed and become a Final Order;

11.2.2.   All corporate restructure transactions shall have occurred;

11.2.3.  All financial restructure documents required to be executed and delivered on or prior to the Effective Date have been executed and delivered; and

11.2.4.  All consents, regulatory approvals and other authorizations, if any, required for implementation of the Plan have been granted and effective.

11.3.    *Revocation or Withdrawal of the Plan.*

11.3.1.  The Debtors may revoke or withdraw the Plan prior to the Confirmation Date.

11.3.2.  If the Plan is revoked or withdrawn prior to the Confirmation Date in accordance with Section 11.3.1 hereof, or the Effective Date does not occur because the conditions precedent thereto have not been satisfied, then at the election of the Debtors the Plan may be deemed null and void.  In such event, (i) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the filing of the Plan, and (ii) all the Debtors' respective obligations with respect to the Claims shall remain unchanged, all of the Debtors' rights against all parties shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtors or any other party or to prejudice in any manner the rights of the Debtors or any party in any further proceedings.

## ARTICLE 12.
### Post-Effective Date Administration

12.1.    *Post-Effective Date Fees and Expenses*.    From and after the Effective Date, the Reorganized Debtors may employ such Professionals as it deems necessary in the exercise of its business judgment to counsel, advise and assist with carrying on its business, and it may, in the ordinary course of business and without the necessity for any notice to or approval by the Bankruptcy Court, pay the reasonable fees and expenses of Professionals thereafter incurred, including without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

12.2.    *Payment of Statutory Fees*.    All fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 will be paid until the Court enters a final decree closing these Cases or directing otherwise. Following the entry of the Confirmation Order, the monthly financial reports required of the Debtors pursuant to this Court's Order shall no longer be required.  However, until the entry of the final decree closing these Cases, the Reorganized Debtors will provide monthly Cash disbursement reports to the United States Trustee for purposes of determining quarterly fees.

12.3.    *Tax Returns*.    The Reorganized Debtors shall ensure that all required federal and state tax returns are filed, or lawful extensions for filing are obtained, for the Debtors.

12.4.    *Debtor Actions*.    Each of the Debtors is authorized to execute, deliver, file and/or record such contracts, instruments, releases, agreements and other documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Nothing contained herein shall prevent the Debtors from taking such actions as may be necessary to consummate the Plan, although not specifically provided in the Plan, so long as they are consistent with the terms of the Plan or the Confirmation Order.

12.5.    *Estates to Remain Open*.  Upon resolution of all objections to Claims, Causes of Action and matters necessary to complete administration of these estates, the Reorganized Debtors shall close and conclude this Bankruptcy Case and obtain final decrees so ordering, notwithstanding that one or more Cause of Action, including but not limited to the Lien Adversary, remains pending and unresolved.

## ARTICLE 13.
## General Provisions

13.1.    *Discharge*.  Except as provided in this Plan or the Confirmation Order, the confirmation of the Plan by the Bankruptcy Court shall effect a discharge in accordance with § 1141(d) of the Bankruptcy Code of all Claims against the Debtors that arose at any time prior to the Effective Date, without regard to whether such Claimant filed a Proof of Claim, whether the Claim is Allowed, or whether the Claimant voted in favor of the Plan.

13.2.    *Permanent Injunction*.  All injunctions, liens or stays entered in this Bankruptcy Case and existing immediately before the Confirmation Date will remain in full force and effect until the Effective Date.

13.3.    *Binding Effect*.  On the Effective Date, according to § 1141 of the Bankruptcy Code, the provisions of this Plan will bind the Debtor and any Holder of a Claim, whether or not the Claim is Impaired under the Plan and whether or not the Holder of the Claim has accepted the Plan.

13.4.    *Compromises Under Bankruptcy Rule 9019*.  As to all matters contained herein, or that may otherwise be resolved by entry of the Confirmation Order confirming this Plan, this Plan shall constitute a motion made pursuant to Bankruptcy Rule 9019 seeking approval of all matters constituting a settlement or compromise of any claim or issue.

13.5.    *Preservation of Insurance*.  The discharge and release of the Debtors as provided in the Plan or Confirmation Order shall not diminish or impair the enforceability of any insurance policies that may cover Claims against any Debtor or other person or entity.

13.6.    *Confirmation Order and Plan Control*.  In the event that the provisions of the Confirmation Order and the Plan are inconsistent, the Confirmation Order shall control.  In the event that there are inconsistencies between the Plan and the Disclosure Statement, the Plan shall control.  The Confirmation Order shall provide and constitute a judicial determination that the Plan is confirmed as to the estates of the Debtors, that the Plan meets the confirmation requirements and that each term and provision of the Plan is valid and enforceable in accordance with its terms.

13.7.    *Injunction*.  *Except as otherwise expressly provided in the Plan or the Confirmation Order, all Holders of Claims, Interests or Causes of Action against or in any of the Debtors are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action, process or other proceeding against any of the Debtors or their property or assets on account of such Claim, Interest or Cause of Action, (b) seeking enforcement, attachment, collection or recovery on account of such Claim, Interest or Cause of Action against any of the Debtors by any manner or means not expressly provided for in this Plan, (c) creating, perfecting, or enforcing any Lien or other encumbrance against any of the Debtors or interests in their property or assets, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Debtors or their property or assets, (e) commencing or continuing any action or other proceeding of any kind with respect to any Claims or Causes of Action which are extinguished or released pursuant to the Plan, and (f) taking any actions to interfere with the implementation or consummation of the Plan, other than any rights of appeal of the Confirmation Order as may exist.*

13.8.    *Release and Exculpation*.

13.8.1.    *Confirmation of this Plan constitute a waiver by the Debtors and their estates of any and all Causes of Action against the Debtors and all Covered Parties, and shall constitute a release by the Debtors and the estates of all Covered Parties from all Causes of Action, including but not limited to all Causes of Action arising in connection with or related to any act or omission in connection with, relating to, or arising out of, the Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan or any of the transactions contemplated by the Plan, to the fullest extent permissible under applicable law, except as to obligations of the Debtors expressly provided in or reserved by this Plan or the Confirmation Order.  On the Effective Date, any and all Causes of Action by or derivatively through any Debtor against any of the Covered Parties shall automatically and immediately be fully and finally waived, released and discharged for all purposes.*

13.8.2.    *Neither the Debtors nor their estates existing before or after the Effective Date nor any of the Covered Parties, shall have or incur any liability to, or be subject to any right of action by, any of the Debtors or any Holder of a Claim or Interest or any other party in interest in the Cases, or any of their respective owners, members, officers, directors, managers, employees, agents, representatives, attorneys, advisors or other Professionals, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (i) the Cases, (ii) any act taken or omitted to be taken on or after the Petition Date in connection with the Cases, or (iii) the Disclosure Statement, the Plan or the documents and actions necessary to perform the Plan, except for obligations of the Debtors or any of the Covered Parties expressly arising under or in accordance with the Plan and Confirmation Order, and except for their willful misconduct or gross negligence; and each of the Debtors and the Covered Parties shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan and Confirmation Order.*

13.9.    *Exemptions Under §§ 1145 and 1146*.  The exemptions from securities laws provided by § 1145 of the Bankruptcy Code shall apply to all securities transactions of the Debtors or the Reorganized Debtors pursuant to or contemplated in the Plan, including but not limited to the issuance of the 2011 Debentures.  The issuance, transfer or exchange of notes or debt or equity securities, the creation of any mortgage or other security interest or the making or delivery of any instrument or transfer under, in furtherance of or in connection with the Plan shall be exempt from any stamp, real estate, transfer, mortgage recording, use or other similar tax.

13.10.    *Notices*.  Except as otherwise specified, all notices and requests will be given by any written means, including but not limited to, telex, telecopy, telegram, first class mail, express mail or similar overnight delivery service and hand delivered letters, and any such notice or request will be deemed to have been given when received.  Notices will be delivered as follows:

To the Debtors:                          With copies to:

O&G Leasing, LLC                         Douglas C. Noble
125 South Congress Street, Suite 1610    **McCraney, Montagnet & Quin PLLC**
Jackson, Mississippi 39201               602 Steed Road • Suite 200
                                         Ridgeland, Mississippi 39157
                                         (601) 707-5725
                                         dnoble@mmqlaw.com


Performance Drilling Company, LLC        Robert L. Holladay, Jr.
Post Office Box 1748                     **YoungWilliams, P.A.**
Brandon, Mississippi 39043               Post Office Box 23059
                                         Jackson, Mississippi 39225-3059
                                         (601) 948-6100
                                         robert.holladay@youngwilliams.com

13.11.  *Plan Supplement*.  The Plan Supplement, containing the documents, instruments and/or information referenced in this Plan as being contained therein, will be filed at least ten (10) days prior to the Voting Deadline.

13.12.  *Headings*.  The headings used in the Plan are inserted for convenience only and constitute part neither of the Plan nor in any manner affect the provisions or interpretations of the Plan.

13.13.  *Enforceability*.  Should any provision of the Plan be determined to be unenforceable for any reason, such determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

### ARTICLE 14.
### Retention of Jurisdiction

The Bankruptcy Court will retain jurisdiction of all matters arising out of or related to the Cases and the Plan as long as necessary for the purposes of §§ 105(a), 1127, 1142(b) and 1144 of the Bankruptcy Code and for, *inter alia*, the following non-inclusive purposes:

a.      to recover all assets of the Debtors, wherever located;

b.      to decide any objections to the allowance, disallowance or subordination of Claims or a controversy as to the classification of Claims;

c.      to decide and fix (i) all Administrative Claims, (ii) Claims arising from the rejection of any Executory Contracts or Leases, (iii) Liens on any assets or any proceeds thereof, and (iv) any other fee and expense authorized to be paid or reimbursed under the Bankruptcy Code;

d.      to liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any disputed, contingent or unliquidated Claims;

e.      to adjudicate any matters as provided for in the Confirmation Order;

f.      to effectuate distributions under and enforce the provisions of the Plan;

g.      to hear and determine any pending applications, adversary proceedings or contested matter including all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan, and matters concerning state, local and federal taxes according to §§ 346, 505 and 1146 of the Bankruptcy Code;

h.      to amend or to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

i.      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

j.      to consider any modification of the Plan pursuant to § 1127 of the Bankruptcy Code or modification of the Plan after substantial consummation, as such terms is defined in § 1101(2) of the Bankruptcy Code;

k.      to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code to the maximum extent of its jurisdiction; and

l.      to enter a final decree closing any of these Cases.


**[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

THIS, the 1st day of July, 2011.

Respectfully submitted,

**O&G LEASING, LLC and
PERFORMANCE DRILLING COMPANY, LLC**

By: _/s/ Jeff H. Goodwin_____

Jeff H. Goodwin
Chief Financial Officer

OF COUNSEL:

Douglas C. Noble
**McCraney, Montagnet & Quin PLLC**
602 Steed Road • Suite 200
Ridgeland, Mississippi 39157
Telephone:  (601) 707-5725
Email: dnoble@mmqlaw.com
Web: www.mmqlaw.com

Robert L. Holladay, Jr.
**YoungWilliams, P.A.**
Post Office Box 23059
Jackson, Mississippi 39225-3059
Telephone:  (601) 948-6100
Email: robert.holladay@youngwilliams.com
Web:  www.youngwilliams.com

*Counsel to Debtors O&G Leasing, LLC, et al.*

Exhibit "A"

Debenture Retirement Program

Notwithstanding anything in the Plan to the contrary, the Holders of New Debentures will be given the opportunity to present their New Debentures for early and priority redemption and retirement at the end of each fiscal quarter following the resolution of the Lien Adversary, provided the Debenture Funds in the Debt Reserve Account exceed $100,000 at the end of such quarter, pursuant to the terms of this Debenture Retirement Program.   The Reorganized Debtors shall be entitled to use the Debenture Funds in the Debt Reserve Account as specified in this program. If it is determined that the Class 2 Secured Claims are Allowed and the 2011 Senior Debentures are issued to the Holders thereof, no Holders of 2011 Subordinate Debentures shall be eligible to participate in this program until such time that all 2011 Senior Debentures are retired, except with respect to any WSB Funds available for distribution to the Holders of 2011 Subordinate Debentures pursuant to Section 7.3.c after all obligations owed to WSB have been satisfied in full.

Promptly following each calendar quarter in which the New Debentures are outstanding, the Reorganized Debtors will provide notice ("**DRP Notice**") to all Holders of the 2011 Senior Debentures and/or 2011 Subordinate Debentures, as applicable, of the amount of Debenture Funds available for redemption and the Holders may elect to tender all or a portion of their New Debentures at such prices that they designate.  The Reorganized Debtors may select, in their sole discretion, New Debentures for retirement from among those tendered so as to retire the greatest possible aggregate principal amount of New Debentures for the amount of Debenture Funds available.  Once all 2011 Senior Debentures, if any, are retired, the program shall continue in the same manner and on the same terms for all Holders of 2011 Subordinate Debentures until such time that all 2011 Subordinate Debentures are retired.

If New Debentures are validly tendered (and not withdrawn) on or prior to the Expiration Date (as defined in the DRP Notice) at the same price and the aggregate face amount exceeds the amount of Debenture Funds available, then, subject to the terms and conditions of this Plan and the DRP Notice, the Reorganized Debtors will only accept for retirement New Debentures on a *pro rata* basis from among such tendered New Debentures.  The Reorganized Debtors may make appropriate adjustments to avoid purchases of New Debentures in any amount other than in multiples of $1,000.

The program will be open for at least fourteen (14) business days, subject to possible extension, each eligible quarter and will not prohibit the Reorganized Debtors from acquiring New Debentures through the open market, privately negotiated transactions, tender offers, exchange offers, defeasance, redemption or otherwise.   The program may be implemented and amended, from time to time, as may be required to comply with all applicable laws, including, but not limited, to the provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated pursuant thereto.

<u>Schedule 9.2.1</u>

<u>Rejected Executory Contracts and Leases</u>

1.  All Leases with DGFI relating to real property