## EXHIBIT 1

**Trustee Plan of Reorganization, dated July 22, 2011**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| O&G LEASING, LLC, | ) | Case No. 10-01851 EE |
| PERFORMANCE DRILLING | ) | Case No. 10-01852 EE |
| COMPANY, LLC, | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |

## INDENTURE TRUSTEE'S CHAPTER 11 PLAN FOR
## O&G LEASING, LLC AND PERFORMANCE DRILLING COMPANY, LLC

**PAUL H. STEPHENSON, III (MSB# 7864)**
**JIM F. SPENCER, JR. (MSB# 7736)**
**C. JOYCE HALL (MSB# 2123)**
**WATKINS & EAGER** PLLC
**Post Office Box 650**
**Jackson, Mississippi 39205**
**The Emporium Building**
**400 East Capitol Street**
**Jackson, Mississippi 39201**
**Telephone: (601) 965-1900**
**Facsimile: (601) 965-1901**
*pstephenson@watkinseager.com*
*jspencer@watkinseager.com*
*jhall@watkinseager.com*

**STEPHEN W. ROSENBLATT (MSB# 5676)**
**CHRISTOPHER R. MADDUX (MSB#100501)**
**BUTLER, SNOW, O'MARA, STEVENS &**
    **CANNADA** PLLC
**Post Office Box 6010**
**Ridgeland, Mississippi 39158**
**Suite 1400**
**1020 Highland Colony Parkway**
**Ridgeland, Mississippi 39157**
**Telephone: (601) 985-4502**
**Facsimile: (601) 985-4500**
*steve.rosenblatt@butlersnow.com*
*chris.maddux@butlersnow.com*

**STEVE JAKUBOWSKI (ADM. *PRO HAC VICE)***
**THE COLEMAN LAW FIRM**
**77 West Wacker Drive, Suite 4800**
**Chicago, Illinois 60601**
**Telephone: (312) 606-8641**
**Facsimile: (312) 444-1028**
*sjakubowski@colemanlawfirm.com*

**Dated:   July 22, 2011**

# TABLE OF CONTENTS

Page

**INTROUCTION** ...................................................................................................1

**ARTICLE I**      **DEFINITIONS** .........................................................................1

     **A.**      **Definitions** ........................................................................1

         **1.1**      **"363 Sale** ...............................................................1
         **1.2**      **"3% Preferred Interests"** ......................................1
         **1.3**      **"3% Preferred Interests Buyback Rights"** ..............2
         **1.4**      **"Administrative Expense Claim"** ...........................2
         **1.5**      **"Affiliate"** ............................................................2
         **1.6**      **"Allocable Costs"** .................................................2
         **1.7**      **"Allowed"** ............................................................2
         **1.8**      **"Arbitration Receivable"** ......................................3
         **1.9**      **"Asset Purchase Agreement"** .................................3
         **1.10**      **"Assets"** ..............................................................3
         **1.11**      **"Auction"** ............................................................3
         **1.12**      **"Avoidance Actions"** ............................................3
         **1.13**      **"Ballot"** ..............................................................3
         **1.14**      **"Bankruptcy Cases"** .............................................3
         **1.15**      **"Bankruptcy Code"** ..............................................3
         **1.16**      **"Bankruptcy Court"** .............................................3
         **1.17**      **"Bankruptcy Rules"** .............................................3
         **1.18**      **"Bankruptcy Schedules"** .......................................4
         **1.19**      **"Bidding Procedures"** ...........................................4
         **1.20**      **"Bondholder Steering Committee"** .........................4
         **1.21**      **"Business"** ...........................................................4
         **1.22**      **"Business Day"** ....................................................4
         **1.23**      **"Cash"** ................................................................4
         **1.24**      **"Cash Collateral"** ................................................4
         **1.25**      **"Cash Collateral Order"** .......................................4
         **1.26**      **"Causes of Action"** ..............................................4
         **1.27**      **"Chapter 11"** .......................................................4
         **1.28**      **"Claim"** ..............................................................4
         **1.29**      **"Claimant"** ..........................................................4
         **1.30**      **"Claims Bar Date** ................................................5
         **1.31**      **"Claims Bar Date Order"** ......................................5
         **1.32**      **"Class"** ...............................................................5
         **1.33**      **"Class 2A Alternative A Guaranteed Payment"** ......5
         **1.34**      **"Class 2C Guaranteed Payment'** ............................5
         **1.35**      **"Class 2D Contingent Guaranteed Payment"** ..........5
         **1.36**      **"Class 3 Alternative B Guaranteed Payment"** .........5
         **1.37**      **"Collateral"** ........................................................5

1.38    "Confirmation" .................................................................5
1.39    "Confirmation Date" ..........................................................5
1.40    "Confirmation Hearing" ......................................................5
1.41    "Confirmation Order" .........................................................5
1.42    "Consummation" ..............................................................5
1.43    "Contingent Claim ...........................................................5
1.44    "Creditor" ....................................................................6
1.45    "Cure Costs ..................................................................6
1.46    "Debentures" .................................................................6
1.47    "Debt ........................................................................6
1.48    "Debtor" .....................................................................6
1.49    "Debtors" ....................................................................6
1.50    "Debtors in Possession" .....................................................6
1.51    "Disallowed" .................................................................6
1.52    "Disbursing Agent" ..........................................................6
1.53    "Disclosure Statement" ......................................................6
1.54    "Disclosure Statement Order" ................................................6
1.55    "Disputed" ...................................................................6
1.56    "Disputed Claims Reserve" ...................................................7
1.57    "Distribution(s)" ............................................................7
1.58    "Distribution Date" ..........................................................7
1.59    "Dividends" ..................................................................7
1.60    "Dutch Auction" .............................................................7
1.61    "EBITDA" ...................................................................8
1.62    "Effective Date" .............................................................8
1.63    "Entity" .....................................................................8
1.64    "Equity Interest" ............................................................8
1.65    "Estate" .....................................................................8
1.66    "Excess Cash" ...............................................................8
1.67    "Executory Contract" ........................................................9
1.68    "Exhibit" ....................................................................9
1.69    "Face Amount" ..............................................................9
1.70    "Federal Income Tax Liability Dividend" .....................................9
1.71    "Filed," "File," or "Filing" .................................................9
1.72    "Final Order" ................................................................9
1.73    "GAAP" ....................................................................10
1.74    "General Unsecured Claim" .................................................10
1.75    "General Unsecured Creditor' ...............................................10
1.76    "Guaranteed Payments" ....................................................10
1.77    "Holder' ...................................................................10
1.78    "Impaired" .................................................................10
1.79    "Indemnitee" ...............................................................10
1.80    "Indemnification Rights" ...................................................10
1.81    "Indenture Trustee" ........................................................10
1.82    "Indenture Trustee Claims" .................................................10
1.83    "Intercompany Claim" ......................................................11

| | | |
|---|---|---|
| 1.84 | "Insider' | 11 |
| 1.85 | "Lien" | 11 |
| 1.86 | "Lien Adversary" | 11 |
| 1.87 | "Liquidating Trust | 11 |
| 1.88 | "Liquidating Trust Agreement' | 11 |
| 1.89 | "Liquidating Trust Beneficiaries" | 11 |
| 1.90 | "Liquidating Trust Claims" | 11 |
| 1.91 | "Liquidating Trust Contribution" | 11 |
| 1.92 | "Liquidating Trust Distribution Accounts" | 11 |
| 1.93 | "Liquidating Trustee" | 12 |
| 1.94 | "Liquidating Trust Oversight Committee" or "LTOC" | 12 |
| 1.95 | "Local Bankruptcy Rules" | 12 |
| 1.96 | "LOTC" | 12 |
| 1.97 | "New Indenture" | 12 |
| 1.98 | "New WSB Note" | 12 |
| 1.99 | "Octane Adversary" | 12 |
| 1.100 | "Octane Funding" | 12 |
| 1.101 | "O&G" | 12 |
| 1.102 | "Operating Accounts Balances" | 12 |
| 1.103 | "Order" | 12 |
| 1.104 | "PDC" | 12 |
| 1.105 | "Permitted Solsten Drilling Distributions" | 13 |
| 1.106 | "Permitted Solsten Funding Distributions" | 13 |
| 1.107 | "Person" | 13 |
| 1.108 | "Petition Date" | 13 |
| 1.109 | "Plan" | 13 |
| 1.110 | "Plan Alternative A" | 13 |
| 1.111 | "Plan Alternative B" | 13 |
| 1.112 | "Plan Supplement" | 13 |
| 1.113 | "Post-Confirmation" | 13 |
| 1.114 | "Post-Confirmation Debtor" | 14 |
| 1.115 | "Post-Petition Escrow Account" | 14 |
| 1.116 | "Priority Unsecured Non-Tax Claim" | 14 |
| 1.117 | "Priority Unsecured Tax Claim" | 14 |
| 1.118 | "Professional" | 14 |
| 1.119 | "Professional Fees" | 14 |
| 1.120 | "Property of the Estate" | 14 |
| 1.121 | "Proposed Purchaser" | 14 |
| 1.122 | "Pro Rata" | 14 |
| 1.123 | "Purchased Assets" | 14 |
| 1.124 | "Purchaser" | 14 |
| 1.125 | "Qualified Bidder" | 14 |
| 1.126 | "Related Person" | 14 |
| 1.127 | "Released Parties" | 15 |
| 1.128 | "Sale Hearing" | 15 |
| 1.129 | "Sales Procedures Order" | 15 |

| | | |
|---|---|---|
| 1.130 | "Scheduled" | 15 |
| 1.131 | "Schedules" | 15 |
| 1.132 | "Secured Claims" | 15 |
| 1.133 | "Secured Creditor" | 15 |
| 1.134 | "Series 2009 Debentures" | 15 |
| 1.135 | "Senior Series 2009A Debentures" | 15 |
| 1.136 | "Series 2009B Debentures" | 15 |
| 1.137 | "Series 2011A Debentures" | 15 |
| 1.138 | "Solsten Drilling" | 15 |
| 1.139 | "Solsten Drilling Contribution" | 15 |
| 1.140 | "Solsten Funding" | 16 |
| 1.141 | "Solsten Funding Claims Purchase Recoveries" | 16 |
| 1.142 | "Solsten Funding Contribution" | 16 |
| 1.143 | "Solsten Funding Guaranty" | 16 |
| 1.144 | "Solsten Post-Confirmation Loan Agreement" | 16 |
| 1.145 | "Solsten XP" | 16 |
| 1.146 | "Stalking Horse Bid" | 16 |
| 1.147 | "Subordinated Claim" | 16 |
| 1.148 | "Tax Claim" | 16 |
| 1.149 | "Tax Payment End Date" | 16 |
| 1.150 | "Transfer Order" | 16 |
| 1.151 | "Trust Indenture" | 17 |
| 1.152 | "Undersecured Claim" | 17 |
| 1.153 | "Unexpired Leases" | 17 |
| 1.154 | "Unimpaired" | 17 |
| 1.155 | "Unliquidated Claim" | 17 |
| 1.156 | "United States Trustee" | 17 |
| 1.157 | "Unsecured Claim" | 17 |
| 1.158 | "Voting Deadline" | 17 |
| 1.159 | "Washington State Bank" or "WSB" | 17 |
| **B.** | **Rules of Interpretation, Computation of Time, and Choice of Law** | **17** |
| **ARTICLE II** | **CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** | **18** |
| 2.1 | **Class 1 – Priority Unsecured Non-Tax Claims** | 19 |
| 2.2 | **Class 2 – Allowed and Disputed Secured Claims** | 19 |
| 2.3 | **Class 3 – Allowed General Unsecured Claims** | 19 |
| 2.4 | **Class 4 – Intercompany Claims** | 20 |
| 2.5 | **Class 5 – Subordinated Claims** | 20 |
| 2.6 | **Class 6 – Equity Interests** | 20 |
| 2.7 | **Summary of Classified Claims and Equity Interests** | 20 |
| **ARTICLE III** | **TREATMENT OF UNCLASSIFIED CLAIMS** | **20** |
| 3.1 | **Administrative Expense Claims** | 20 |

| | | |
|---|---|---|
| **3.2** | **United States Trustee Fees** ........................................................ | **21** |
| **3.3** | **Professional Fees** ....................................................................... | **21** |
| **3.4** | **Allowed Secured and Priority Unsecured Tax Claims** ..................... | **21** |

| | | |
|---|---|---|
| **ARTICLE IV** | **TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS** ............................................................................ | **22** |

| | | |
|---|---|---|
| **4.1** | **Allowed Priority Unsecured Non-Tax Claims (Class 1)** ................. | **22** |
| **4.2** | **Class 2A – Allowed Claims of Holders of Senior Series 2009A Debentures** ............................................................................... | **22** |
| **4.3** | **Class 2B – Allowed Claims of Holders of Series 2009B Debentures** ............................................................................... | **24** |
| **4.4** | **Class 2C – Allowed Secured Claims and Certain Allowed Unsecured Claims of Washington State Bank** ........................... | **25** |
| **4.5** | **Class 2D – Allowed Claims of Octane Funding** .......................... | **26** |
| **4.6** | **Class 2E – Other Secured Claims** .............................................. | **27** |
| **4.7** | **Class 3 – General Unsecured Claims** ......................................... | **27** |
| **4.8** | **Intercompany Claims (Class 4)** ................................................. | **29** |
| **4.9** | **Subordinated Claims (Class 5)** ................................................. | **29** |
| **4.10** | **Equity Interests (Class 6)** ......................................................... | **29** |

| | | |
|---|---|---|
| **ARTICLE V** | **MEANS OF IMPLEMENTATION** ................................................. | **29** |

| | | |
|---|---|---|
| **5.1** | **The 363 Sale** ............................................................................ | **29** |
| **5.2** | **Corporate Action** ..................................................................... | **30** |
| **5.3** | **Preservation of Avoidance Actions and Causes of Action** ............ | **30** |
| **5.4** | **Sources of Payments** ................................................................. | **30** |
| **5.5** | **Substantive Consolidation of the Debtors** .................................. | **30** |
| **5.6** | **Negative Covenant Regarding Distributions** .............................. | **30** |

| | | |
|---|---|---|
| **ARTICLE VI** | **THE LIQUIDATING TRUST** ....................................................... | **31** |

| | | |
|---|---|---|
| **6.1** | **Formation of the Liquidating Trust** ........................................... | **31** |
| **6.2** | **The Liquidating Trustee** ........................................................... | **31** |
| **6.3** | **Distribution on Account of Allowed Claims** ............................... | **34** |
| **6.4** | **Disposition of Certain Guaranteed Payments Received from Purchaser in Advance of Entry of a Final Order in the Lien Adversary** .................................................................. | **34** |
| **6.5** | **Claims Objections** .................................................................... | **34** |
| **6.6** | **Disallowed Claims** ................................................................... | **34** |
| **6.7** | **Estimated Claims** ..................................................................... | **35** |
| **6.8** | **No Interest** .............................................................................. | **35** |
| **6.9** | **Modification of Payment Terms** ................................................ | **35** |
| **6.10** | **Security Deposits** ..................................................................... | **35** |
| **6.11** | **Delivery of Distributions** ......................................................... | **35** |
| **6.12** | **Nominal Distributions** .............................................................. | **35** |

| | 6.13 | Manner of Payment .............................................................36 |
|---|---|---|
| | 6.14 | Unclaimed Distributions .....................................................36 |
| | 6.15 | Applicability of Bankruptcy Code Sections 1125 and 1145 to Certain New Securities to Be Issued Under the Plan ..........36 |

**ARTICLE VII**     **PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN** ..............................................................36

| | 7.1 | Objections to Claims ..........................................................36 |
|---|---|---|
| | 7.2 | No Distributions Pending Allowance ..................................37 |
| | 7.3 | Estimation of Claims ..........................................................37 |

**ARTICLE VIII**     **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...............................................37

| | 8.1 | Assumption or Rejection of Executory Contracts ..............37 |
|---|---|---|
| | 8.2 | Assumption and Assignment to Purchaser ..........................37 |
| | 8.3 | Payment of Cure Costs Related to Assumption of Executory Contracts and Unexpired Leases ......................................38 |
| | 8.4 | Assumed Executory Contracts and Unexpired Leases ........38 |
| | 8.5 | Claim Based on Rejection of Executory Contracts and Unexpired Leases ................................................................38 |
| | 8.6 | Reservation of Rights .........................................................39 |

**ARTICLE IX**     **CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ............39

| | 9.1 | Condition Precedent to Effectiveness .................................39 |
|---|---|---|
| | 9.2 | Waiver of Condition Precedent ...........................................39 |
| | 9.3 | Satisfaction of Condition Precedent ...................................39 |

**ARTICLE X**     **EFFECT OF CONFIRMATION** .................................................39

| | 10.1 | Vesting of Assets ................................................................39 |
|---|---|---|
| | 10.2 | Binding Effect .....................................................................41 |
| | 10.3 | Discharge of Claims ...........................................................41 |
| | 10.4 | Exculpation .........................................................................41 |
| | 10.5 | Injunction or Stay ...............................................................41 |
| | 10.6 | Exemption from Certain Transfer Taxes .............................41 |

**ARTICLE XI**     **JURISDICTION OF BANKRUPTCY COURT** ...................................41

| | 11.1 | Jurisdiction of Bankruptcy Court .......................................41 |
|---|---|---|

**ARTICLE XII**     **MISCELLANEOUS PROVISIONS** ..............................................43

| | 12.1 | Headings; Descriptions .......................................................43 |
|---|---|---|

| | | |
|---|---|---:|
| 12.2 | Interpretations of Orders | 43 |
| 12.3 | Tax Reporting Requirements | 43 |
| 12.4 | Modification of the Plan | 43 |
| 12.5 | Revocation or Withdrawal of the Plan | 43 |
| 12.6 | Expedited Tax Determination | 44 |
| 12.7 | Substantial Consummation | 44 |
| 12.8 | Final Report | 44 |
| 12.9 | Severability of Plan Provisions | 44 |
| 12.10 | Cancellation of Equity Interests/Dissolution of the Debtors | 44 |
| 12.11 | Removal of Officers, Directors, and Managers | 44 |
| 12.12 | Authority of Liquidating Trustee to Wind Up Affairs of the Debtors | 44 |
| 12.13 | Notices | 45 |
| 12.14 | Governing Law | 45 |
| 12.15 | Exhibits/Schedules | 45 |

## EXHIBITS

**Exhibit 1.2 - Form of Designation of 3% Preferred Interests in Solsten Drilling**

**Exhibit 1.9 - Asset Purchase Agreement**

**Exhibit 1.19 - Bidding Procedures**

**Exhibit 1.87 – Liquidating Trust Agreement**

**Exhibit 1.97 – Form of New Indenture for Series 2011A Debentures**

**Exhibit 1.98 – Form of New WSB Note**

# INTRODUCTION

First Security Bank, as Indenture Trustee (the "**Indenture Trustee**"), proposes this Chapter 11 Plan for O&G Leasing, LLC ("**O&G**") and Performance Drilling Company, LLC ("**PDC,**" and together with O&G, the "**Debtors**") pursuant to Section 1121(b) of title 11 of the United States Code (the "**Plan**").[1]

**THE INDENTURE TRUSTEE PROPOSES THIS PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE TREATMENT OF ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS. ALL CREDITORS ARE ENCOURAGED TO CONSULT THE ACCOMPANYING DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. NO OTHER SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

# ARTICLE I
# DEFINITIONS

A. **Definitions.**

Unless the context requires otherwise, for purposes of this Plan and all exhibits which may accompany the same, as well as any subsequent amendments or modifications hereof, the following words and phrases shall have the meaning set forth below when used in initially-capitalized form, and any term used herein that is defined in the Bankruptcy Code, but not otherwise defined herein, shall have the meaning set forth in the Bankruptcy Code:

1.1 "**363 Sale**" means the sale, transfer, conveyance, and assignment, free and clear of any interest in such property as provided by 11 U.S.C. §363(f), pursuant to the Asset Purchase Agreement and Transfer Order, of all right, title, and interest in and to all of the Purchased Assets.

1.2 "**3% Preferred Interests**" means those certain cumulative preferred interests in Solsten Drilling to be issued on the Effective Date to Holders of Allowed Class 2B Claims in the amount of one preferred interest for each $1.00 of principal amount of Allowed Class 2B Claim. The form of designation of the 3% Preferred Interests is set forth at **Exhibit 1.2** hereof. To the extent permitted by applicable law and this Plan, and as further provided in the form of designation attached hereto, a $0.03 annual cumulative dividend on each 3% Preferred Interest shall be owed, payable in arrears, to each Person holding 3% Preferred Interests of record on each anniversary following the Effective Date. The form of designation will also provide that Solsten Drilling or Solsten Funding shall have (A) the right to purchase or redeem the 3% Preferred Interests in accordance with the 3% Preferred Interests Buyback Rights and (B) the right of first refusal in connection with any proposed transfer, assignment, or sale of beneficial

---

[1] All capitalized terms shall have the meanings ascribed to them in this Plan, or if not defined herein, in the Bankruptcy Code.

ownership of the 3% Preferred Interests after the Effective Date to a Person that is not an Insider of such beneficial holder.

**1.3**    "**3% Preferred Interests Buyback Rights**" means the right, but not the obligation, of Solsten Drilling or Solsten Funding, to the extent permitted by applicable law, within 30 business days following the close of an annual Dutch Auction , to apply Excess Cash unused in the preceding Dutch Auction to redeem or purchase pursuant to the following formula the 3% Preferred Interests from any holder thereof who voluntarily offers to have a stated amount of its 3% Preferred Interests redeemed or purchased:

Solsten Drilling's Previous Fiscal Year EBITDA  (x)   4   (x)   0.15   (x)
(# of 3% Preferred Interests Offered / 7,610,000)  =   Purchase/Redemption Amt. Paid

By way of example, assuming an Effective Date of  12/31/2011, if (A) Solsten Drilling's EBITDA in its fiscal year ending 12/31/2012 is $5,000,000 and (B) Solsten Drilling or Solsten Funding accepts in its sole discretion the offer of such holder to have 1,000,000 in principal amount of its 3% Preferred Interests (plus accrued and unpaid dividends earned thereon) redeemed or purchased, then such holder shall receive $394,218.13 in Cash (plus Cash at the stated formula rate for accrued and unpaid dividends earned thereon) in exchange for those 1,000,000 3% Preferred Interests (plus accrued and unpaid dividends earned thereon).

**1.4**    "**Administrative Expense Claim**" means any right to payment that is unpaid as of the Effective Date constituting a cost or expense of administration of the Bankruptcy Cases allowed under and in accordance with, as applicable, Sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' Estates, (b) any actual and necessary costs and expenses of operating the Debtors' business, (c) any indebtedness or obligations incurred or assumed by the Debtors in Possession during the Bankruptcy Cases, (d) Professional Fees, and (e) any fees or charges assessed against the Debtors' Estates under 28 U.S.C. § 1930.

**1.5**    "**Affiliate**" means any Person that is an "affiliate" of an Entity within the meaning of Bankruptcy Code Section 101(2).

**1.6**    "**Allocable Costs**" means general overhead expenses of Solsten Drilling or Solsten Funding assumed and paid by SolstenXP (including in respect of human resources, information technology, accounting, and administration), as established according to a pre-established cost allocation methodology set forth in the Asset Purchase Agreement.

**1.7**    "**Allowed**" means, with reference to any Claim against any Debtor, (a) any Claim against any Debtor that has been listed by such Debtor in its Schedules (as such Bankruptcy Schedules may be amended by that Debtor from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed; (b) any timely filed proof of Claim either (i) as to which no objection has been or is interposed by the Claims Bar Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the Bankruptcy Court and as to which any such applicable period of limitation has expired or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in

favor of the respective Holder of such Claim; (c) any Claim expressly allowed by a Final Order or under the Plan; or (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed Claims."

      **1.8**    "**Arbitration Receivable**" means any and all Claims or rights of the Debtors against Odyssey Petroleum Corp. (US), a chapter 11 debtor, in the case captioned *In re Odyssey Petroleum Corp. (US)*, Case No. 10-01482-NPO, pending in the United States Bankruptcy Court for the Southern District of Mississippi.

      **1.9**    "**Asset Purchase Agreement**" means that certain "Asset Purchase Agreement" with the Proposed Purchaser for the sale of the Purchased Assets that is attached as **Exhibit 1.9** to the Plan, as such agreement may be modified pursuant to the Bidding Procedures and approved by the Bankruptcy Court in the Transfer Order.

      **1.10**    "**Assets**" means all right, title and interest in and to any and all property of every kind or nature, whether tangible or intangible, owned by the Debtors or the Estates, including, but not limited to, Causes of Action.

      **1.11**    "**Auction**" means the auction process to be conducted in according with the Bidding Procedures.

      **1.12**    "**Avoidance Actions**" means those actions to avoid transfers under Chapter 5 of the Bankruptcy Code.

      **1.13**    "**Ballot**" means the form distributed to each Holder of an Impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated acceptance or rejection of the Plan.

      **1.14**    "**Bankruptcy Cases**" means the bankruptcy cases which the Debtors commenced by the filing of separate voluntary petitions under Chapter 11 on May 21, 2010, and which are being jointly administered in this Court under Case No. 10-01851-EE.

      **1.15**    "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereto that are applicable to this Plan.

      **1.16**    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Mississippi exercising jurisdiction over these Bankruptcy Cases and all adversary proceedings and contested matters therein, or any other court of the United States having jurisdiction over the Bankruptcy Cases or over matters to which the Plan has retained jurisdiction under Article XI hereof.

      **1.17**    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as amended from time to time, which govern these Bankruptcy Cases.

**1.18** "**Bankruptcy Schedules**" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs filed by the Debtors under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Bankruptcy Cases, as have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

**1.19** "**Bidding Procedures**" means those procedures established by **Exhibit 1.19** hereto and approved in the Sales Procedures Order for conducting a 363 Sale of the Purchased Assets in a manner that will advance the goal of maximizing the return under the Plan to Holders of Allowed Claims.

**1.20** "**Bondholder Steering Committee**" means a steering committee comprised of up to 5 persons or entities to serve as an advisory board for the Indenture Trustee on matters relating to the Cases, the Plan, and the disposition of the Debtors and their assets.

**1.21** "**Business**" means the Debtors' business of constructing oil and gas rigs and leasing them out for purposes of drilling oil and gas wells and of offering full service oil and gas drilling operations capable of providing drilling on a "day rate," "footage," or "turnkey" format.

**1.22** "**Business Day**" means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

**1.23** "**Cash**" means legal tender of the United States of America.

**1.24** "**Cash Collateral**" means "Cash Collateral" as such term is defined in the Cash Collateral Order.

**1.25** "**Cash Collateral Order**" means that certain Order entered by the Bankruptcy Court on July 2, 2010 in the O&G Bankruptcy Case, Docket No. 101, as it may be amended from time to time.

**1.26** "**Causes of Action**" means all claims, choses in action, Avoidance Actions, causes of action (including those assertable derivatively by the Debtors), liabilities, obligations, suits, debts, sums of money, damages, demands, judgments, whether known or unknown, now owned or hereafter acquired by the Estates, whether arising under the Bankruptcy Code or other federal, state or foreign law, equity or otherwise, including, without limitation, Sections 510, 544, 545, 547, 548, 549, 550, 551 or any other section of the Bankruptcy Code, including without limitation those specifically identified in the Plan Supplement, the identification of which is incorporated herein by reference and made a part hereof, and those arising under Bankruptcy Code section 550 after the Effective Date.

**1.27** "**Chapter 11**" means 11 U.S.C. § 1101 *et seq.*, as amended.

**1.28** "**Claim**" has the meaning set forth in Section 101(5) of the Bankruptcy Code.

**1.29** "**Claimant**" means the Holder of a Claim.

**1.30** "**Claims Bar Date**" means the deadline for filing proofs of claim established by the Bankruptcy Court pursuant to (i) the Claims Bar Date Order as September 20, 2010 for all Creditors except a Governmental Unit, and November 17, 2010 for all Governmental Units and (ii) notices filed on November 3, 2010 and November 4, 2010 to Creditors added to the Debtors' lists of Creditors, matrix, and Schedules.

**1.31** "**Claims Bar Date Order**" means the Order entered by the Bankruptcy Court that established the Claims Bar Date for all Claims against the Debtors.

**1.32** "**Class**" means the category of Holders of Claims or Equity Interests that are substantially similar to other Claims or Equity Interests in that class and that have been segregated into that class for purposes of receiving identical treatment under the Plan pursuant to Section 1122 of the Bankruptcy Code.

**1.33** "**Class 2A Alternative A Guaranteed Payment**" has the meaning set forth in Section 4.2(b) hereof.

**1.34** "**Class 2C Guaranteed Payment**" has the meaning set forth in Section 4.4(b) hereof.

**1.35** "**Class 2D Contingent Guaranteed Payment**" has the meaning set forth in Section 4.5(b) hereof.

**1.36** "**Class 3 Alternative B Guaranteed Payment**" has the meaning set forth in Section 4.7(b) hereof.

**1.37** "**Collateral**" means any property or interest in Property of the Estate of the Debtors subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.38** "**Confirmation**" means entry of the Confirmation Order.

**1.39** "**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.40** "**Confirmation Hearing**" means the hearing conducted by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.41** "**Confirmation Order**" means the Order or Orders of the Bankruptcy Court confirming the Plan.

**1.42** "**Consummation**" means the occurrence of the Effective Date.

**1.43** "**Contingent Claim**" means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be

Allowed or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Claim and whether or not a relationship between the Holder of such Claim and the Debtors now or hereafter exists or previously existed.

**1.44** "**Creditor**" is defined in Section 101(10) of the Bankruptcy Code and is the Holder of one or more Claims.

**1.45** "**Cure Costs**" means all costs required pursuant to Bankruptcy Code section 365 of a Debtor or the Purchaser to cure any and all defaults, including pecuniary losses, arising under any Executory Contract or Unexpired Lease to be assumed by the Debtor and assigned to the Purchaser pursuant to the Asset Purchase Agreement and Transfer Order.

**1.46** "**Debentures**" means both the Senior Series 2009A Debentures and the Series 2009B Debentures.

**1.47** "**Debt**" means liability on a Claim.

**1.48** "**Debtor**" means O&G Leasing, LLC or Performance Drilling Company, LLC, or both in their individual capacities, depending on the context.

**1.49** "**Debtors**" means O&G Leasing, LLC and Performance Drilling Company, LLC.

**1.50** "**Debtors in Possession**" means the Debtors in their capacity as debtors in possession in the Bankruptcy Cases under Sections 1107(a) and 1108 of the Bankruptcy Code.

**1.51** "**Disallowed**" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order or by settlement or stipulation with the Holder, or (b) is (i) Scheduled at zero or as contingent, disputed, or unliquidated and (ii) not the subject of a Proof of Claim that has been Filed or deemed timely Filed pursuant to the Claims Bar Date Order, the Bankruptcy Code, or applicable law.

**1.52** "**Disbursing Agent**" means the Liquidating Trustee.

**1.53** "**Disclosure Statement**" means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, all as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.54** "**Disclosure Statement Order**" means the Order of the Bankruptcy Court approving, among other things, the Disclosure Statement and establishing the Bidding Procedures and certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**1.55** "**Disputed**" means, with reference to any Administrative Expense Claim or Claim, any such Administrative Expense Claim or Claim (a) to the extent neither Allowed nor Disallowed under the Plan or a Final Order nor deemed Allowed under Section 502, 503 or 1111 of the Bankruptcy Code, (b) which has been or hereafter is listed by a Debtor on its Bankruptcy Schedules as unliquidated, disputed or contingent and which has not been resolved by written

agreement of the parties or a Final Order, or (c) as to which a Debtor or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.  Prior to the earlier of the time an objection has been timely Filed and the expiration of the time within which to object to such Claim set forth herein or otherwise established by Order of the Bankruptcy Court, a Claim shall be considered Disputed to the extent that the amount of the Claim specified in a timely Filed proof of claim exceeds the amount of the Claim Scheduled by a Debtor as not disputed, contingent or unliquidated (but only to the extent of such excess portion).

      1.56   "**Disputed Claims Reserve**" means a reserve, if any, of Cash for the relevant Class established pursuant to this Plan by the Liquidating Trustee for the payment or other satisfaction of Disputed Claims that become, in whole or part, Allowed Claims after the Effective Date.

      1.57   "**Distribution(s)**" means the distribution of Cash or other Property to be made in accordance with this Plan.

      1.58   "**Distribution Date**" means any date on which the Liquidating Trustee makes Distributions to Holders of Allowed Claims under the Plan.

      1.59   "**Dividends**" means any Post-Confirmation distribution by Solsten Drilling or Solsten Funding to Holders of their respective LLC member interests, whether made in Cash, securities, or other property, and including distributions upon any liquidation, dissolution or winding up of such entity.

      1.60   "**Dutch Auction**" represents the mechanism described herein under Plan Alternative A and in the Asset Purchase Agreement, conducted no less than once in each calendar year following the Effective Date, by which Solsten Funding (using the Solsten Funding Contribution, the Solsten Funding Claims Purchase Recoveries, and Excess Cash dividended in that year to Solsten Funding) shall offer to purchase Allowed Class 2A and Class 2C Claims entitled to Guaranteed Payments hereunder at an initial starting price, and thereafter incrementally increasing such price for purposes of inducing such Holders to agree to sell their Allowed Claims to Solsten Funding; *provided however*, that

      (A)     while Solsten Funding shall be required to use all Excess Cash dividended in that year to purchase such Allowed Claims, in no event shall Solsten Funding be required to purchase such Allowed Claims at an amount greater than 80% of their Face Amount;

      (B)     Holders of Series 2009B Debentures, Allowed Class 2D Claims, and Allowed Class 3 Claims shall not be entitled to participate in any Dutch Auction; and

      (C)     Excess Cash not used to purchase Allowed Claims in any Dutch Auction may be used thereafter by Solsten Funding in its sole discretion for capital expenditures or capital investments or for transfer to Solsten Drilling as a capital contribution;

(D) In the event there shall be a greater amount of Allowed Class 2A and/or Class 2C Claims tendering in the Dutch Auction than there are funds available to purchase such Claims, then payments shall be allocated Pro Rata based on the principal amount of aggregate Claims tendered.

Within 60 days following the conclusion of each Dutch Auction, Solsten Funding shall report the results thereof to the Liquidating Trustee and the Indenture Trustee in such form as reasonably requested by them in order to identify the Excess Cash and other funds expended by Solsten Funding in the Dutch Auction, the Face Amount of each Allowed Claim purchased in the Dutch Auction, and the identity of each Person selling its Allowed Claim in the Dutch Auction.

**1.61** "**EBITDA**" means Pre-Tax Net Income plus (i) depreciation, (ii) interest charges, and (iii) amortization, all as determined in accordance with GAAP.

**1.62** "**Effective Date**" means a Business Day selected by the Liquidating Trustee and the Indenture Trustee on or after the Confirmation Date, but not later than sixty (60) days after the entry of the Confirmation Order, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of the Plan shall have been satisfied or waived.

**1.63** "**Entity**" has the meaning set forth in Section 101(15) of the Bankruptcy Code.

**1.64** "**Equity Interest**" means any membership interest or Equity Security (as defined in Bankruptcy Code section 101(16)) of the Debtors outstanding on the Effective Date, including, *inter alia*, unclaimed dividends and any rights of any Person or Entity to purchase or demand the issuance of any membership interest, Equity Security, or economic interest related thereto.

**1.65** "**Estate**" means the bankruptcy estate of a Debtor, as created under Section 541 of the Bankruptcy Code.

**1.66** "**Excess Cash**" means, as applied to the income statement of Solsten Drilling under GAAP for each full calendar year following the Effective Date, the Cash amount dividended to Solsten Funding within 120 days following the close of that calendar year, as determined by following formula (with all figures representing full calendar year amounts):

> Pre-Tax Net Income
>
> (+) Depreciation
>
> (−) Principal portion of Guaranteed Payments
>
> (−) Dividend payments on 3% Preferred Interests
>
> (−) Capital expenditures or capital investment financed from internally generated Cash flows
>
> (−) Federal Income Tax Liability Dividend to SolstenXP equal to 35% of Solsten Drilling's pre-tax net income

(–) All principal paid under the SolstenXP Post-Confirmation Loan Agreement

(–) Subtotal of above x 10% as dividend to SolstenXP

_____

(Resultant Cash Amount)  x  90%  =  **Excess Cash;**

*provided, however,* that if the period between the Effective Date and the calendar year-end cutoff date shall be less than a full calendar year, then the first determination of Excess Cash shall be calculated based on the Cash amount derived from the foregoing formula commencing as of the Effective Date and concluding through the end of the first full calendar year thereafter.

**1.67** "**Executory Contract"** means any executory contract or Unexpired Lease subject to section 365 of the Bankruptcy Code between a Debtor and any other Person or Entity.

**1.68** "**Exhibit**" means an exhibit annexed to the Plan, the Asset Purchase Agreement, or the Disclosure Statement, as the case may be depending on the context.

**1.69** "**Face Amount**" means (a) when used in reference to a Disputed or Disallowed Claim, the full stated amount claimed by the Claim Holder in any proof of claim timely Filed or otherwise deemed timely Filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

**1.70** "**Federal Income Tax Liability Dividend**" means the Permitted Distribution to be made annually by Solsten Drilling to Solsten Funding in an amount equal to 35% of Solsten Drilling's federal taxable net income, as reasonably determined by Solsten Drilling's retained tax accountant..

**1.71** "**Filed,**" "**File**," or "**Filing**" means file, filed, or filing with the Bankruptcy Court in this Case, as the context requires.

**1.72** "**Final Order**" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, re-argument or rehearing shall then be pending; or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

**1.73** "**GAAP**" means the set of rules, conventions, standards, and procedures for reporting financing information, as established by the Financial Accounting Standards Board.

**1.74** "**General Unsecured Claim**" means any Claim for which no Property of the Debtors or the Debtors' Estates serves as security or collateral, including that portion of an Undersecured Claim in excess of the value of the Collateral securing the Claim. It also consists of the Claims for unsecured debts, liabilities, and demands of any character whatsoever owed by the Debtors, including, without limitation, all Claims noted on the Schedules filed herein, all amendments hereto, and all Claims by persons having actual and/or constructive notice or knowledge of the Bankruptcy Cases.

**1.75** "**General Unsecured Creditor**" means a Person or Entity that holds a General Unsecured Claim against the Debtors.

**1.76** "**Guaranteed Payments**" means (I) the $190,156 in quarterly payments required to be made to Holders of Allowed Class 2C Claims on or about the last Business Day of each of 28 successive calendar quarters commencing on the last day of the first full calendar quarter following the Effective Date, and (II) (A) the $818,292 in quarterly payments required to be tendered by the Purchaser to the Indenture Trustee for the benefit of Holders of Class 2A Claims under Plan Alternative A or (B) the $818,292 in quarterly payments required to be tendered by the Purchaser to the Liquidating Trustee for the benefit of Holders of Class 3 Claims under Plan Alternative B (less any amounts required to be paid separately to Holders of Allowed Class 2D Claims if (x) a Final Order is entered against the Holders of Class 2A and Class 2B Claims in the Lien Adversary and (y) a Final Order is entered in favor of the Holders of Allowed Class 2D Claims in the Octane Adversary), on or about the last Business Day of each of 40 successive calendar quarters commencing on the last day of the first full calendar quarter following the Effective Date.

**1.77** "**Holder**" means an Entity holding a Claim or Equity Interest.

**1.78** "**Impaired**" means any Claim or Equity Interest that is "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

**1.79** "**Indemnitee**" means any director, officer, employee, agent, or representative of the Debtors who is entitled to assert Indemnification Rights.

**1.80** "**Indemnification Rights**" means any obligations or rights of the Debtors to indemnify or contribute to the losses, liabilities, or expenses of an Indemnitee pursuant to their certificates of incorporation, bylaws, policies, operating agreements or under applicable law in respect of any Claims, demands, suits, Causes of Action, or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtors.

**1.81** "**Indenture Trustee**" means First Security Bank, as Trustee for the Holders of the Senior Series 2009A Debentures and the Series 2009B Debentures.

**1.82** "**Indenture Trustee Claims**" means the claims of the Indenture Trustee for all reasonable fees and expenses incurred by the Indenture Trustee (including the reasonable fees

and expenses of its counsel, advisors, and/or agents) in connection with the Bankruptcy Cases (including related to the submission, confirmation, and approval of the Plan, Disclosure Statement, and related documents), or Post-Confirmation in attending to the administration of the rights of Holders of Allowed Class 2A and Class 2B Claims under the Plan, in objecting to Claims, or in undertaking such other matters to which the Indenture Trustee is authorized by this Plan.

    **1.83** "**Intercompany Claim**" means a Claim held by an Affiliate of a Debtor.

    **1.84** "**Insider**" has the meaning set forth in Section 101(31) of the Bankruptcy Code.

    **1.85** "**Lien**" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

    **1.86** "**Lien Adversary**" means the pending adversary proceeding captioned *O&G Leasing, LLC and Performance Drilling Company, LLC v. First Security Bank, as Trustee, and DOE Debenture Holders 1-5000*, Adv. No. 10-00054, before the Bankruptcy Court seeking a determination that the Claims arising under the Debentures are General Unsecured Claims and not Secured Claims against the Debtors.

    **1.87** "**Liquidating Trust**" shall mean a trust established by the Liquidating Trust Agreement and created for the benefit of all Holders of Allowed Claims entitled to receive distributions under the Plan from the Liquidating Trustee, which shall, among other things, administer and distribute the assets available on account of such Allowed Claims under this Plan, and with respect to which the Liquidating Trustee will act as Disbursing Agent.

    **1.88** "**Liquidating Trust Agreement**" means the agreement to be executed by the Liquidating Trustee and attached hereto as **Exhibit 1.87** that establishes the Liquidating Trust.

    **1.89** "**Liquidating Trust Beneficiaries**" shall have the meaning ascribed to that phrase in Section 6.1 hereof.

    **1.90** "**Liquidating Trust Claims**" means the claims of the Liquidating Trustee for all reasonable fees and expenses incurred by the Liquidating Trustee (including the reasonable fees and expenses of its counsel, advisors, and/or agents) in connection with administration of the Liquidating Trust and undertaking of all actions permitted by the Liquidating Trust Agreement and this Plan.

    **1.91** "**Liquidating Trust Contribution**" means the excess funds available in the Debtors' Estates as of the Effective Date after accounting for payments due on account of all Administrative Expense Claims, Cure Costs, Professional Fees, and all other Allowed Claims payable in full in Cash on the Effective Date, which funds shall vest in the Liquidating Trust and be managed by the Liquidating Trustee for distribution under the Plan or for such other purposes as are permitted by the Liquidating Trust Agreement.

    **1.92** "**Liquidating Trust Distribution Accounts**" means those interest-bearing accounts to be established by the Liquidating Trustee pursuant to the Liquidating Trust Agreement to hold Cash and from which to effectuate Distributions contemplated by the Plan or the Liquidating Trust Agreement.

**1.93** "**Liquidating Trustee**" means the Person or Entity selected by the Indenture Trustee and approved by the Bankruptcy Court in the Confirmation Order to serve as the "Liquidating Trustee" under this Plan.

**1.94** "**Liquidating Trust Oversight Committee**" or "**LTOC**" means a committee of three persons selected by the Indenture Trustee from among Holders of Senior Series 2009A Debentures with whom the Liquidating Trustee shall consult as specified by the Plan. In the event of the death, resignation, or removal of any member of the LTOC, the remaining members of the LTOC shall appoint a successor from among the Holders of Senior Series 2009A Debentures.

**1.95** "**Local Bankruptcy Rule**s" means the Local Bankruptcy Rules for the Bankruptcy Court, as amended from time to time.

**1.96** "**LTOC**" means the Liquidating Trust Oversight Committee.

**1.97** "**New Indenture**" means the indenture to be executed between the Purchaser and the Indenture Trustee pursuant to which the Series 2011A Debentures will be issued to the Holders of Allowed Class 2A Claims under Plan Alternative A in accordance with Section 4.2 of the Plan and in such form as is set forth at **Exhibit 1.97** hereof, the terms of which shall be satisfactory to the Purchaser in its sole discretion.

**1.98** "**New WSB Note**" means the loan and security agreement to be executed between the Purchaser and Washington State Bank in accordance with Section 4.4 of the Plan and in such form as is set forth at **Exhibit 1.98** hereof, the terms of which shall be satisfactory to the Purchaser in its sole discretion.

**1.99** "**Octane Adversary**" means the adversary proceeding that will be commenced against Octane Funding before or after the Confirmation Date seeking a determination that the Claims asserted by Octane Funding, to the extent such Claims are Allowed, are either Unsecured Claims or Subordinated Claims.

**1.100** "**Octane Funding**" means Octane Funding, LLC, and Octane Funding II, LLC, Affiliates of the Debtors and certain Insiders.

**1.101** "**O&G**" means O&G Leasing, LLC, operating as Debtor in Possession pursuant to Bankruptcy Code Sections 1107 and 1108.

**1.102** "**Operating Accounts Balances**" means the Cash in the Debtors' DIP (debtor in possession) operating bank accounts as of the Effective Date.

**1.103** "**Order**" means a judgment, order, or decree entered by the Bankruptcy Court (or if on appeal or otherwise, by the District Court or Court of Appeals), regardless of whether subject to appeal or reconsideration, the effect of which has not been stayed.

**1.104** "**PDC**" means Performance Drilling Company, LLC, operating as Debtor in Possession pursuant to Bankruptcy Code Sections 1107 and 1108.

**1.105** "**Permitted Solsten Drilling Distributions**" means distributions to be made by Solsten Drilling to Solsten Funding, notwithstanding any provision of applicable state law to the contrary, in respect of the Federal Income Tax Liability Dividend, Allocable Costs, and Excess Cash.

**1.106** "**Permitted Solsten Funding Distributions**" means distributions to be made by Solsten Funding to SolstenXP, notwithstanding any provision of applicable state law to the contrary, in an amount equal to 90% of Solsten Funding's federal taxable net income (which is generally expected to be comprised of, but shall not be limited to, Solsten Funding's interest income less Allocable Costs).

**1.107** "**Person**" has the meaning set forth in Section 101(41) of the Bankruptcy Code and includes, without limitation, natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions.

**1.108** "**Petition Date**" means May 21, 2010, the date the Debtors filed their petitions for relief under Chapter 11 of the Bankruptcy Code.

**1.109** "**Plan**" means this chapter 11 plan of reorganization, including, without limitation, the Exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.110** "**Plan Alternative A**" means the treatment proposed for Classes 2A, 2D, and 3 in the event, subject to Section 6.4 hereof, a Final Order is entered in favor of the Indenture Trustee in the Lien Adversary which results in Allowed Class 2A Claims (Senior Series 2009A Debentures) being treated as Secured Claims. The treatment of Classes 2B, 2C, 2E, 4, 5, and 6 does not change under Plan Alternative A or Plan Alternative B.

**1.111** "**Plan Alternative B**" means the treatment proposed for Classes 2A, 2D, and 3 in the event, subject to Section 6.4 hereof, a Final Order is entered against the Indenture Trustee in the Lien Adversary resulting in Allowed Class 2A Claims (Senior Series 2009A Debentures) being treated as Unsecured Claims. The treatment of Classes 2B, 2C, 2E, 4, 5, and 6 does not change under Plan Alternative A or Plan Alternative B.

**1.112** "**Plan Supplement**" means a separate volume to be Filed with the Bankruptcy Court that includes, among other documents, forms of (i) the Liquidating Trust Agreement, (ii) the Asset Purchase Agreement and Schedules thereto, (iii) the Bidding Procedures, (iv) the Exhibit of Executory Contracts to be assumed and assigned to the Purchaser under the Asset Purchase Agreement, (v) the form of assignment of Causes of Action to the Liquidating Trust, and (vi) the Causes of Action to be transferred to the Liquidating Trust. The Plan Supplement (containing drafts or final versions of the foregoing documents) shall be filed with the clerk of the Bankruptcy Court as soon as practicable, but in no event later than fifteen (15) days prior to the Voting Deadline or on such other date as the Bankruptcy Court establishes.

**1.113** "**Post-Confirmation**" means on and after the Effective Date.

**1.114** "**Post-Confirmation Debtor**" means the Debtor on or after the Effective Date.

**1.115** "**Post-Petition Escrow Account**" means the funds in the debt reserve escrow account pursuant to the Cash Collateral Order in which the Debtor deposited $65,000 per month commencing July 15, 2010.

**1.116** "**Priority Unsecured Non-Tax Claim**" means a Claim entitled to priority in payment as specified in Section 507(a)(2)-(7) and 507(a)(9) of the Bankruptcy Code.

**1.117** "**Priority Unsecured Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.118** "**Professional**" means any person, including counsel for the Debtors, retained or to be compensated pursuant to 11 U.S.C. §§ 327, 328, 330, 331, or 503(b).

**1.119** "**Professional Fees**" means a Claim for compensation or reimbursement of expenses of a Professional retained in the Bankruptcy Cases and requested in accordance with the provision of sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code.

**1.120** "**Property of the Estate**" has the meaning set forth in Section 541 of the Bankruptcy Code and includes all property and interests in property of the Estate of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtor, or acquired by the Estate.

**1.121** "**Proposed Purchaser**" is Solsten Drilling, the party submitting the Stalking Horse Bid

**1.122** "**Pro Rata**" means, with reference to any distribution on account of any Allowed Claim in any class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claims bears to the aggregate amount of Allowed Claims in such Class.

**1.123** "**Purchased Assets**" has the meaning set forth in the Asset Purchase Agreement, and includes all property, assets, rights, and privileges of the Debtors (other than Excluded Assets, as defined in the Asset Purchase Agreement) that are related to, used in, held for use in, or otherwise associated with the operation of the Business, whether real, personal, or mixed, tangible or intangible, of every kind and description and wherever located, whether identified in the Asset Purchase Agreement, and whether accrued, contingent or otherwise.

**1.124** "**Purchaser**" is the successful bidder at the 363 Sale for the Purchased Assets pursuant to the Asset Purchase Agreement, and means Solsten Drilling if its Stalking Horse Bid is the winning bid approved by the Bankruptcy Court in the Transfer Order.

**1.125** "**Qualified Bidder**" has the meaning set forth in the Bidding Procedures.

**1.126** "**Related Person**" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and each of their respective members, partners, Equity Interest Holders, officers, directors,

employees, representatives, advisors, attorneys, agents and professionals, in each case acting in such capacity, and any Person claiming by or through any of them.

**1.127** "**Released Parties**" shall mean (i) the Indenture Trustee, (ii) the Purchaser, (iii) the Liquidating Trustee, and each of their respective Affiliates, managers, members, officers, directors, principals, employees, agents, advisors, attorneys, accountants, consultants, representatives, and other professionals, in each case in their capacities as such and not in any other capacity.

**1.128** "**Sale Hearing**" means the hearing on the 363 Sale.

**1.129** "**Sales Procedures Order**" means the Order of the Bankruptcy Court authorizing and directing the marketing of the Purchased Assets through the sales and procedures described therein.

**1.130** "**Scheduled**" means and refers to information set forth in the Bankruptcy Schedules.

**1.131** "**Schedules**" means a schedule annexed to the Plan, the Asset Purchase Agreement, or the Disclosure Statement, as the case may be depending on the context.

**1.132** "**Secured Claim**" means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

**1.133** "**Secured Creditor**" means those creditors who possess valid and perfected Liens against any property of the Debtor, including, but not limited to, creditors holding fully Secured Claims and Undersecured Claims.

**1.134** "**Series 2009 Debentures**" means, collectively, the Senior Series 2009A Debentures and the Series 2009B Debentures.

**1.135** "**Senior Series 2009A Debentures**" means the 10.50% Debentures, Senior Series 2009A issued by O&G Leasing, LLC, in the approximate amount of $25,955,000.

**1.136** "**Series 2009B Debentures**" means the 16.00% Debentures, Series 2009B issued by O&G Leasing, LLC, in the approximate amount of $7,610,000.

**1.137** "**Series 2011A Debentures**" means the debentures to be issued to the Holders of Allowed Class 2A Claims under Plan Alternative A in accordance with Section 4.2 of the Plan.

**1.138** "**Solsten Drilling**" means SolstenXP Drilling, LLC, the Proposed Purchaser that is and shall be wholly-owned by Solsten Funding.

**1.139** "**Solsten Drilling Contribution**" means the $1 million aggregate Cash contribution to be advanced by Solsten Funding to Solsten Drilling on the Effective Date for purposes of (i) funding payments required under the Plan on account of Allowed Administrative

Expenses, Professional Fees, Cure Costs, and other Allowed Claims payable in full in Cash on the Effective Date, but only up to $500,000 in the aggregate and only to the extent the Operating Accounts Balances are insufficient to pay such amounts and (ii) providing working capital to Solsten Drilling of not less than $500,000 as of the Effective Date.

**1.140** "**Solsten Funding**" means SolstenXP Venture Funding, LLC, a guarantor of Guaranteed Payments, a prospective purchaser of Allowed Claims under the Dutch Auction, and the sole owner of all LLC member interests in Solsten Drilling. All LLC member interests in Solsten Funding are owned by SolstenXP.

**1.141** "**Solsten Funding Claims Purchase Recoveries**" means any Cash received by Solsten Funding or its Affiliates from Solsten Drilling on account of payments made under the Plan to Holders of Allowed Class 2A or Class 2C Claims.

**1.142** "**Solsten Funding Contribution**" means the $3 million Cash contribution to be advanced by SolstenXP to Solsten Funding on the Effective Date to support Solsten Funding's $1,000,000 Solsten Drilling Contribution, purchases of Allowed Claims in the first Dutch Auction, and the Solsten Funding Guaranty.

**1.143** "**Solsten Funding Guaranty**" means the guaranty to be provided by Solsten Funding of Solsten Drilling's obligations under the Plan, including of all Guaranteed Payments.

**1.144** "**Solsten Post-Confirmation Loan Agreement**" means that certain revolving working capital loan agreement to be entered into as of the Effective Date between SolstenXP and Solsten Drilling that shall provide up to $1.5 million to Solsten Drilling first to support operations and, to the extent of line availability, assist Solsten Drilling in making the Guaranteed Payments required hereunder.

**1.145** "**SolstenXP**" means SolstenXP Inc., based in Anchorage, Alaska, a leading project management and contracting service company for the petroleum and natural resource industries.

**1.146** "**Stalking Horse Bid**" is the form of Asset Purchase Agreement executed by Solsten Drilling that is subject to receipt of higher and better offers from Qualified Bidders pursuant to the Bidding Procedures.

**1.147** "**Subordinated Claim**" means a Claim that is subordinated in payment to Claims in Classes 1, 2, and 3 by contract or by entry of a Final Order declaring that such Claim is subordinated in right of payment under the Bankruptcy Code or applicable state law.

**1.148** "**Tax Claim**" means any Claim for any and all federal, state, county and local income, ad valorem, excise, stamp and other taxes of any type or nature whatsoever.

**1.149** "**Tax Payment End Date**" has the meaning set forth in Section 3.4 hereof.

**1.150** "**Transfer Order**" means an Order entered by the Bankruptcy Court approving the 363 Sale of the Purchased Assets.

-16-