**1.151** "**Trust Indenture**" means that certain Amended and Restated Trust Indenture dated as of September 15, 2009 between First Security Bank, O&G Leasing, LLC and Performance Drilling Company, LLC.

**1.152** "**Undersecured Claim**" means a Claim held by a Secured Creditor in an amount which is greater than the value of the Collateral securing the Claim.

**1.153** "**Unexpired Leases**" means "unexpired leases" as such term is used within the meaning of Section 365 of the Bankruptcy Code.

**1.154** "**Unimpaired**" means a Claim that is not Impaired.

**1.155** "**Unliquidated Claim**" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

**1.156** "**United States Trustee**" means the United States Trustee for the Southern District of Mississippi.

**1.157** "**Unsecured Claim**" means any Claim that is not secured by a Lien on Collateral or to the extent the Debt exceeds the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent the Debt exceeds the amount of such permissible setoff.

**1.158** "**Voting Deadline**" means the date established by the Bankruptcy Court for the submission of Ballots pursuant to the terms and provisions of the Plan.

**1.159** "**Washington State Bank**" or "**WSB**" means Washington State Bank, a Secured Creditor.

**B.**    **Rules of Interpretation, Computation of Time, and Choice of Law**.

For purposes of the Plan, unless otherwise provided herein:

**1.**    The provisions of the Plan shall control over any descriptions thereof or inconsistencies contained in the Disclosure Statement. Where the Plan refers to any contract, instrument, or other agreement or document created in connection with the Plan, the provisions of such contract, instrument, or other agreement or document shall control in the case of any inconsistency with the terms of the Plan, and the Plan shall be interpreted to avoid any inconsistencies with the provisions of such contract, instrument, or other agreement or document.

**2.**    Any term used in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in, and shall be construed in accordance with the rules of construction under, the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Without limiting the foregoing, the rules of construction set forth in Bankruptcy Code Section 102 shall apply. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to any of the Exhibits to the Plan

except to the extent expressly so stated in the Disclosure Statement or in any Exhibit to the Plan, as the case may be.

      **3.**      The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular Article, Section, Subsection, or clause contained in the Plan.

      **4.**      Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections, and Exhibits are references to Articles, Sections, and Exhibits of or to the Plan.

      **5.**      Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been amended, restated, modified, or supplemented as of the Effective Date.

      **6.**      Captions and headings to Articles and Sections in the Plan are inserted for convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretation of any provisions hereof.

      **7.**      Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

      **8.**      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

      **9.**      All Exhibits to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when Filed.

      **10.**      Subject to the provisions of any contract, certificate, bylaw, instrument, or other agreement or document entered into in connection with the Plan, or any mandatory provision of law applicable thereto, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the federal law of the United States, including the Bankruptcy Code and Bankruptcy Rules.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

      The following is the designation of the Classes of Claims and Equity Interests under the Plan.  Administrative Expense Claims, Secured Tax Claims, and Priority Unsecured Tax Claims have not been classified and are excluded from the following Classes in accordance with Bankruptcy Code Section 1123(a)(1).  The treatment of these unclassified Claims is contained in Article III of the Plan.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in a different Class to the extent any remainder of the Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that the Claim or Equity Interest is an Allowed Claim or Allowed Equity

Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date or such other date as determined by the Liquidating Trustee in its sole discretion.

**2.1** **Class 1 – Priority Unsecured Non-Tax Claims.** Class 1 is comprised of the Allowed Priority Unsecured Non-Tax Claims against the Debtors, including Allowed Claims of employees against the Debtors that are specified as having priority in Bankruptcy Code sections 507(a)(4) or 507(a)(5), not to exceed $11,725 per Person. Claims in Class 1 are Unimpaired under the Plan.

**2.2** **Class 2 – Allowed and Disputed Secured Claims.** Class 2 is comprised of the following Classes 2A through 2E:

**(a)** **Class 2A – Allowed Claims of Holders of Senior Series 2009A Debentures.** Class 2A is comprised of the Allowed Claims of the Holders of Senior Series 2009A Debentures against both Debtors. Claims in Class 2A are Impaired under the Plan.

**(b)** **Class 2B – Allowed Claims of Holders of Series 2009B Debentures.** Class 2B is comprised of the Allowed Claims of the Holders of Series 2009B Debentures against both Debtors. Claims in Class 2B are Impaired under the Plan.

**(c)** **Class 2C – Allowed Secured Claims and Certain Allowed Unsecured Claims of Washington State Bank.** Class 2C is comprised of the Allowed Secured Claims of WSB against O&G and the Allowed Unsecured Claim of WSB against PDC represented by PDC's guarantee of WSB's Allowed Secured Claim against O&G. Claims in Class 2C are Impaired under the Plan.

**(d)** **Class 2D – Allowed Claims of Octane Funding, LLC.** Class 2D is comprised of the Allowed Claims of Octane Funding against O&G. Claims in Class 2D are Impaired under the Plan.

**(e)** **Class 2E – Other Allowed Secured Claims.** Class 2E is comprised of Allowed Secured Claims against the Debtors that are not included in any of Classes 2A through 2D of the Plan (excluding Allowed Secured Tax Claims). Each Allowed Secured Claim in Class 2E will be considered to be in its own separate subclass within Class 2E, and each such subclass shall be deemed to be a separate Class for purposes of the Plan. Claims in Class 2E are Impaired under the Plan.

**2.3** **Class 3 – Allowed General Unsecured Claims.** Class 3 is comprised of the Allowed General Unsecured Claims of both Debtors that are not: (a) cured, paid, released, or waived pursuant to the Plan; (b) assumed by the Purchaser pursuant to the Asset Purchase Agreement; or (c) classified in any other Class of Claims. Class 3 Claims include, without limitation, (i) Claims for goods sold and services rendered, (ii) Claims for monies lent, (iii) Claims based upon guarantees of performance or payment of the obligations or duties of any Person, (iv) Claims for contribution, reimbursement, or indemnity (excluding Claims for Indemnification Rights), (v) Claims for fines, penalties, or assessments, (vi) Claims for tort

-19-

liability, (vii) Claims arising from the rejection of Executory Contracts and Unexpired Leases, (viii) Claims arising for environmental or bio-hazardous remediation, and (ix) the Allowed Claims of Holders of Class 2A, Class 2B, and Class 2C Claims in excess of the principal amount of their Claims (*e.g.,* accrued and unpaid interest and other permitted charges under 11 U.S.C. § 506(b). Claims in Class 3 are Impaired under the Plan.

 **2.4** **Class 4 – Intercompany Claims.** Class 4 is comprised of all Intercompany Claims against the Debtors. Claims in Class 4 are Impaired under the Plan.

 **2.5** **Class 5 – Subordinated Claims.** Class 5 is comprised of all Subordinated Claims against the Debtors. Claims in Class 5 are Impaired under the Plan.

 **2.6** **Class 6 – Equity Interests.** Class 6 is comprised of all Equity Interests in the Debtors, including Claims arising under Bankruptcy Code section 510(b) and Claims based upon Indemnification Rights.

 **2.7** **Summary of Classified Claims and Equity Interests.** The following table designates the classes of Claims against and Equity Interests in the Debtors and specifies which of those classes are Impaired or Unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code or deemed to reject the Plan.

TABLE 1: SUMMARY OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

| Class | Nature of Claims Within Class | Impairment | Entitled to Vote |
|-------|-------------------------------|------------|------------------|
| 1 | Priority Unsecured Non-Tax Claims (both Debtors) | Impaired | Yes |
| 2 | Secured Claims (Consisting of Five Subclasses: 2A, 2B, 2C, 2D, 2E) | Impaired | Yes |
| 3 | General Unsecured Claims (both Debtors) | Impaired | Yes |
| 4 | Intercompany Unsecured Claims (both Debtors) | Impaired | No (deemed to reject) |
| 5 | Subordinated Claims (both Debtors) | Impaired | No (deemed to reject) |
| 6 | Equity Interests (both Debtors) | Impaired | No (deemed to reject) |

# ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

 In accordance with Bankruptcy Code section 1123(a)(1), Administrative Expense Claims (including Professional Fees) and Priority Unsecured Tax Claims are not classified under the Plan. The treatment of these unclassified Claims is set forth in this Article III.

 **3.1** **Administrative Expense Claims.** Except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date

such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable. Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor in Possession shall be paid in full on the Effective Date, first from the Operating Accounts Balances and second, up to $500,000, from the Solsten Drilling Contribution. Allowed Administrative Expense Claims representing the Break-Up Fee to Solsten Drilling on account of its Stalking Horse Bid in the event of any Alternative Transaction (as defined in the Bidding Procedures), shall be paid in full on the Effective Date from the Operating Accounts Balances.

**3.2** **United States Trustee Fees.** With respect to amounts due to the Office of the United States Trustee, the Liquidating Trustee will pay on the Effective Date all fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) that become due prior to the Effective Date. Furthermore, the Liquidating Trustee shall timely pay to the United States Trustee, any and all Post-Confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as this case is converted, dismissed or closed by the Bankruptcy Court. Additionally, the Liquidating Trustee shall submit to the United States Trustee post confirmation quarterly operating reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed or closed by the Court. At this time, the Debtors are current on these fees owed to the United States Trustee.

**3.3** **Professional Fees.** The professionals for the Debtors and the Indenture Trustee who seek an award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Confirmation Date under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file within forty-five (45) days from the date the Confirmation Order is entered their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the Final Order relating to or Allowing any such Administrative Expense Claim as of the Effective Date. Payments on account of Professional Fees shall be paid first from the Operating Accounts Balances and second, up to $500,000, from the Solsten Drilling Contribution. The aggregate amount of fees and expenses sought herein by Professionals for the Indenture Trustee shall be net of all funds in the Post-Petition Escrow Account as of the Effective Date.

**3.4** **Allowed Secured and Priority Unsecured Tax Claims.** Each Holder of an Allowed Secured Tax Claim or an Allowed Priority Unsecured Tax Claim shall receive from the Liquidating Trustee deferred cash payments over a period that extends no longer than five (5) years after the Petition Date (the "**Tax Payment End Date**"), in an aggregate amount equal to the amount of such Allowed Claim, plus interest following the Effective Date on the unpaid portion thereof at a rate of four percent (4%) per annum. The payment of each such Allowed Secured Tax Claim or Allowed Priority Unsecured Tax Claim shall be made in equal quarterly installments through the Tax Payment End Date, with the first installment due on the latest of (i) the first Business Day following the end of the first full fiscal quarter following the Effective Date, (ii) the first Business Day following the end of the first full fiscal quarter following the date on which an Order Allowing such Tax Claim becomes a Final Order, and (iii) such other time or times as may be agreed with the Holder of such Allowed Claim. Each installment shall include simple interest on the unpaid balance of the Allowed Secured Tax Claim or Allowed

Priority Unsecured Tax Claim, without penalty of any kind. In exchange for the treatment provided herein, all Liens securing an Allowed Secured Tax Claim shall be deemed discharged and released as of the Effective Date.

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**4.1**     **Allowed Priority Unsecured Non-Tax Claims (Class 1).**

    **(a)**     **Impairment and Voting.** Class 1 is Unimpaired by the Plan. Each Holder of an Allowed Priority Unsecured Non-Tax Claim is not entitled to vote to accept or reject the Plan because each such Holder is conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

    **(b)**     **Distributions.** Each Holder of an Allowed Priority Unsecured Non-Tax Claim will receive Cash from the Liquidating Trustee in an amount equal to such Allowed Priority Unsecured Non-Tax Claim on the later of the Effective Date and the date such Allowed Priority Unsecured Non-Tax Claim becomes an Allowed Priority Unsecured Non-Tax Claim, or as soon thereafter as is practicable.

**4.2**     **Class 2A – Allowed Claims of Holders of Senior Series 2009A Debentures.**

    **(a)**     **Impairment and Voting.** Class 2A is Impaired by the Plan. Each Holder of an Allowed Class 2A Claim is entitled to vote to accept or reject the Plan.

    **(b)**     **Treatment and Distributions.** The treatment of the Holders of Class 2A Claims depends upon the outcome of the Lien Adversary. Subject to Section 6.4 hereof, if a Final Order is entered in that adversary proceeding in favor of the Holders of Class 2A Claims, then the Holders of Class 2A Claims will be treated as Holders of Allowed Secured Claims entitled to payment under Plan Alternative 2A-(A). Conversely, subject to Section 6.4 hereof, if a Final Order is entered in that adversary proceeding against the Holders of Class 2A Claims, then the Holders of Allowed Class 2A Claims will be treated as Holders of Allowed Unsecured Claims entitled to payment under Plan Alternative 2A-(B). The treatment of Holders of Allowed Class 2A Claims under Plan Alternative 2A-(A) and Plan Alternative 2A-(B) is as follows:

    **(i)**     ***Plan Alternative 2A-(A):***

- ▪ In accordance with the terms of the New Indenture, and as part of the purchase price, Solsten Drilling shall pay to the Indenture Trustee for benefit of the Holders of Allowed Class 2A Claims an amount equal to $25,955,000 (representing the principal amount arising under the Series 2009A Debenture).

▪ Holders of Allowed Class 2A Claims shall be given a lien on the Purchased Assets to secure the $25,955,000 in principal amount according to the same priorities and to the same extent as existed as of the Effective Date.

▪ Following the Effective Date, interest shall accrue on the unpaid balance of the New Indenture to Class 2A Claims at a rate of 5% per annum.

▪ The Purchaser shall pay down the amount due under the Series 2011A Debentures, plus interest accruing thereon after the Effective Date, by paying the Indenture Trustee, for distribution to Holders of the Series 2011A Debentures, after deduction of reasonable Indenture Trustee Claims not reimbursed by the Liquidating Trustee, their Pro Rata share of $818,292.00 (the "**Class 2A Alternative A Guaranteed Payment**") on or about the last Business Day of each of 40 successive calendar quarters, with the first such payment commencing on the last day of the first full calendar quarter following the Effective Date. The payments hereunder represent payments according to a mortgage amortization schedule.

▪ Upon completion of the Class 2A Alternative A Guaranteed Payment, the liabilities of the Purchaser to the Holders of Allowed Class 2A Claims under the New Indenture and the Series 2011A Debentures shall be deemed extinguished and all liens and security interests arising thereunder shall be deemed released.

▪ Payment of the Class 2A Alternative A Guaranteed Payment shall be further guaranteed by Solsten Funding.

▪ Solsten Funding shall conduct a Dutch Auction to purchase Allowed Class 2A Claims no less than once in each calendar year using Excess Cash and, in the first Dutch Auction only, the Solsten Funding Contribution; *provided however*, that in no event will Solsten Funding be required to purchase such Allowed Class 2A Claims at an amount greater than 80% of their Face Amount. All purchased Allowed Class 2A Claims shall hold a lien against all Purchased Assets on a pro rata basis with all remaining Allowed Class 2A Claims.

▪ The amounts of the Allowed Claims of Holders of Senior Series 2009A Debentures in excess of the principal amount of their Claims shall be treated as Unsecured Claims under Class 3 of the Plan.

-23-

> ▪ Accrued interest and other permitted charges under the Indenture payable to Holders of Allowed Class 2A Claims shall be treated as Allowed Class 3 Claims and shall share Pro Rata in distributions provided in the Plan to Holders of Allowed Class 3 Claims under Plan Alternative 3(A).

(ii)     ***Plan Alternative 2A-(B):***

The entire Allowed Class 2A Claim, including accrued and unpaid interest thereon through the Petition Date plus attorneys' fees and other permitted charges, shall be treated as an Allowed Class 3 Claim and Holders of such Allowed Class 2A Claims shall receive their Pro Rata share of the distributions provided in the Plan to Holders of Allowed Class 3 Claims under Plan Alternative 3(B).   In this event, Class 2A Claim holders shall have no lien rights.

(iii)     **Disposition of Post-Petition Escrow Account**.   All funds in the Post-Petition Escrow Account shall be released on the Effective Date to the Indenture Trustee and shall be applied and distributed by the Indenture Trustee in the following manner: first, to pay all outstanding unpaid invoices for postpetition services rendered and expenses incurred by its attorneys, consultants, and professionals in connection with the Cases and the Lien Adversary; second, to reimburse itself for all invoices paid at any time prior to the Effective Date for services rendered and expenses incurred by its attorneys, consultants, and professionals in connection with the Cases, the Lien Adversary, or the Debtors; third, to reimburse itself for all costs incurred by it in connection with the Cases, the Lien Adversary, or the Debtors; fourth, to be held by it and distributed in such manner as it deems appropriate under the Indenture.

**4.3     Class 2B – Allowed Claims of Holders of Series 2009B Debentures.**

(a)     **Impairment and Voting.**  Class 2B is Impaired by the Plan.  Each Holder of an Allowed Class 2B Claim is entitled to vote to accept or reject the Plan.

(b)     **Treatment and Distributions**.   The treatment of the Holders of Class 2B Claims does not depend upon the outcome of the Lien Adversary.  The treatment of Holders of Allowed Class 2B Claims is as follows:

> ▪ The Purchaser shall issue to Holders of Allowed Class 2B Claims under the Series 2009B Debentures one (1) 3% Preferred Interest for each one dollar ($1.00) of principal amount of Allowed Class 2B Claims, all subject to the 3% Preferred Buyback Rights.

> ▪ The rights of Holders of Allowed Class 2B Claims under the Trust Indenture shall be entirely extinguished.

- Accrued interest and other permitted charges under the Indenture payable to Holders of Allowed Class 2B Claims shall be treated as Allowed Class 3 Claims and shall share Pro Rata in distributions provided in the Plan to Holders of Allowed Class 3 Claims under Plan Alternative 3(A) or Plan Alternative 3(B), as the case may be.

**4.4 Class 2C – Allowed Secured Claims and Certain Allowed Unsecured Claims of Washington State Bank.**

(a) **Impairment and Voting.** Class 2C is Impaired by the Plan. Each Holder of an Allowed Class 2C Claim is entitled to vote to accept or reject the Plan.

(b) **Treatment and Distributions.** The treatment of the Holders of Class 2C Claims shall be as follows:

- In accordance with the terms of the New WSB Note, Solsten Drilling shall pay Holders of Allowed Class 2C Claims an amount equal to $4,504,177 (representing the principal amount owing to Washington State Bank as of the Petition Date), which is a portion of the Purchase Price.

- Following the Effective Date, interest shall accrue on the Allowed Class 2C Claim at a rate of 5% per annum.

- The Purchaser shall pay down the amount due under the New WSB Note, plus interest accruing thereon, by paying Holders of Allowed Class 2C Claims their Pro Rata share of $190,156 (the "**Class 2C Guaranteed Payment**") on or about the last Business Day of each of 28 successive calendar quarters, with the first such payment commencing on the last day of the first full calendar quarter following the Effective Date. The payments hereunder represent payments according to a mortgage amortization schedule.

- The Allowed Class 2C Claims shall be given a lien on the Purchased Assets according to the same priorities as existed as of the Effective Date to secure the New WSB Note in the principal amount of $4,504,177.

- Solsten Funding shall conduct a Dutch Auction to purchase Allowed Class 2C Claims no less than once in each calendar year using Excess Cash and, in the first Dutch Auction only, the Solsten Funding Contribution; *provided however*, that in no event will Solsten Funding be required to purchase such Allowed Class 2C Claims at an amount greater than 80% of

their Face Amount. All purchased Allowed Class 2C Claims shall hold a lien against all Purchased Assets on a pro rata basis with all remaining Allowed Class 2C Claims.

▪ Upon completion of the Class 2C Guaranteed Payment, the liabilities of the Purchaser to the Holders of Allowed Class 2C Claims under the New WSB Note shall be deemed extinguished and all liens and security interests arising thereunder shall be deemed released.

▪ Payment of the Allowed Class 2C Claims under the New WSB Note shall be further guaranteed by Solsten Funding.

▪ Accrued interest and other permitted charges under the Indenture payable to Holders of Allowed Class 2C Claims shall be treated as Allowed Class 3 Claims and shall share Pro Rata in distributions provided in the Plan to Holders of Allowed Class 3 Claims under Plan Alternative 3(A) or Plan Alternative 3(B), as the case may be.

**4.5**     <u>**Class 2D – Allowed Claims of Octane Funding.**</u>

     **(a)**     <u>**Impairment and Voting.**</u> Class 2D is Impaired by the Plan. Each Holder of an Allowed Class 2D Claim is entitled to vote to accept or reject the Plan.

     **(b)**     <u>**Treatment and Distributions.**</u> The treatment of the Holders of Allowed Class 2D Claims depends upon the outcome of the Lien Adversary and the Octane Adversary, as provided hereinafter:

     **(i)**     <u>***Plan Alternative 2D-(A)***</u>**:** Subject to Section 6.4 hereof, if a Final Order is entered in favor of the Holders of Class 2A and Class 2B Claims in the Lien Adversary, or if a Final Order is entered against the Holders of Allowed Class 2D Claims in the Octane Adversary, then the Allowed Class 2D Claim shall be treated either as an Allowed Class 3 Claim or an Allowed Class 5 Claim and Holders of such Allowed Class 2D Claims shall receive their Pro Rata share of the distributions provided in the Plan to Holders of Allowed Class 3 Claims under Plan Alternative 3(A) or no distributions as provided in the Plan to Holders of Allowed Class 5 Subordinated Claims.

     **(ii)**     <u>***Plan Alternative 2D-(B)***</u>**:** Subject to Section 6.4 hereof, if a Final Order is entered against the Holders of Class 2A and Class 2B Claims in the Lien Adversary and a Final Order is entered in favor of the Holders of Allowed Class 2D Claims in the Octane Adversary that the Holders of Allowed Class 2D Claims

-26-

hold Secured Claims that are not Subordinated Claims, then the Allowed Class 2D Claim shall be treated as follows:

- The Purchaser shall pay the entire amount of the Allowed Class 2D Claim, plus interest accruing thereon, by paying Holders of Allowed Class 2D Claims their Pro Rata share of such amount as represents 1/40th of the amount of their Allowed Class 2D plus accrued interest thereon (the "**Class 2D Contingent Guaranteed Payment**") on or about the last Business Day of each of 40 successive full calendar quarters following the date such Class 2D Claims are Allowed.

- Following the Effective Date, interest shall accrue on the Allowed Class 2D Claim at the non-default contract rate.

- The Liens securing the Allowed Class 2D Claims shall remain in full force and effect following the Effective Date according to the same priorities as existed as of the Effective Date and according to the same terms and provisions of the existing loan documentation in respect of the enforcement of such Liens.

**4.6**    **Class 2E – Other Secured Claims.**

    **(a)**    **Impairment and Voting.** Class 2E is Impaired by the Plan. Holders of Allowed Class 2E Claims shall be entitled to vote to accept or reject the Plan.

    **(b)**    **Treatment and Distributions.** In satisfaction of any Allowed Secured Claim of any Holder of a Class 2E Claim, such Holder shall receive on the Effective Date either: (i) the return of its collateral in full satisfaction of its claim or (ii) such other treatment as may be agreed to in writing by such Holder and the Purchaser.

**4.7**    **Class 3 – General Unsecured Claims.**

    **(a)**    **Impairment and Voting.** Class 3 is Impaired by the Plan. Each Holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

    **(b)**    **Treatment and Distributions.** The treatment of the Holders of Class 3 Claims depends upon the outcome of the Lien Adversary and the Octane Adversary. Subject to Section 6.4 hereof, if a Final Order is entered in favor of the Holders of Class 2A and Class 2B Claims in the Lien Adversary, then the Holders of Allowed Class 3 Claims will be treated in accordance with the

provisions of Plan Alternative 3(A).  Conversely, subject to Section 6.4 hereof, if a Final Order is entered against the Holders of Class 2A and Class 2B Claims in the Lien Adversary, then the Holders of Allowed Class 3 Claims will be treated in accordance with the provisions of Plan Alternative 3(B).  The specified treatment of Holders of Allowed Class 3 Claims under Plan Alternative 3(A) and Plan Alternative 3(B) is as follows:

    **(i)**    *__Plan Alternative 3(A)__*:  Subject to Section 6.4 hereof, if a Final Order is entered in favor of the Holders of Class 2A and Class 2B Claims in the Lien Adversary, Holders of Class 3 Claims represented by the accrued and unpaid interest on account of the Senior Series 2009A Debentures and the Series 2009B Debentures shall share Pro Rata in all Cash and other assets held by the Liquidating Trustee (after payment of Allowed Administrative Claims, Professional Fees, Cure Costs, and other Allowed Claims payable in full in Cash on the Effective Date) that represent Cash Collateral as of the Effective Date, including without limitation, Cash Collateral represented by (i) the Operating Accounts Balances; (ii) the Arbitration Receivable; (iii) the Liquidating Trust Contribution; and (iv) Causes of Action (including proceeds of Avoidance Actions).  The remaining Cash and other assets held by the Liquidating Trustee that do not represent Cash Collateral as of the Effective Date shall be distributed Pro Rata among all Holders of Allowed Class 3 Claims.

    **(ii)**    *__Plan Alternative 3(B)__*:

- Holders of Class 3 Claims shall share Pro Rata in the following assets:  (i) the Operating Accounts Balances; (ii) the Arbitration Receivable; (iii) the Liquidating Trust Contribution; (iv) Causes of Action (including Avoidance Actions); and (v) $818,292.00 paid by Solsten Drilling to the Liquidating Trustee on or about the last Business Day of each of 40 successive calendar quarters (less any amounts required to be paid separately to Holders of Allowed Class 2D Claims if (A) a Final Order is entered against the Holders of Class 2A and Class 2B Claims in the Lien Adversary and (B) a Final Order is entered in favor of the Holders of Allowed Class 2D Claims in the Octane Adversary) (the "**Class 3 Alternative B Guaranteed Payment**"), with the first such payment commencing on the last day of the first full calendar quarter following the Effective Date

- Payment of the Class 3 Alternative B Guaranteed Payment shall be further guaranteed by Solsten Funding.

**4.8**    **Intercompany Claims (Class 4).**

    **(a)**    **Impairment and Voting.**  Class 4 is Impaired by the Plan. Because the Holders of any Intercompany Claims will not receive or retain any property under the Plan or on account of such Claims, Holders of Class 4 Claims are deemed not to have accepted the Plan in accordance with Section 1126(g) of the Bankruptcy Code and therefore are not entitled to vote to accept or reject the Plan.

    **(b)**    **Treatment and Distributions.**  Holders of Allowed Class 4 Intercompany Claims will not receive any Distributions under the Plan.

**4.9**    **Subordinated Claims (Class 5).**

    **(a)**    **Impairment and Voting.**  Class 5 is Impaired by the Plan. Because the Holders of any Subordinated Claims will not receive or retain any property under the Plan or on account of such Claims, Holders of Class 5 Claims are deemed not to have accepted the Plan in accordance with Section 1126(g) of the Bankruptcy Code and therefore are not entitled to vote to accept or reject the Plan.

    **(b)**    **Treatment and Distributions.**  Holders of Allowed Class 5 Subordinated Claims will not receive any Distributions under the Plan.

**4.10**  **Equity Interests (Class 6).**

    **(a)**    **Impairment and Voting.**  Class 6 is Impaired by the Plan. Because the Holders of any Equity Interests will not receive or retain any property under the Plan or on account of such Equity Interests, Holders of Class 6 Equity Interests are deemed not to have accepted the Plan in accordance with Section 1126(g) of the Bankruptcy Code and therefore are not entitled to vote to accept or reject the Plan.

    **(b)**    **Treatment and Distributions.**  Holders of Allowed Class 6 Equity Interests will not receive any Distributions under the Plan.

**ARTICLE V**
**MEANS OF IMPLEMENTATION**

    **5.1**    **The 363 Sale.**  In advance of the Confirmation Hearing and in accordance with the Bidding Procedures approved in the Disclosure Statement Order, the Bankruptcy Court shall have conducted a 363 Sale hearing to consider approval of a sale of the Purchased Assets to the

Purchaser pursuant to the Asset Purchase Agreement and the Bidding Procedures. The 363 Sale will be authorized by the Bankruptcy Court in the Transfer Order.

5.2     **Corporate Action.**  The entry of the Confirmation Order shall constitute an Order of the Bankruptcy Court authorizing (without the need for any further action by the Bankruptcy Court or any managers or members of the Debtors) the Liquidating Trustee and the Indenture Trustee to take all actions on behalf of the Debtors necessary or appropriate to complete, enter into, implement, and/or consummate the contracts, instruments, or other agreements or documents created in connection with the Plan or to be executed and delivered pursuant to the Plan before, on, or after the Effective Date, including, without limitation, actions required to consummate the obligations of the Debtors under the Asset Purchase Agreement.

5.3     **Preservation of Avoidance Actions and Causes of Action.**  As of the Effective Date, any Avoidance Actions pursuant to Sections 544, 547, 548 or 549 of the Bankruptcy Code and any Causes of Action of the Debtors, including without limitation those identified in the Plan Supplement and incorporated herein by reference, will be preserved for prosecution by, and transferred to, the Liquidating Trust.

5.4     **Sources of Payments.**  The various sources of payments by which the Plan and Plan Obligations will be funded are:  (i) the Operating Accounts Balances; (ii) the Arbitration Receivable; (iii) the Liquidating Trust Contribution; (iv) Causes of Action (including Avoidance Actions); (v) the Guaranteed Payments; (vi) the Solsten Funding Guaranty; (vii) the Solsten Post-Confirmation Loan Agreement; (viii) the Dutch Auction; (ix) the Excess Cash generated by Solsten Drilling; (x) the Solsten Funding Contribution; and (xi) the Solsten Drilling Contribution.  Funds received by the Liquidating Trust shall be deposited by the Liquidating Trustee into the Liquidating Trust Distribution Accounts.  The sources, collectively, support the feasibility of the Plan.

5.5     **Substantive Consolidation of the Debtors**.  The Plan shall serve as a motion by the Indenture Trustee seeking entry of an Order of the Bankruptcy Court substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with Confirmation and Consummation.  If substantive consolidation of all of the Estates is ordered, then on and after the Effective Date, all remaining assets and liabilities not assumed by the Purchaser pursuant to the Asset Purchase Agreement and Transfer Order shall be treated as though they were merged into the Estate of O&G for all purposes associated with Confirmation and Consummation, and all guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor shall be treated as one collective obligation of the Debtors.   Notwithstanding anything in the Plan or in the Confirmation Order to the contrary, the entry of the Confirmation Order ordering substantive consolidation of the Estates shall not have any effect upon the separate and distinct legal entities as they existed at the time of any prepetition transaction that is or may be the subject of any Cause of Action (including any Avoidance Action).

5.6     **Negative Covenant Regarding Distributions**.  The Asset Purchase Agreement shall provide that until all Guaranteed Payments have been paid or all Allowed Claims entitled to Guaranteed Payments have been purchased by Solsten Funding in the Dutch Auctions or

extinguished, neither Solsten Drilling nor Solsten Funding shall, without the prior written consent of Indenture Trustee, pay or declare any Cash or other Distributions on any Equity Interests other than Permitted Solsten Drilling Distributions, the Permitted Solsten Funding Distributions, payments under the Solsten Post-Confirmation Loan Agreement, and the 3% Preferred Buyback Rights.

**ARTICLE VI**
**THE LIQUIDATING TRUST**

**6.1**  **Formation of the Liquidating Trust.**  The Liquidating Trust shall be established on the Effective Date.  The Liquidating Trustee shall be governed in all respects by the terms of the Liquidating Trust Agreement and the Plan.  The Liquidating Trustee shall administer the Liquidating Trust, and its assets, and make distributions from the proceeds of the Liquidating Trust in accordance with the Plan.  The Liquidating Trust shall be further authorized, empowered and directed as the representative of the Debtors' Estates to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including all actions necessary to consummate the transactions contemplated by the Asset Purchase Agreement.  Except as otherwise set forth in this Plan, all distributions to Holders of Allowed Claims shall be from the Liquidating Trust (except for distributions to Holders of Allowed Class 2A Claims under Plan Alternative A, which shall in all instances be made by the Indenture Trustee, and distributions, if any, to Allowed Claims in Classes 2C and 2D (under Plan Alternative A) that shall be made directly by the Purchaser).  The Liquidating Trust shall be administered for the benefit of all Allowed Administrative Expense Claims (including Allowed Professional Fees), all Allowed Priority Unsecured Tax Claims, all Allowed Priority Unsecured Non-Tax Claims, and all Allowed Class 3 Claims (or Allowed Claims in other Classes that share Pro Rata in the distributions to Holders of Class 3 Claims under Plan Alternative B) (collectively, the "**Liquidating Trust Beneficiaries**") pursuant to the provisions of this Plan, the Liquidating Trust Agreement, and any Post-Confirmation Orders of the Bankruptcy Court necessary or appropriate to permit the Liquidating Trustee to implement or modify the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries.

**6.2**  **The Liquidating Trustee.**

**(a)**  **Appointment of the Liquidating Trustee and LTOC**.  The Liquidating Trustee and the LTOC shall be appointed by the Indenture Trustee and approved by the Bankruptcy Court in the Confirmation Order to serve as the "Liquidating Trustee" and the "Liquidating Trustee Oversight Committee," respectively, under this Plan.  As of the Effective Date, the appointment of the Liquidating Trustee and the LTOC shall be effective, and the Liquidating Trustee shall be vested with full legal power, capacity and authority, and shall be directed, upon consultation with and approval by the LTOC, to administer, collect and liquidate the Debtors' remaining Assets that were not sold pursuant to the Asset Purchase Agreement and to implement the Plan, including the 363 Sale, the Confirmation Order, and the Transfer Order.  The Liquidating Trustee and the members of the LTOC shall be designated in the Plan Supplement and approved by Bankruptcy Court.

**(b)      Powers of the Liquidating Trustee.**  The Liquidating Trustee shall be deemed to be a judicial substitute for the Debtors as the party-in-interest in the Bankruptcy Cases, under the Plan or in any judicial proceeding or appeal to which any Debtor is a party, and, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, is appointed as the representative of the Estate for the retention and enforcement of any Claim or interest which arose prior to the Confirmation Date.  On the Effective Date, the current officers, directors, and managers of the Debtors shall be deemed to have resigned and shall be fully discharged from their responsibilities and duties as officers, directors, and managers of the Debtors.  In general, and subject to the protective provisions in the Plan, the Liquidating Trustee shall act for the Debtors and the Estate in a fiduciary capacity as applicable to a managing member of a limited liability corporation.

**(c)      Authorization.**  The Liquidating Trustee shall be empowered and authorized, after consultation with and approval by the LTOC, to, among other things:

(1)      collect and liquidate the Debtors' remaining assets;

(2)      make the distributions required under the Plan;

(3)      retain and/or employ professionals;

(4)      exercise all powers and authority that may be exercised by any officer, director, manager, or Equity Interest Holder in the Debtors with like effect as if authorized, exercised and taken by unanimous consent of such officers, directors, managers, or Equity Interest Holders (including, without limitation, dissolving the Debtors);

(5)      pursue objections to, and estimations and settlements of Claims;

(6)      prosecute any Cause of Action of the Debtors' Estates, including Avoidance Actions;

(7)      calculate and implement all distributions to be made under this Plan to Creditors holding Allowed Claims;

(8)      market, sell, lease or otherwise dispose of or realize the value of all Assets;

(9)      file all required tax returns and pay taxes and all other obligations on behalf of the Debtor;

(10)      file required operating reports;

(11)  pay all Liquidating Trust Claims as the Liquidating Trustee deems appropriate in its sole discretion and without the necessity of Bankruptcy Court approval; and

(12)  take all other actions required under the Plan to complete the liquidation, dissolution and wind-up of the Debtors in accordance with applicable non-bankruptcy law and the Plan.

**(d)      Appointment as Disbursing Agent.**  The Liquidating Trustee shall serve as the Disbursing Agent under the Plan.  The Liquidating Trustee is also authorized and directed, after consultation with and approval by the LTOC, to review, object to, prosecute, negotiate, settle or otherwise compromise any Claims, pending causes of action, or other Avoidance Actions, in each case in accordance with Bankruptcy Rule 9019.  The powers granted to the Liquidating Trustee shall be exercisable without further approval of the Court.

**(e)      Liquidation of Assets.**  The Liquidating Trustee, after consultation with and approval by the LTOC and in a commercially reasonable manner, shall pursue recovery and liquidation of Assets retained by the Debtors under the Plan that are not sold pursuant to the Asset Purchase Agreement.

**(f)      Compensation of the Liquidating Trustee and Professionals.**  The Liquidating Trustee shall be compensated for the services rendered in accordance with a rate schedule submitted to and approved by the Bankruptcy Court in the Confirmation Order.  Similarly, any professionals retained by the Liquidating Trustee Post-Confirmation shall be compensated for the services rendered in accordance with a fee schedule approved in advance by the Liquidating Trustee, after consultation with and approval by the LTOC, without the necessity of Bankruptcy Court approval.

**(g)      Maintenance of Reserves.**  The Liquidating Trustee shall maintain, after consultation with and approval by the LTOC, appropriate reserves in its discretion to fund confirmation Allowed Administrative Expense Claims, Allowed Professional Fees, Allowed Indenture Trustee Claims, and Post-Confirmation administrative and operating expenses.

**(h)      Execution of Documents.**  The Liquidating Trustee, after consultation with and approval by the LTOC, may execute any and all documents and instruments necessary to effectuate the provisions of the Plan.

**(i)      Replacement of Liquidating Trustee.**  The Liquidating Trustee may be replaced (A) by the affirmative vote of greater than 80% of the dollar amount of Allowed Claims entitled to distributions under the Plan, (B) the unanimous vote of the LTOC and the written consent of the Indenture Trustee, or (C) upon application to the Bankruptcy Court by any interested party with the

requisite standing, for "cause" under the standards of Bankruptcy Code section
1104(a)(1).

**6.3     Distributions on Account of Allowed Claims.**  Distributions with respect to
Allowed Claims shall be as soon as reasonably possible, given the responsibilities of liquidating
the assets of the Debtors' Estates, pursing Avoidance Actions and Causes of Action where
appropriate, examining claims, and the time and expense of making partial or interim
distributions.  All Allowed Claims in a particular class held by a creditor shall be aggregated and
treated as a single Claim.  Any creditor holding multiple Allowed Claims shall provide to the
Liquidating Trustee a single address to which any distribution shall be sent.  In the event that any
payment or act under the Plan is required to be made or performed on a date that is not a
Business Day, then the making of such payment or the performance of such act may be
completed on the next succeeding Business Day, but shall be deemed to have been completed as
of the required date.

**6.4     Disposition of Certain Guaranteed Payments Received from Purchaser in
Advance of Entry of a Final Order in the Lien Adversary**.  In advance of entry of a Final
Order in the Lien Adversary, the Purchaser shall timely tender all Guaranteed Payments to the
Liquidating Trustee and, except as provided hereinafter, the Liquidating Trustee shall deposit
$818,292 in an interest-bearing escrow account acceptable to the Indenture Trustee; *provided,*
*however,* that notwithstanding anything in the Plan or any other document related to the Plan to
the contrary (including the Disclosure Statement, the Plan Supplement, the Liquidating Trust
Agreement, and all Exhibits or schedules attached thereto), the Liquidating Trustee, after
consultation with and obtaining the written authorization of the LTOC and the Indenture Trustee,
shall be authorized if an Order is entered in favor of the Indenture Trustee in the Lien Adversary
to make Distributions under Plan Alternative A to Holders of Allowed Claims in Class 2A, Class
2D, and Class 3 under Plan Alternative 3(A) or Plan Alternative 3(B) even if that Order shall not
have become a Final Order.

**6.5     Claims Objections.**  The Indenture Trustee has not reviewed the filed Proofs of
Claim or attempted to reconcile those Claims with the Debtors' books and records.  The
Liquidating Trustee shall examine such Claims and, after consultation with and approval by the
LTOC, will file any objections with the Bankruptcy Court to filed Proofs of Claim no later than
180 days after the Effective Date.  Unless otherwise provided in the Plan or the Confirmation
Order, the Liquidating Trustee and the Indenture Trustee shall have the sole right to object to and
contest the allowance of any Proofs of Claim filed in the Bankruptcy Cases.  The Bankruptcy
Court shall determine the amount of any Disputed Claim, unless the Liquidating Trustee or the
Indenture Trustee stipulates as to its amount, or compromise, settle or dismiss the objection to
the Disputed Claim prior to the determination of the Bankruptcy Court.  No distributions shall be
made under the Plan on account of any Disputed Claim unless and until such Disputed Claim is
liquidated and becomes an Allowed Claim.

**6.6     Disallowed Claims.**  In the event the Liquidating Trustee or the Indenture Trustee
has commenced a Cause of Action under Chapter 5 of the Bankruptcy Code against the Holder
of a Claim, then such Claim shall be deemed Disallowed pursuant to Section 502(d) of the
Bankruptcy Code.  Consequently, the Holders of such Claims may not vote to accept or reject the

Plan until the Cause of Action against such Claimant has been settled or adjudicated by the Bankruptcy Court and any amounts due the Debtors have been received.

**6.7    Estimated Claims.**  To the extent that any Claim is estimated for any purposes other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

**6.8    No Interest.**  Except as expressly stated in the Plan or otherwise allowed by Final Order of the Bankruptcy Court, no Holder of an Allowed Claim will be entitled to the accrual of Post-Petition Date interest or the payment of Post-Petition Date interest penalties, or late charges on account of such claim for any purpose.

**6.9    Modification of Payment Terms.**  With the consent of the Holder of any such Allowed Claim, to the extent provided in Section 1123(a)(4), the Liquidating Trustee may modify the treatment of any Allowed Claim at any time after the Effective Date.

**6.10    Security Deposits.**  To the extent the Debtors have posted security deposits (with landlords, utilities or otherwise) which are less than the indebtedness secured thereby, those amounts may be set off against Allowed Secured Claims upon the written consent of the Liquidating Trustee or upon entry of a Final Order authorizing such offset as Class 2E Claims. To the extent the Debtors have posted security deposits (with landlords, utilities or otherwise) which are greater than the indebtedness secured thereby, all amounts in excess of the indebtedness shall be remitted to the Liquidating Trustee promptly after the Effective Date and shall not be offset against any Claim.

**6.11    Delivery of Distributions.**  Except as otherwise provided herein, all distributions under the Plan shall be made by the Liquidating Trustee, after consultation with and approval by the LTOC.  Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim or Allowed Administrative Expense Claim shall be made at the address of such Holder as set forth on the Bankruptcy Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents, as applicable, unless the Liquidating Trustee has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such Holder that contains an address for such Holder different than the address of such Holder as set forth on the Bankruptcy Schedules.  In the event that any distribution to any Holder is returned as undeliverable, the Liquidating Trustee shall use commercially reasonable efforts to determine the current address of such Holder, but no distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of one year following final distributions of Guaranteed Payments provided for under the Plan.  After such date, all unclaimed property or interest in property shall be distributed by the Liquidating Trustee to Solsten Drilling, and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred.

**6.12    Nominal Distributions.**  With respect to any distribution prior to the final distribution, if the holder of an Allowed Claim would receive less than $100, the Liquidating Trustee may elect not to distribute such lesser amount to such Holder, but may instead defer the

distribution thereof until the cumulative amount to be distributed to such Holder is $100 or more. No interest on any deferred amount shall be paid to such Holder.

**6.13    Manner of Payment.**    At the option of the Liquidating Trustee, any Cash payment to be made hereunder may be made by a check or, at the option of the Liquidating Trustee, by wire transfer.

**6.14    Unclaimed Distributions.**    If any distribution is returned to the Liquidating Trustee as undeliverable, no further distributions shall be made to the Holder of the Allowed Claim on which such distribution was made unless and until the Liquidating Agent is notified in writing of such Holder's then-current address, and the Liquidating Trustee shall be under no obligation to attempt to find such Holder's address other than through a review of the docket and Filings in the Bankruptcy Cases. Undeliverable distributions shall remain in the possession of the Liquidating Agent until such time as a distribution becomes deliverable or is deemed canceled (as hereinafter provided). Any unclaimed distribution held by the Liquidating Trustee shall be accounted for separately, but the Liquidating Trustee shall be under no duty to invest any such unclaimed distribution in any manner. Any holder of an Allowed Claim that does not present a claim for an undeliverable distribution within one year after the date upon which a distribution is first made available to such holder shall have its right to such distribution discharged and shall be forever barred from asserting any such Claim against any Person or property, including the Liquidating Trustee or Indenture Trustee. All unclaimed or undistributed distributions shall, pursuant to Bankruptcy Code section 347, be donated to *Mississippi Bankruptcy Conference, Inc.*, a 501(c)(3) charitable organization.

**6.15    Applicability of Bankruptcy Code Sections 1125 and 1145 to Certain New Securities to Be Issued Under the Plan**.    The protection afforded by Bankruptcy Code section 1125 with regard to the solicitation of acceptances or rejections of the Plan and with regard to the offer, issuance, sale, or purchase of the 3% Preferred Interests to be issued and distributed to Holders of Class 2B Claims shall apply to the Purchaser and its directors, members, managers, employees, attorneys, and agents. The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Purchaser and its officers, directors, partners, employees, members, managers, attorneys, and agents shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to Section 1125(e) and the federal securities laws. Entry of the Confirmation Order also shall constitute an Order of the Bankruptcy Court that the exemption from the requirements of Section 5 of the Securities Act and any state or local law requiring registration for the offer or sale of a security provided for in Bankruptcy Code section 1145 shall apply to the 3% Preferred Interests to be issued under the Plan.

# ARTICLE VII
## PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN

**7.1    Objections to Claims.**    Except as to Claims that are Allowed under the Plan, the Liquidating Trustee and the Indenture Trustee shall have the exclusive authority to File objections to any Claim and to withdraw any objections to such Claims that they File. The Liquidating Trustee, after consultation with and approval by the LTOC, shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Claims (i) if the

Liquidating Trustee has the prior written consent of the Indenture Trustee, (ii) if the Liquidating Trustee has given detailed written notice of the proposed settlement, compromise, or litigation to the Indenture Trustee, who has not objected thereto within five (5) Business Days after receipt of such notice, or (iii) upon the Final Order of the Bankruptcy Court after the Indenture Trustee has had notice and opportunity to object. All objections to Claims shall be Filed within 180 days after the Effective Date.

**7.2** **No Distributions Pending Allowance.** Notwithstanding any other provision of the Plan, if any portion of a Claim is Disputed, at the Liquidating Trustee's option, no payment or distribution provided in the Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim is resolved and becomes an Allowed Claim.

**7.3** **Estimation of Claims.** The Liquidating Trustee, after consultation with and approval by the LTOC, or the Indenture Trustee may request at any time that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1** **Assumption or Rejection of Executory Contracts.** The Bankruptcy Code empowers the Debtors to assume or reject their Executory Contracts and Unexpired Leases. All Executory Contracts and Unexpired Leases that existed between the Debtors and any person or entity will be deemed to be rejected by the Liquidating Trustee as of the Filing Date, except for any Executory Contract or Unexpired Lease that has been assumed by the Debtors and assigned to the Purchaser pursuant to the Asset Purchase Agreement and Transfer Order. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejections, pursuant to Bankruptcy Code section 365, as of the Petition Date.

**8.2** **Assumption and Assignment to Purchaser.** The Bidding Procedures and Asset Purchase Agreement contemplate that certain Executory Contracts and Unexpired Leases will be assumed and assigned to the Purchaser. In accordance with the Bidding Procedures, the Indenture Trustee will File a list of such Executory Contracts and Unexpired Leases along with the proposed Cure Costs. Any party taking exception to the proposed Cure Costs shall, in accordance with the Bidding Procedures, File a detailed statement setting forth its reason and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Confirmation

-37-

Hearing.  The fixing of the Cure Costs shall constitute the Debtor's right to assign the Executory Contract or Unexpired Lease to the Purchaser under Bankruptcy Code sections 365(c) and (f). Failure to assert any Cure Costs different in amount from the applicable amount set forth on the List identifying the Cure Costs filed by the Indenture Trustee shall constitute consent to the assumption, assignment, and Cure Costs on the terms provided for in the Plan and the Asset Purchase Agreement, including acknowledgment that (i) the proposed assumption provides adequate assurance of future performance, (ii) the amount identified for Cure Costs is the amount necessary to compensate for any and all outstanding defaults under the respective Executory Contract or Unexpired Lease to be assumed, (iii) no other defaults exist under such Executory Contract or Unexpired Lease, and (iv) to the extent the list so Filed by the Indenture Trustee calls for assumption and assignment to the Purchaser of an Executory Contract or Unexpired Lease as modified, the party or parties thereto have no objection and irrevocably consent to the assumption and assignment that said Executory Contract or Unexpired Lease as so modified.

**8.3    Payment of Cure Costs Related to Assumption of Executory Contracts and Unexpired Leases.**  All Cure Costs under each Executory Contract and Unexpired Lease to be assumed and assigned under the Plan and Asset Purchase Agreement shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the Cure Costs in Cash within 30 days following the Effective Date.  Cure Costs shall be paid first from the Operating Accounts Balances and second, up to $500,000, from the Solsten Drilling Contribution.  In the event of a dispute regarding (i) the amount of any Cure Cost, (ii) the ability of the Purchaser to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease to be assumed and assigned, or (iii) any other matter pertaining to assumption and assignment, the Cure Costs required by Bankruptcy Code section 365(b)(1) shall be made following entry of a Final Order of the Bankruptcy Court resolving the dispute and approving assumption and assignment to the Purchaser.

**8.4    Assumed Executory Contracts and Unexpired Leases.**  Each Executory Contract and Unexpired Lease that is to be assumed and assigned to the Purchaser under the Asset Purchase Agreement and Transfer Order will include all amendments, modifications, supplements, restatement, or other agreement made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease.  Notwithstanding anything herein to the contrary, any time within sixty (60) days after the Closing Date, Purchaser may designate any Contract that would otherwise be an assigned contract as a contract to be excluded from the assets purchased by the Purchaser.  Any such designation by Purchaser shall eliminate any obligation of Purchaser in connection with any liabilities related to such contract.

**8.5    Claim Based on Rejection of Executory Contracts and Unexpired Leases.**  Proofs of Claim for damages arising out of the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served upon the attorneys for the Liquidating Trustee on or before thirty (30) days after the later of the Effective Date or the effective date of rejection.  Any proofs of Claim arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Liquidating Trust without the need for any objection by any Person or further notice to, or action, order, or approval of, the Bankruptcy Court.  All Allowed Claims arising from the rejection of the Debtors' Executory

-38-

Contracts or Unexpired Leases shall be classified and treated as Class 3 General Unsecured Claims under the Plan; *provided, however,* that if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected Executory Contract or Unexpired Lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim under Class 2E to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

      **8.6**   **Reservation of Rights**.   Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was an Executory Contract or Unexpired Lease at the time or assumption and assignment to the Purchaser or rejection, the Indenture Trustee or the Liquidating Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

**ARTICLE IX**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

      **9.1**   **Condition Precedent to Effectiveness.**   The Effective Date will not occur and the Plan will not become effective unless and until the Confirmation Order and the Transfer Order shall have been entered and shall have become Final Orders.

      **9.2**   **Waiver of Condition Precedent.**   The condition precedent of the Plan may be waived, in whole or in part, by both the Indenture Trustee and the Purchaser, in their sole discretion. Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action.

      **9.3**   **Satisfaction of Condition Precedent.**   Any actions required to be taken on the Effective Date will take place and will be deemed to have occurred simultaneously, and no such action will be deemed to have occurred prior to the taking of any other such action. In the event that the condition precedent specified has not occurred or otherwise been waived, (i) the Confirmation Order and the Transfer Order will be vacated, (ii) the Debtors and all Holders of Claims and interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) the Debtors' obligations with respect to Claims and Equity Interests will remain unchanged and nothing contained in the Plan will constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

**ARTICLE X**
**EFFECT OF CONFIRMATION**

      **10.1**   **Vesting of Assets.**   On the Effective Date, the Debtors, their Assets, properties and interests in property, and their operations will be released from the custody and jurisdiction of the Bankruptcy Court and, to the extent not sold pursuant to the 363 Sale or otherwise

disposed of pursuant to the Plan or during the Bankruptcy Cases, will vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges and other interests.

**10.2    Binding Effect.**  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan will bind any Holder of a Claim against, or Equity Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or interests including any Equity Interest of such Holder is Impaired under the Plan and whether or not such Holder is entitled to Distributions under the Plan.

**10.3    Discharge of Claims.**  As provided by Section 1141(d)(3)(A) of the Bankruptcy Code, the Debtors are not discharged from any existing debts and Claims asserted against the Debtors that arose at any time prior to the Effective Date.

**10.4    Exculpation.**  Notwithstanding anything in the Plan to the contrary, as of the Effective Date, neither the Purchaser, the Liquidating Trustee, the Indenture Trustee and their respective accountants, advisors, agents, representatives, employees, and attorneys (but, in each case, solely in their capacities as such) will have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Bankruptcy Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Bankruptcy Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing will not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.  The Plan does not provide for broad third-party releases, but rather, limited exculpation for acts during these Bankruptcy Cases.  The exculpation neither affects liability for prepetition actions nor absolves any parties from liability for gross negligence or willful misconduct.  The Indenture Trustee believes the exculpation provision contained in the Plan is appropriate and reasonable.

**10.5    Injunction or Stay.**  Except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against the Debtors or Debtors in Possession will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against the Liquidating Trustee, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Liquidating Trustee with respect to such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Liquidating Trustee or against the property or interests in property of any Liquidating Trustee with respect to such Claim, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to any Liquidating Trustee or against the property or interests in property of any Liquidating Trustee with respect to such Claim, and (v) pursuing any Claim released pursuant to the Plan.

**10.6    Exemption from Certain Transfer Taxes.**  Pursuant to Section 1146(a) of the Bankruptcy Code, the transfer of the Purchased Assets to the Purchaser and the remaining Assets to the Liquidating Trustee on the Property Closing Date and any transfers from the Debtors to the Reorganized Debtors shall not be subject to any document recording tax, stamp tax, conveyance

fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Transfer Order and the Confirmation Order shall contain a provision directing the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE XI
## JURISDICTION OF BANKRUPTCY COURT

**11.1** **Jurisdiction of Bankruptcy Court**. Subsequent to the Confirmation Date(including after the Bankruptcy Cases have been closed), the Court shall retain jurisdiction to the maximum extent permitted by applicable law of all matters arising out of or related to the Bankruptcy Cases and the Plan, including, without limitation, the following purposes:

**(a)** To determine any and all objections to and proceedings involving the allowance, estimation, classification, priority, payment, avoidance, or subordination of Claims or Interests;

**(b)** To determine any and all applications or motion for Administrative Expense Claims (including Professional Fees);

**(c)** To determine any and all application or motions pending on the Effective Date for the rejection or assumption of Executory Contracts or Unexpired Leases or for the assumption and assignment, as the case maybe, of Executory Contracts or Unexpired Leases to be transferred to the Purchaser under the Asset Purchase Agreement, and to hear and determine, and if need be, liquidate, any and all Claims arising therefrom including the determination of defaults required to be cured;

**(d)** To hear and determine any timely objections to, or requests for estimation or allowance of, Disputed Claims, in whole or in part;

**(e)** To determine any and all applications, adversary proceedings and contested or litigated matters initiated or asserted by the Debtors on or prior to the Effective Date and initiated or asserted by the Liquidating Trustee or Indenture Trustee subsequent to the Effective Date and arising under Chapter 11 of the Bankruptcy Code or arising in or related to the Bankruptcy Cases, including but not limited to, (i) all Causes of Action arising on or before the Effective Date and (ii) all Claims, Causes of Action and other matters that may impact or affect Post-Confirmation matters and property to be administered by the Liquidating Trust;

**(f)** To issue Orders, determinations and rulings regarding the valuation, recovery, disposition, distribution, operation or use of the Debtors' property or of the Liquidating Trust, including related to any Causes of Action;

**(g)** To consider any modifications to the Plan, remedy any defect or omission or reconcile any inconsistency in any Order of the Bankruptcy Court, including the Confirmation Order;