(h)     To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, implementation or consummation of the Plan or the Asset Purchase Agreement, or any Person's obligations and responsibilities thereunder;

(i)     To consider and act on the compromise and settlement of any Claim against or Cause of Action by or against the Debtors or the Liquidating Trustee;

(j)     To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(k)     To hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions and exculpations granted under the Plan, the Asset Purchase Agreement, the Transfer Order, the Confirmation Order, or by operation of the Bankruptcy Code;

(l)     To enforce the automatic stay and to issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order or any other Order of the Bankruptcy Court;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order or the Transfer Order;

(n)     To issue such Orders in aid of execution of the Plan to the extent authorized by 11 U.S.C. § 1142;

(o)     To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(p)     To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, the Asset Purchase Agreement, the Transfer Order, any transactions or payments contemplated hereunder, any agreement, instrument, or other document governing or relating to any of the foregoing, or any settlement approved by the Bankruptcy Court;

(q)     To recover all assets of the Debtors and Property of the Estates, wherever located;

(r)     To determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, 546 and 1146 of the Bankruptcy Code;

(s)     To hear any other matter not inconsistent with the Bankruptcy Code; and

(t)     To enter a final decree closing the Bankruptcy Cases.

# ARTICLE XII
## MISCELLANEOUS PROVISIONS

**12.1    Headings; Descriptions**.    The foregoing descriptions are for informational purposes only and are not an admission by, nor shall they prejudice the rights of, the Debtors, the Indenture Trustee, and/or the Liquidating Trustee in any respect.  Moreover, the descriptions contained herein and in any Schedule or Exhibit provided in connection with the Plan are not exclusive.  The inclusion or exclusion of any actions herein or on any such Schedule or Exhibit is in no way a waiver of any Claim or cause of action whatsoever and all such Claims or causes of action are reserved and preserved.

**12.2    Interpretations of Orders**.    To the extent the Confirmation Order, the Transfer Order, or the Plan are inconsistent with the Disclosure Statement, or any other agreement entered into between or among the Debtors and any third party, the Plan controls over the Disclosure Statement, the Confirmation Order controls over the Plan, and the Transfer Order controls over the Confirmation Order.

**12.3    Tax Reporting Requirements.**    Each Holder of an Allowed Claim that is to receive a distribution under the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

**12.4    Modification of the Plan.**    Amendments or modifications of or to the Plan may be proposed in writing by the Indenture Trustee at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code and the Disclosure Statement complies with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time by the Indenture Trustee after the Confirmation Date and before substantial consummation, provided: (i) the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code; (ii) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code; and (iii) the circumstances warrant such alterations, amendments or modifications.  A Holder of a Claim that has accepted the Plan will be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.  Prior to the Effective Date, the Indenture Trustee may make appropriate technical adjustments and modifications to the Plan without further Order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims.

**12.5    Revocation or Withdrawal of the Plan.**    The Indenture Trustee reserves the right to revoke or withdraw the Plan, in whole or in part, prior to the Confirmation Date.  If the Indenture Trustee revokes or withdraws the Plan in whole prior to the Confirmation Date, then the Plan will be deemed null and void.  In such event, nothing in the Plan will constitute or be deemed a waiver or release of any Claim or Equity Interest by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

**12.6     Expedited Tax Determination.**  The Liquidating Trustee is authorized under the Plan to request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Commencement Date through and including the Effective Date.

**12.7     Substantial Consummation.**  Upon completion of initial payments to the Creditors pursuant to the Plan, the Plan will be deemed substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.  Following substantial consummation, as determined by the Liquidating Trustee in its sole discretion upon motion to the Bankruptcy Court, an appropriate Order will be entered closing the Case.

**12.8     Final Report.**  Following confirmation, a final report will be filed in accordance with Bankruptcy Rule 2015.

**12.9     Severability of Plan Provisions.**  In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as the Plan may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

**12.10     Cancellation of Equity Interests/Dissolution of the Debtors.**  On the Effective Date, all existing Equity Interests shall, without further act or action by any party, be cancelled, annulled and extinguished, and any certificates representing such cancelled, annulled and extinguished Equity Interests shall be null and void.  After the Effective Date at such time as the Liquidating Trustee determines appropriate, the Liquidating Trustee is authorized (i) to execute and file, or cause to be executed and filed, such articles or certificates of dissolution, and such other documents as are necessary to effect, complete or evidence its dissolution under the applicable laws of any state and (ii) to file any required, final federal, state and local tax returns, and to take such other action as shall be necessary or appropriate to effect a final determination of any amounts of federal, state or local taxes owed by the Debtors.

**12.11     Removal of Officers, Directors, and Managers.**  On the Effective Date, any then-currently serving directors, officers, managers or other members of any governing body of the Debtors will be removed from any office, directorship, or any other position held by any such person with the Debtors and will be relieved of any further duties or obligations with respect to the Debtors.

**12.12     Authority of Liquidating Trustee to Wind Up Affairs of the Debtors.**  The Liquidating Trustee will be authorized to execute, deliver, file and record such contracts, instruments, assignments, conveyances, bills of sale, releases, indentures, certificates and any other agreement or document and take such action reasonably necessary or appropriate to

effectuate and further evidence the terms and conditions of the Plan, without the need for further action by the board of directors or other managing body of the Debtors or the Bankruptcy Court.

**12.13  Notices.**  All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> If to the Liquidating Trustee, addressed to:

> [Insert Name / Address of Liquidating Trustee]


> With a copy to:

> [Insert Name of Counsel to Liquidating Trustee]

**12.14  Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit or Schedule to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Mississippi without giving effect to its principles of conflict of laws.

**12.15  Exhibits/Schedules.**  All Exhibits and Schedules to the Plan are incorporated into and made a part of the Plan as if set forth in full herein.

Dated:  July 22, 2011                    **Respectfully submitted,**

**FIRST SECURITY BANK, AS INDENTURE TRUSTEE**

**By: _____/s/ Frank Faust_____**
**Its:    Authorized Representative**

**OF COUNSEL:**
**PAUL H. STEPHENSON, III (MSB# 7864)**
**JIM F. SPENCER, JR. (MSB# 7736)**
**C. JOYCE HALL (MSB# 2123)**
**WATKINS & EAGER** PLLC
**Post Office Box 650**
**Jackson, Mississippi 39205**
**The Emporium Building**
**400 East Capitol Street**
**Jackson, Mississippi 39201**
**Telephone: (601) 965-1900**
**Facsimile: (601) 965-1901**

*pstephenson@watkinseager.com*
*jspencer@watkinseager.com*
*jhall@watkinseager.com*

**STEPHEN W. ROSENBLATT (MSB# 5676)**
**CHRISTOPHER R. MADDUX (MSB#100501)**
**BUTLER, SNOW, O'MARA, STEVENS & CANNADA PLLC**
**Post Office Box 6010**
**Ridgeland, Mississippi 39158**
**Suite 1400**
**1020 Highland Colony Parkway**
**Ridgeland, Mississippi 39157**
**Telephone: (601) 985-4502**
**Facsimile: (601) 985-4500**
*steve.rosenblatt@butlersnow.com*
*chris.maddux@butlersnow.com*

**STEVE JAKUBOWSKI (ADMITTED *PRO HAC VICE)***
**THE COLEMAN LAW FIRM**
**77 West Wacker Drive, Suite 4800**
**Chicago, Illinois 60601**
**Telephone: (312) 606-8641**
**Facsimile: (312) 444-1028**
*sjakubowski@colemanlawfirm.com*

**EXHIBIT 1.2**
**FORM OF DESIGNATION OF 3%**
**PREFERRED INTERESTS IN SOLSTEN DRILLING**


**[Forthcoming]**

**EXHIBIT 1.87**
**LIQUIDATING TRUST AGREEMENT**

**[Forthcoming]**

**EXHIBIT 1.97**
**FORM OF NEW INDENTURE FOR SERIES 2011A DEBENTURES**

**[Forthcoming]**

**EXHIBIT 1.98**
**FORM OF NEW WSB NOTE**

**[Forthcoming]**

**EXHIBIT 1.9**
**ASSET PURCHASE AGREEMENT**

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") dated as of July 22, 2011 (the "Execution Date"), is by and among **SOLSTENXP VENTURE FUNDING, LLC ("SOLSTEN FUNDING")** and **SOLSTENXP DRILLING, LLC ("SOLSTEN DRILLING")** and **FIRST SECURITY BANK, AS TRUSTEE FOR THE HOLDERS OF THE SENIOR SERIES 2009A DEBENTURES AND THE SERIES 2009B DEBENTURES (THE "TRUSTEE" OR "INDENTURE TRUSTEE")** relating to the purchase by Solsten Drilling of certain assets, as provided herein, of **O&G LEASING, LLC ("O&G")** and **PERFORMANCE DRILLING COMPANY, LLC ("PDC")** pursuant to the Plan of Reorganization filed by the Indenture Trustee in the jointly administered Bankruptcy Cases of O&G and PDC. O&G and PDC may be referred to in this Agreement collectively as the "Sellers" and individually as a "Seller." Solsten Drilling may be referred to in this Agreement as the "Purchaser." Solsten Funding, the owner of member interests in Solsten Drilling, may be referred to in this Agreement as the "Guarantor." Sellers, the Trustee, Purchaser, and Guarantor may be referred to in this Agreement collectively as the "Parties" and individually as a "Party."

## RECITALS

WHEREAS, Sellers have been engaged since 2006 in the business of constructing gas and oil rigs (the "Rigs") and leasing them out for purposes of drilling oil and gas wells and as a full service oil and gas drilling operation that is capable of providing the drilling in a "day rate," "footage" or "turnkey" format (the "Business").

WHEREAS, Sellers have filed voluntary petitions (the "Petitions") for relief commencing bankruptcy cases (the "Bankruptcy Cases") under Chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Mississippi (the "Bankruptcy Court");

WHEREAS, Sellers issued certain Series 2009 Debentures (the "Series 2009 Debentures") under an Amended and Restated Indenture of Trust (the "Indenture") dated as of September 15, 2009, between the Sellers and the Trustee;

WHEREAS, the Trustee desires to file with the Bankruptcy Court a plan of reorganization that it believes is in the best interests of Sellers, is fair and equitable to the Sellers' creditors, will enhance the operations of the Sellers to enable payment of the Sellers' liabilities according to their priorities, and accomplishes the sale of the Sellers' assets, subject to higher and better offers, on the terms provided herein and in the proposed plan of reorganization that incorporates these terms (the "Plan of Reorganization" or "Plan");

WHEREAS, subject to Bankruptcy Court approval and on the terms and subject to the conditions set forth in this Agreement, the Trustee desires to propose such a Plan of Reorganization that accomplishes a sale to Purchaser, and Purchaser desires to acquire from Sellers in such a sale, all or substantially all of the property, assets, rights, and privileges of Sellers that are related to, used in, or otherwise associated with the operation of the Business;

1

NOW, THEREFORE, in consideration of the premises and mutual agreements, benefits, representations, warranties, and covenants of the Parties contained herein, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound subject to the terms and conditions hereof and approval of the Bankruptcy Court, the Parties each agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

Unless otherwise expressly provided to the contrary in this Agreement (a) capitalized terms used herein shall have the meanings set forth in Schedule 1.1, unless the context otherwise requires and (b) this Agreement shall be interpreted in accordance with the provisions set forth in Schedule 1.2.

## ARTICLE II
## PURCHASE AND SALE

2.1    Purchase and Sale of Purchased Assets.    Upon the terms and subject to the conditions set forth in this Agreement and the Transfer Order, at the Closing, Sellers shall quitclaim, sell, convey, assign, transfer, and deliver to Purchaser, and Purchaser shall purchase, acquire, and accept from Sellers, free and clear of any interest in such property as provided by 11 U.S.C. §363(f), all of Sellers' right, title, and interest in and to all of the property, assets, rights, and privileges of Sellers related to, used in, held for use in, or otherwise associated with the operation of the Business, whether real, personal, or mixed, tangible or intangible, of every kind and description and wherever located, whether identified in the schedules hereto, whether accrued, contingent or otherwise, other than the Excluded Assets (collectively, the "Purchased Assets"), including the following:

(a)    Rigs. All drilling rigs, including the rigs listed on Schedule 2.1(a), each of which is located in the United States of America (the "Transferred Rigs");

(b)    Contracts.    All of the interests, rights, deposits, Claims, and benefits arising or accruing to any of Sellers under any Contracts (including any Lease) to which a Seller is a party or has or may acquire a benefit and that relate to the Purchased Assets or Business, including the Contracts listed in Schedule 2.1(b), but subject to the rights of Purchaser not to assume specified Contracts as contemplated by Section 2.3 (after taking into account all of the foregoing, the "Assigned Contracts");

(c)    Equipment.    All furniture, equipment, computers, computer equipment, machinery, tools, hand tools, spare parts, test equipment, supplies, inventory, office supplies, telephones, and all other tangible personal property of every kind and description insofar as any of the foregoing relates to the operation of the Purchased Assets or Business (the "Equipment"), including the Equipment listed in Schedule 2.1(c).

2

(d)    <u>Rolling Stock</u>.  All automobiles, vans, trucks, trailers, and other motorized and similar vehicles and stock of every kind, whether owned or leased, used in the operation of the Purchased Assets or Business, including as listed in Schedule 2.1(d);

(e)    <u>Additional Tangible Assets</u>. All other Tangible Personal Property of every kind used in the operation of the Purchased Assets or Business, together with any rights appurtenant thereto, including any express or implied warranty by the manufacturer, vendor, or lessor of any such Tangible Personal Property;

(f)    <u>Accounts and Notes Receivable</u>.  All trade accounts receivable, notes receivable, and other rights of Sellers to payment from customers and other third parties and other amounts due from customers and other third parties or that become due, including all assets constituting working capital, that relate to or arise from the operation of the Purchased Assets or Business, except to the extent identified in Section 2.2;

(g)    <u>Insurance Benefits</u>. All insurance benefits arising from or related to the Purchased Assets and the Business;

(h)    <u>Prepaid Deposits and Expenses</u>.  Any deposits and prepaid expenses (paid to or by Sellers), Claims for refunds, and rights of setoff related to the Purchased Assets or Business;

(i)    <u>Claims and Warranties</u>.    Any and all Claims, warranties, reimbursements, and indemnities against third parties relating or attributable to the Business or the Purchased Assets, whether choate or inchoate, known or unknown, contingent or non-contingent;

(j)    <u>Permits</u>.  Any and all Permits, including pending applications or filings therefor and renewals thereof, of every kind under which any of Sellers has or may acquire any benefits or rights, or by which any of Sellers or any of the Purchased Assets may be subject or bound, or that relate to or are used or held for use in the operation of the Purchased Assets or Business, but subject to the rights of Purchaser not to assume specified Permits as contemplated by Section 2.3 (after taking into account all of the foregoing, the "Assigned Permits").

(k)    <u>Intangible Assets</u>. Any and all customer and supplier relationships, Intellectual Property, and other Intangible Personal Property of every kind (including the Computer Software, Trademark Intellectual Property and Website Intellectual Property, and uniform resource locator (URL) addresses, trade dress, logos, slogans, symbols and corporate names that constitute Intellectual Property) that relate to or are used in the operation of the Purchased Assets or Business, together with all rights appurtenant thereto (the "Assigned Intangible Assets");

(l)    <u>Books and Records</u>.  Original copies of the Transferred Rig Documents, Assigned Contracts, Assigned Permits, and Assigned Intangible

3

Assets and copies (paper or electronic, as reasonably requested by Purchaser) of all Books and Records (collectively, the "Transferred Books and Records"); and

(m)     Other Assets.   To the extent not otherwise enumerated in this Section 2.1, all other tangible or intangible assets, rights, privileges, benefits, Claims, and interests of Sellers, whether real, personal or mixed, of every kind and description and wherever located, that relate to, used in or held for use in the operation of the Purchased Assets or Business.

(n)     Causes of Action. Claims, counterclaims, demands and Causes of Action of Sellers identified in Schedule 2.1(n).

2.2     Excluded Assets.   Notwithstanding anything to the contrary in Section 2.1 or elsewhere in this Agreement or other Transaction Documents, the Purchased Assets shall not include, and Purchaser will not acquire any interest in or purchase the following assets which shall remain the property of the applicable Seller (collectively, the "Excluded Assets"):

(a)     Transaction Rights.   All rights of Sellers under this Agreement and the other Transaction Documents, and all cash and non-cash consideration (including the Cash Payment) payable or deliverable to, or on behalf of, Sellers by Purchaser pursuant hereto and thereto;

(b)     Contracts.   Any and all of the interests, rights, Claims, and benefits arising or accruing to any of Sellers under any Contract (including any Lease) that is not an Assigned Contract, including (but not limited to) those Contracts listed in Schedule 2.2(b) (the "Excluded Contracts");

(c)     Permits.   Any and all rights of Sellers under any Permit that is not an Assigned Permit, including (but not limited to) those Permits listed in Schedule 2.2(c) (the "Excluded Permits");

(d)     Insurance Benefits.   Any and all insurance benefits arising from or relating to Excluded Assets and Retained Liabilities;

(e)     Books and Records.   The Books and Records of Sellers that constitute charters, bylaws, limited liability company agreements, minute books, stock transfer records, and other records related to the corporate governance of Sellers (the "Retained Books and Records"); *provided, however,* that copies of the Retained Books and Records shall be supplied to the Purchaser upon request;

(f)     Third Party Property.   Any improvements, equipment, inventory and any other tangible personal property located at any of the Sellers' premises or on the Transferred Rigs as of the Closing Date in which the Sellers lack any legal, equitable, or beneficial interest; and

(g)     Equity Interests.   Any Equity Interest in any Seller;

4

(h)     Bankruptcy Claims and Causes of Action.   Any and all rights under this Agreement, and any rights, Claims, counterclaims, demands and Causes of Action of Sellers that relate to the Retained Liabilities, any and all avoidance Claims or Causes of Action arising under Chapter 5 of the Bankruptcy Code, and (except for Claims, counterclaims, Causes of Action and demands that are expressly described herein or in Schedule 2.1(n) as Purchased Assets), any and all Claims, counterclaims, demands, and Causes of Action of Sellers against any of their respective current or former directors, officers, attorneys, accountants, investment bankers, and other professionals, employees, Insiders, Affiliates, shareholders, members, or agents of each Seller, whether sounding in tort or otherwise arising under the Bankruptcy Code or applicable state law (the "D&O Claims") and/or arising or collectible under any directors and officers insurance policies;

(i)     Goodwill.   Any goodwill and going concern value related to the Business;

(j)     Cash.   All of Sellers' Cash or money on deposit with banks in post-petition checking or payroll accounts, including the Operating Accounts Balances as of the Closing Date;

(k)     Tax Refunds.   Any claim, right or interest of Sellers in or to any refund, rebate, abatement or other recovery for taxes, together with any interest due thereon or penalty rebate arising therefrom, for any tax period (or portion thereof) ended or ending on or before the Closing Date; and

(l)     Arbitration Receivable.   Any and all Claims or rights of Sellers in connection with the Arbitration Receivable.

2.3     Transfer of Contracts and Permits.

(a)     Notwithstanding anything herein or in the Plan to the contrary, any time within sixty (60) days after the Closing Date, Purchaser may designate any Contract or Permit that would otherwise be an Assigned Contract or Assigned Permit as a Contract or Permit to be excluded from the Purchased Assets for purposes of Section 2.l.  Any such designation by Purchaser shall eliminate any obligation of Purchaser in connection with any liabilities related to such designated Contract or Permit arising hereunder. .

(b)     Notwithstanding anything herein to the contrary, this Agreement shall not constitute an assignment to Purchaser of (and Purchaser shall not assume any rights or obligations under) any Contract or Permit if an attempted assignment thereof, without the Consent of a Governmental Authority or other third party thereto, would constitute a breach of the Contract or Permit, unless such Consent has been received or such assignment is otherwise authorized and permitted by the Transfer Order, the Confirmation Order, or other Order of the Bankruptcy Court.  The Transfer Order and the Confirmation Order shall provide that any

Assigned Contracts that are executory contracts or unexpired leases shall be assumed by Sellers and assigned to Purchaser at the Closing, and Sellers shall pay all pre-Closing cure amounts under Assigned Contracts required to be so paid by the Bankruptcy Court in connection with such assumptions by Sellers in accordance with the procedures set forth in the Plan of Reorganization (the "Cure Amounts").

2.4    Aggregate Consideration. Subject to the other terms of this Agreement, the aggregate consideration for the Purchased Assets shall consist of the following:

(a)    *Cash Contribution at Closing*.  If the Cash and projected Cash in the Operating Accounts Balances of the Sellers as of the Closing Date are insufficient to fund payments required under the Plan to Holders of Allowed Administrative Expenses, Professional Fees, Cure Costs, and other Allowed Claims payable in full in Cash on the Effective Date, then Solsten Drilling shall contribute such amounts, not to exceed $500,000 in the aggregate, as will enable the satisfaction of such payment obligations (the "Cash Contribution").  To the extent the Operating Accounts Balances are sufficient to pay such unpaid and Allowed Claims, then Solsten Drilling shall retain the $500,000 Cash Contribution for working capital or any other authorized corporate purpose.

(b)    *Consideration on Account of Allowed Class 2A Claims*.

(1)    In the event Plan Alternative A applies:

(A)    In accordance with the terms of the New Indenture, and as part of the purchase price, Solsten Drilling shall pay Holders of Allowed Class 2A Claims an amount equal to $25,955,000 (representing the principal amount arising under the Series 2009A Debenture).

(B)    Holders of Allowed Class 2A Claims shall be given a lien  on the Purchased Assets to secure the $25,955,000 in principal amount,  according to the same priorities and to the same extent as existed as of the Effective Date.

(C)    Following the Effective Date, interest shall accrue on the unpaid balance of the New Indenture  to Class 2A Claims at a rate of 5% per annum.

(D)    The Purchaser shall pay down the amount due under the Series 2011A Debentures, plus interest accruing thereon after the Effective Date, by paying the Indenture Trustee, for distribution to Holders of the Series 2011A Debentures, after deduction of reasonable Indenture Trustee Claims not reimbursed by the Liquidating Trustee, their Pro Rata share of $818,292.00 (the "Class 2A

6

Alternative A Guaranteed Payment") on or about the last Business Day of each of 40 successive calendar quarters, with the first such payment commencing on the last day of the first full calendar quarter following the Effective Date. The payments hereunder represent payments according to a mortgage amortization schedule.

(E)     Upon completion of the Class 2A Alternative A Guaranteed Payment, the liabilities of the Purchaser to the Holders of Allowed Class 2A Claims under the New Indenture and the Series 2011A Debentures shall be deemed extinguished and all liens and security interests arising thereunder shall be deemed released.

(F)     Payment of the Class 2A Alternative A Guaranteed Payment shall be further guaranteed by Solsten Funding.

(G)     Solsten Funding shall conduct a Dutch Auction to purchase Allowed Class 2A Claims no less than once in each calendar year using Excess Cash and, in the first Dutch Auction only, the Solsten Funding Contribution; *provided however*, that in no event will Solsten Funding be required to purchase such Allowed Class 2A Claims at an amount greater than 80% of their Face Amount. All purchased Allowed Class 2A Claims shall hold a lien against all Purchased Assets on a pro rata basis with all remaining Allowed Class 2A Claims.

(2)  In the event Plan Alternative B applies.  The entire Allowed Class 2A Claim, including accrued and unpaid interest thereon through the Petition Date plus attorneys' fees and other permitted charges, shall be treated as an Allowed Class 3 Claim and Holders of such Allowed Class 2A Claims shall receive their Pro Rata share of the distributions provided in the Plan to Holders of Allowed Class 3 Claims under Plan Alternative 3(B) and shall have no Claims or rights against Solsten Drilling or Solsten Funding.  In this event, Class 2A Claim holders shall have no lien rights.

(c)     *Consideration on Account of Allowed Class 2B Claims*.

(1)     The Purchaser shall issue to Holders of Allowed Class 2B Claims under the Series 2009B Debentures one (1) 3% Preferred Interest for each one dollar ($1.00) of principal amount of Allowed Class 2B Claims, all subject to the 3% Preferred Buyback Rights.

7

(2)     The rights of Holders of Allowed Class 2B Claims under the Trust Indenture shall be entirely extinguished.

(d)     *Consideration on Account of Allowed Class 2C Claims of Washington State Bank*.

(1)     In accordance with the terms of the New WSB Note, Solsten Drilling shall pay Holders of Allowed Class 2C Claims an amount equal to $4,504,177 (representing the principal amount owing to Washington State Bank as of the Petition Date), which is a portion of the Purchase Price.

(2)     Following the Effective Date, interest shall accrue on the Allowed Class 2C Claim at a rate of 5% per annum. The Purchaser shall pay down the amount due under the New WSB Note, plus interest accruing thereon, by paying Holders of Allowed Class 2C Claims their Pro Rata share of $190,156 (the "**Class 2C Guaranteed Payment**") on or about the last Business Day of each of 28 successive calendar quarters, with the first such payment commencing on the last day of the first full calendar quarter following the Effective Date. The payments hereunder represent payments according to a mortgage amortization schedule.

(3)     The Allowed Class 2C Claim shall be given a lien on the Purchased Assets according to the same priorities as existed as of the Effective Date to secure the New WSB Note in the principal amount of $4,504,177.

(4)     Solsten Funding shall conduct a Dutch Auction to purchase Allowed Class 2C Claims no less than once in each calendar year using Excess Cash and, in the first Dutch Auction only, the Solsten Funding Contribution; *provided however*, that in no event will Solsten Funding be required to purchase such Allowed Class 2C Claims at an amount greater than 80% of their Face Amount. All purchased Allowed Class 2C Claims shall hold a lien against all Purchased Assets on a pro rata basis with all remaining Allowed Class 2C Claims.

(5)     Upon completion of the Class 2C Guaranteed Payment, the liabilities of the Purchaser to the Holders of Allowed Class 2C Claims under the New WSB Note shall be deemed extinguished and all liens and security interests arising thereunder shall be deemed released.

(6)     Payment of the Allowed Class 2C Claims under the New WSB Loan shall be further guaranteed by Solsten Funding.

(e)      *Consideration on Account of Allowed Class 2D Claims of Octane Funding*.   The treatment of the Holders of Allowed Class 2D Claims depends upon the outcome of the Pending Series 2009 Avoidance Adversary Proceeding and the Prospective Octane Funding Avoidance Adversary Proceeding, as provided hereinafter:

(1)      **Plan Alternative 2D-(A):**  Subject to Section 6.4 of the Plan of Reorganization, if a Final Order is entered in favor of the Holders of Class 2A and Class 2B Claims in the Pending Series 2009 Avoidance Adversary Proceeding, or if a Final Order is entered against the Holders of Allowed Class 2D Claims in the Prospective Octane Funding Avoidance Adversary Proceeding, then the Allowed Class 2D Claim shall be treated as an Allowed Class 3 Claim and Holders of such Allowed Class 2D Claims shall receive their Pro Rata share of the distributions provided in the Plan to Holders of Allowed Class 3 Claims under Plan Alternative 3(A) and no consideration shall be paid by the Purchaser to Holders of Allowed Class 2D Claims.

(2)      **Plan Alternative 2D-(B):**  Subject to Section 6.4 of the Plan of Reorganization, if a Final Order is entered against the Holders of Class 2A and Class 2B Claims in the Pending Series 2009 Avoidance Adversary Proceeding and a Final Order is entered in favor of the Holders of Allowed Class 2D Claims in the Prospective Octane Funding Avoidance Adversary Proceeding, then the Allowed Class 2D Claim shall be treated as follows:

(A)      The Purchaser shall pay the entire amount of the Allowed Class 2D Claim, plus interest accruing thereon, by paying Holders of Allowed Class 2D Claims their Pro Rata share of such amount as represents 1/40th of the amount of their Allowed Class 2D plus accrued interest thereon (the "**Class 2D Contingent Guaranteed Payment**") on or about the last Business Day of each of 40 successive full calendar quarters following the date such Class 2D Claims are Allowed.

(B)      Following the Effective Date, interest shall accrue on the Allowed Class 2D Claim at the non-default contract rate.

(C)      The Liens securing the Allowed Class 2D Claims shall remain in full force and effect following the Effective Date according to the same

9

priorities as existed as of the Effective Date and according to the same terms and provisions of the existing loan documentation in respect of the enforcement of such Liens.

(e)    _Consideration on Account of Allowed Class 3 General Unsecured Claims_.  The consideration, if any, paid by the Purchaser to the Liquidating Trustee for the benefit of Holders of Class 3 Claims depends upon the outcome of the Pending Series 2009 Avoidance Adversary Proceeding and the Prospective Octane Funding Avoidance Adversary Proceeding.  Subject to Section 6.4 of the Plan of Reorganization, if a Final Order is entered in favor of the Holders of Class 2A and Class 2B Claims in the Pending Series 2009 Avoidance Adversary Proceeding, then the Purchaser shall make no payments to the Liquidating Trustee for the benefit of Holders of Allowed Class 3 Claims.  Conversely, subject to Section 6.4 of the Plan of Reorganization, if a Final Order is entered against the Holders of Class 2A and Class 2B Claims in the Pending Series 2009 Avoidance Adversary Proceeding, then the Holders of Allowed Class 3 Claims will be treated in accordance with the provisions of Plan Alternative 3(B), pursuant to which the Liquidating Trustee shall receive from the Purchaser $818,292 for distribution Pro Rata to Holders of Allowed Class 3 Claims on or about the last Business Day of each of 40 successive calendar quarters (less any amounts required to be paid separately to Holders of Allowed Class 2D Claims if (A) a Final Order is entered against the Holders of Class 2A and Class 2B Claims in the Pending Series 2009 Avoidance Adversary Proceeding and (B) a Final Order is entered in favor of the Holders of Allowed Class 2D Claims in the Prospective Octane Funding Avoidance Adversary Proceeding) (the "Class 3 Alternative B Guaranteed Payment"), with the first such payment commencing on the last day of the first full calendar quarter following the Effective Date.  Payment of the Class 3 Alternative B Guaranteed Payment shall be further guaranteed by Solsten Funding.

(f)    _Deposits_.

(1)    Upon execution of this Agreement (the "Execution Date"), Buyer shall have two (2) business days within which to deposit Fifty Thousand Dollars ($50,000) into a segregated escrow account to be held by counsel for the Indenture Trustee (the "Initial Earnest Money Deposit").   If the Purchaser terminates this Agreement prior to forty-five (45) days after first being given access to the Sellers' rigs, contracts, equipment, rolling stock, additional tangible assets, accounts and notes receivable, insurance benefits, books and records, prepaid deposits and expenses, claims and warranties, permits, intangible assets and other assets (the "Due Diligence Period"), plus any Permitted Extensions under Section 5.1(f)(4) hereof, then the Indenture Trustee shall instruct its counsel within two days of receiving written notice of the

Purchaser's intent to terminate to return the Initial Earnest Money Deposit to the Purchaser without deduction of any kind.  Purchaser may terminate at any time during the Due Diligence Period or Permitted Extension Period at Purchaser's sole discretion.

(2)    If the Purchaser does not terminate this Agreement prior to the end of the Due Diligence Period, plus any Permitted Extensions under Section 5.1(f)(4) hereof, then within two (2) business days after entry of the Disclosure Statement Order, Buyer shall deposit an additional Two-Hundred Thousand Dollars ($200,000) with counsel for the Indenture Trustee for a total deposit of Two-Hundred and Fifty Thousand Dollars ($250,000) (the "Final Earnest Money Deposit").

(3)    The Final Earnest Money Deposit shall be applied to the Purchaser's Cash Contribution obligation under Section 2.4(a) hereof if the Transfer Order is entered approving the 363 Sale to the Purchaser, the Confirmation Order is entered, and the Closing occurs.

(3)    If the Purchaser does not terminate this Agreement prior to expiration of the Due Diligence Period, plus any Permitted Extension under Section 5.1(f)(4) hereof, the Transfer Order is entered approving the 363 Sale to the Purchaser, the Confirmation Order is entered, no subsequent event constituting a material adverse change occurs and the Closing does not occur due to the solely to the Purchaser's  unwillingness to close, then the Final Earnest Money Deposit shall be retained by the Indenture Trustee as its sole remedy and liquidated damages under this Agreement (and not as a penalty).

(g)    _Payments in Advance of Entry of a Final Order in the Pending Series 2009 Avoidance Adversary Proceeding_.  In advance of entry of a Final Order in the Pending Series 2009 Avoidance Adversary Proceeding, the Purchaser shall timely tender all Guaranteed Payments to the Liquidating Trustee and, except as provided hereinafter, the Liquidating Trustee shall deposit $818,292 in an interest-bearing escrow account acceptable to the Indenture Trustee; _provided, however,_ that notwithstanding anything in the Plan or any other document related to the Plan to the contrary (including the Disclosure Statement, the Plan Supplement, the Liquidating Trust Agreement, and all Exhibits or schedules attached thereto), the Liquidating Trustee, after consultation with and obtaining the written authorization of the LTOC and the Indenture Trustee, shall be authorized if an Order is entered in favor of the Indenture Trustee in the Pending Series 2009 Avoidance Adversary Proceeding to make Distributions under Plan Alternative A to Holders of Allowed Claims in Class 2A, Class 2D, and Class 3 even if that Order shall not have become a Final Order.

2.5    Retained Liabilities.

(a)    Generally.  Subject to the terms of the Transfer Order, Sellers shall retain and be solely liable for and hereby expressly agree to retain any and all of their respective Liabilities not expressly assumed by Purchaser (collectively, the "Retained Liabilities"), regardless of whether any such Retained Liability is disclosed herein or in any Schedule hereto, whether known or unknown, absolute or contingent, liquidated or unliquidated, whether due or to become due, and whether Claims with respect thereto are asserted before or after the Closing Date. Notwithstanding the preceding sentence, Retained Liabilities shall include the following:

(1)    Transaction Liabilities. Any and all Liabilities of Sellers under the Transaction Documents;

(2)    Excluded Assets. Any and all Liabilities of Sellers with respect to the Excluded Assets;

(3)    Purchased Assets and Pre-Closing Business.  All Claims and Liabilities (including, without limitation, Taxes) arising out of Sellers' ownership, operation, use, or maintenance of the Purchased Assets or Business, as well as any matters arising from events occurring, conditions existing, or costs accruing prior to the Closing;

(4)    Contracts.  Any and all Liabilities of Seller, including Cure Costs, that relate to the Assigned Contracts to the extent any such Liability is performable or otherwise attributable to the period prior to the Closing;

(5)    Permits.  Any and all Liabilities of Sellers that relate to the Assigned Permits to the extent any such Liability is performable or otherwise attributable to the period prior to the Closing;

(6)    Taxes.  Any and all Liabilities of Sellers for Taxes that relate to (A) the ownership, operation, use, or maintenance of the Purchased Assets or Business prior to the Closing Date, or (B) any sales, use, transfer, or other similar Taxes imposed as a result of the consummation of the transactions contemplated by this Agreement;

(7)    Legal Proceedings/Causes of Action. Any and all liabilities of Sellers that relate to any legal proceeding (A) involving the Purchased Assets or Business, including warranty, personal injury, breach of contract, failure to perform, infringement, noncompliance with Law, and tort Claims, that is (1)

12

pending or threatened as of the Closing, or (2) commenced after the Closing but that arises out of or relate to any event, omission, or occurrence happening as of or prior to the Closing, or (B) set forth in Schedule 2.5(a)(7);

(8)  Legal Violations/<u>Environmental Liabilities</u>.  Any and all Liabilities of Sellers with respect to any violation of Law, including those arising from (A) the release, threatened release, presence, treatment, storage, disposal (including disposal at off site locations), handling, transportation or arrangement for transportation of hazardous substances prior to the Closing, (B) any failure of Sellers to comply in any respect with Environmental, Health, and Safety Laws prior to the Closing, and (C) any facts, events, or circumstances in existence prior to the Closing that give rise to Liabilities pursuant to Environmental, Health, and Safety Laws;

(9)  <u>Employee Benefit Plans</u>. Any and all Liabilities of Sellers, fiduciaries, or ERISA Affiliate under any Employee Benefit Plan maintained or contributed to by any Seller, fiduciary or any ERISA Affiliate or with respect to which any Seller, fiduciary or ERISA Affiliate has any Liability, whether prior to, on, or after the Closing, including any (a) failure to comply with all applicable Laws, (b) liability with respect to audits, inquiries, Proceedings, or Claims with any Governmental Authority with respect to any Employee Benefit Plan, (c) participation in any "multiemployer" plan (within the meaning of Section 3(37) of ERISA, whether or not governed by the provisions of ERISA) or withdrawal liability with respect to any multiemployer plan, (d) required employer contributions with respect to the Employee Benefit Plans, (e) accumulated funding deficiency, (f) Lien under ERISA or Section 412 of the Code, or (g) the termination of, or intent to terminate, any Plan;

(10)  <u>Employees</u>. Any and all Liabilities of any nature of Sellers or any fiduciary or ERISA Affiliate to Seller Employees that are not Transferred Employees, including Liabilities with respect to (a) any Contract, plan or policy, (b) wages, withholdings, overtime pay, minimum wage, employment Tax, vacation, sick pay, bonuses, severance pay, retirement, or other compensation, (c) benefits under Employee Benefit Plans, (d) the Worker Adjustment and Retraining Notification Act (WARN) of August 4, 1988 or equivalent state or local statutory or regulatory requirements, (e) any collective bargaining agreement or obligation or requirement under the National Labor Relations Act, (f) reporting, filing, hiring or other employment obligations with the Office of Federal Contract Compliance Programs, (g) all

13

immigration related obligations, including all requirements of the Immigration Reform and Control Act of 1986, (h) any governmental or administrative proceeding for the enforcement of labor and employment laws and regulations, and (i) all other employment and employment related federal, state and local statutes, regulations, administrative requirements, common laws, and public policies;

(11)    Intercompany Liabilities. Any and all Liabilities of Sellers for intercompany advances, charges, or accounts payable of any kind or nature;

(12)    Bankruptcy Claims. Any and all Claims filed against Sellers in their respective Bankruptcy Cases, except as provided specifically herein;

(13)    Broker Fees. Any and all fees, commissions, and other compensation to any broker, finder, or agent retained by any Seller; and

(14)    Claims and Warranties. Any and all Claims, warranties, reimbursements, and indemnities of Sellers, whether choate or inchoate, known or unknown, contingent or non-contingent.

(b)    Effect of Designation. The Retained Liabilities shall constitute Claims and alleged Claims in the Sellers' Bankruptcy Cases; provided, however, that nothing herein shall create any rights in favor of the holders of such Claims and alleged Claims or create any priority right of payment.

2.6    Purchased Assets Taken "As Is, Where Is", Free and Clear. It is understood that Purchaser takes the Purchased Assets "as is, where is."  Except as specifically set forth in this Agreement or the Transaction Documents, Purchaser explicitly acknowledges that Sellers make no representations or warranties, express or implied, with respect to the Purchased Assets or the Business.  The Transfer Order shall provide that the Purchaser is obtaining the Purchased Assets free and clear of any interests in such property, as provided in and to the maximum extent permitted by 11 U.S.C. §§ 363(b), (f).

# ARTICLE III
## CLOSING

3.1    Closing.  Provided that this Agreement shall not have been earlier terminated pursuant to Section 6.1, and further provided that all of the conditions set forth in Sections 5.1 and 5.2 to the obligations of the Parties to consummate the Contemplated Transactions (other than conditions with respect to actions each Party will take at the Closing itself) shall have been satisfied or waived, the closing of the Contemplated Transactions (the "Closing") shall take place at the offices of Watkins & Eager PLLC, The Emporium Building, 400 East Capitol Street,

14

Jackson, Mississippi 39201 at 10:00 a.m. Central Time on the date that is no earlier than the first Business Day following entry of the Confirmation Order, but no later than the thirtieth (30th) Business Day following such date, or such other date or location as Purchaser and the Indenture Trustee may mutually agree to in writing (the "Closing Date").

3.2  Risk of Loss.  The risk of damage, destruction, or other casualty loss to or of the Purchased Assets shall remain with Sellers from and after the execution of this Agreement until 11:59 p.m. on Closing Date, at which time Purchaser shall take possession of the Purchased Assets.  From and after the Closing, all risk of damage, destruction, or other casualty loss to or of the Purchased Assets shall be borne solely by Purchaser and to the fullest extent permitted by Law, Purchaser agree jointly and severally to indemnify, defend and hold Sellers and their respective officers, directors, equity owners, and agents harmless from against any and all Claims and pay any and all Damages (including for personal injury, property damage or loss, and third party suits) attributable to the Purchased Assets and arising from events first occurring or conditions first existing from and after the Closing.

3.3  Deliveries of Sellers. At the Closing, Sellers will deliver (or cause to be delivered) to Purchaser each of the following items:

(a)  Master Bills of Sale.  One or more Master Bills of Sale, each substantially in the form of Exhibit 3.3(a), duly executed by the appropriate Seller or Sellers and dated as of the Closing Date;

(b)  Assignments of Contracts.  One or more Assignments of Contracts, each substantially in the form of Exhibit 3.3(b), duly executed by the appropriate Seller or Sellers and dated as of the Closing Date;

(c)  Assignments of Intangible Assets. One or more assignments and assumptions of Intangible Assets, each substantially in the form of Exhibit 3.3(c), duly executed by the appropriate Seller or Sellers and dated as of the Closing Date; and

(d)  Miscellaneous. Any and all other documents, instruments, or agreements contemplated by this Agreement or as are necessary or appropriate or reasonably requested by Purchaser to fully consummate the Contemplated Transactions, in each case in form and substance reasonably satisfactory to Purchaser, duly executed, and dated as of the Closing Date.

3.4  Deliveries of Purchaser. At the Closing, Purchaser will deliver (or cause to be delivered) to Sellers each of the following items:

(a)  Cash Payment. The Cash Contribution, to the extent required under Section 2.4(a) hereof.

(b)  Corporate Authorizations. Copies of the resolutions of the Purchaser, certified by the Secretary or Assistant Secretary thereof as being correct and complete and then in full force and effect, authorizing the execution of this Agreement and the Transaction Documents to which it is a party and the