**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE: | BANKRUPTCY PROCEEDING |
| O&G LEASING, LLC | CASE NO. 10-01851 EE |
| JOINTLY ADMINISTERED WITH PERFORMANCE DRILLING COMPANY, LLC CASE NO. 10-01852 EE | |

**MOTION TO CONVERT TO CHAPTER 7 OR, IN THE ALTERNATIVE, MOTION TO APPOINT TRUSTEE**

COMES NOW Washington State Bank ("WSB"), by and through its attorney, and files this its Motion to Convert to Chapter 7 or, in the Alternative, Motion to Appoint Trustee, and in support thereof would show unto the Court the following:

1.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334, 28 U.S.C. §157, 11 U.S.C. §105, 11 U.S.C. §1112, 11 U.S.C. §1104 and related rules of the Federal Rules of Bankruptcy Procedure. This matter is a core proceeding.

2.

On May 21, 2010, O&G Leasing, LLC ("O&G") filed its petition under Chapter 11 of the United States Bankruptcy Code before the United States Bankruptcy Court for the Southern District of Mississippi. O&G has continued its business operations in the Chapter 11 proceeding as Debtor-In-Possession.

3.

On May 21, 2010, Performance Drilling Company, LLC ("Performance") filed its petition

under Chapter 11 of the United States Bankruptcy Code before the United States Bankruptcy Court for the Southern District of Mississippi. Performance has continued its business operations in the Chapter 11 proceeding as Debtor-In-Possession.

4.

On May 27, 2010, the Court entered its Order Granting Motion for Joint Administration for the two bankruptcy cases with O&G being the lead case.

5.

Prior to the filing of the bankruptcy petition, on December 5, 2008, O&G executed a promissory note to WSB in the principal amount of $5,250,000.00. The note was secured by Rig #48, related equipment and all revenues from Rig #48. WSB also received a guaranty from Performance and Ben O. Turnage.

6.

Rig #48 has continued to be utilized by the Debtor. Rig #48 has been leased and is continuing to generate revenues. The current day rate of Rig #48 is $14,500. All revenue of Rig #48 constitutes the cash collateral of WSB.

7.

The Debtor is also using three (3) other rigs and producing revenues.

8.

WSB does not consent to the use of its cash collateral. Section 363(e) provides that:

"Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of

such interest. .. "

WSB requests the Court to prohibit the use of its cash collateral.

9.

As of June 29, 2010, WSB was owed $4,463,557.69. At the time of this Motion, the WSB debt had grown to $4,991,849.57. <u>In the past fourteen (14) months since the filing of the bankruptcy petition, WSB has been paid nothing</u>. As a matter of fact, the Debtor has not paid any funds to First Security Bank, Indenture Trustee either, which is a $38 million creditor.

10.

What the Debtor has paid are administrative fees and expenses including, but not limited to, the following:

```
McCraney, Montagnet & Quin
    Legal Fees
    Four (4) Fee Applications        $258,953.99

Young Williams
    Legal Fees
    Four (4) Fee Applications        $430,584.15

Jones Walker
    Legal Fees                       $12,569.91

Lefoldt & Co.
    Accounting Fees
    Four (4) Fee Applications        $81,265.50


Summit Group Partners
    Accounting/Financial Fees        $12,812.50

Dell Group (insider)
    Management Fees
    $45,000/month x 14 months        $630,000.00
```

Total:        $1,426,186.05

This $1.4 million is in addition to all the actual operating expenses.

11.

On July 1, 2011, the Debtor filed its Disclosure Statement and Plan of Reorganization. The Debtor divides claims as follows:

| Class | Debtors Claims/Interests | Status | Voting Rights |
|---|---|---|---|
| Unclassified | Administrative, Tax & Priority Claims | Unimpaired | Not entitled to vote |
| 1 | WSB Secured Claim | Impaired | Entitled to vote |
| 2 | Senior Debentures Secured Claims | Impaired | Entitled to vote |
| 3 | Other Secured Claims | Impaired | Entitled to vote |
| 4 | General Unsecured Claims | Impaired | Entitled to vote |
| 5 | Unsecured Debenture Claims | Impaired | Entitled to vote |
| 6 | Octane Claims | Impaired | Entitled to vote |
| 7 | Unsecured Deficiency Claims | Impaired | Deemed to reject |
| 8 | Interest | Impaired | Deemed to reject |

(See Page 26, Section V.B. of Disclosure Statement)

Class 2 is WSB. Class 6 is an affiliate/insider debt. Octane is receiving an interest in the post confirmation debtor. Class 3 is Ally (GMAC). Class 4 is general unsecured claims while Class 7 is general unsecured deficiency claims. Further, Classes 2, 5 and 7 are creditors with a combination of claims. The classification of claims in the Debtor's Plan is questionable as to whether there is some discrimination.

12.

WSB's claim is now approximately $4.9 million. The debenture holders are owed approximately $37,934,225.50. Total for both is $42,834,225.50 (not including other claims). The Debtor cannot afford to pay the claims in full whether secured or unsecured. Any plan that is not 100% payout must be agreed to (accepted) or is not impaired (11 U.S.C. §1129(a)(8)). Without this requirement, the plan must not violate the absolute priority rule. Even though the Debtor claims that the interests in the Debtor LLC are cancelled (Class 8), the truth is there is no change because the Plan provides that:

(i) all assets and property of the Debtors shall vest in the Reorganized Debtors free and clear of all liens, claims, interests or encumbrances; and

(ii) Upon the Effective Date, the Reorganized Debtors will exist and be governed under the same corporate structure as the Debtors did prior to the Effective Date. O&G and Performance will both remain manager-managed Mississippi limited liability companies existing under their respective certificates of formation in existence on the Petition Date, and all authority for making corporate decisions will be vested in the manager. New limited liability company operating agreements will be executed, substantially similar in form and substance to those contained in the Plan Supplement for each Debtor. Each operating agreement will contain, to the extent required by §1123(a), prohibitions against issuance of non-voting equity securities. The Plan provides in Sections 6.2 and 6.3 that confirmation of the Plan will be deemed to constitute the express authorization for all corporate action necessary to be taken to

implement all actions necessary to consummate the Plan.

The officers, managers, management and senior-level employees for O&G and Performance will remain unchanged. *See* Section III.A.3., above. Ben Turnage, through Dell Group Holdings, LLC, an affiliate of the Debtors, will continue to serve as manager of both O&G and Performance and will continue providing management-level and administrative services to the Debtors. Mr. Turnage will continue being compensated through Dell Group Holdings, LLC. Grumpy Farmer will remain President and chief operating office of Performance and shall receive compensation through DGFI. Compensation for all management and senior-level employees will remain unchanged.

On Effective Date, the existing Interest in O&G held by Sajac will be cancelled as provided in the treatment of Sajac's Class 8 Claim. The newly issued Interests in O&G will be delivered to Octane, pro rata, as the sole Holders of such newly issued Interests. Performance will initially remain a wholly-owned subsidiary of O&G on the Effective Date. As provided in Section 6.4.3. of the Plan, no post-Effective Date corporate or other transaction relieves the Reorganized Debtors from its obligations under the Plan.

(See Page 33, Section VI. B & C of Disclosure Statement)

In reality, the Debtors are trying to sell and/or transfer the assets to one of its insider companies to get around the absolute priority rule because the Debtors' plan cannot stand up to the test of the absolute priority rule which is a requirement of confirmation.

13.

In short, the Debtor cannot get its Plan confirmed.

14.

At the first of this case, the Debtor requested and obtained an Order establishing a procedure to bill and be paid on a monthly basis (Docket No. 129). Over the last fourteen (14) months the professionals and management fees are all that have been paid. Section 331 allows interim compensation with professionals to file the appropriate applications only once ever 120 days.

15.

As noted above, Young Williams has requested and/or been paid $430,584.15. Early in the case Young Williams filed its Application and Affidavit for Employment (Docket No. 27) and received its Order Granting Employment on May 27, 2010 (Docket No. 35). However, in December 2010, Young Williams began representation of Ben Turnage in a lawsuit filed by WSB in Louisiana State Court. The case was removed to federal court in Louisiana and then transferred to this Court (Adversary Proceeding No. 11-00047). In the representation of Turnage, Young Williams has asserted as follows:

> "The plaintiff [WSB] is seeking to collect a disputed amount on a loan to which the defendant [Turnage] is a guarantor. The principal obligor on the loan is O&G. O&G's estate is being administered by the Bankruptcy Court for the Southern District of Mississippi. The loan instrument on which this action is based is the obligation of the bankruptcy estate. A judgment, and satisfaction of judgment, against the defendant would result in one claimant against the estate, the plaintiff, being

compensated in a manner different from other claimants, and would result in the defendant becoming a new claimant against the bankruptcy estate. Accordingly, the present action is 'related to' the Mississippi bankruptcy action, and should be referred to the Bankruptcy Court."

(See Turnage's Memorandum in Support of Motion to Transfer Case to Bankruptcy Court filed in *Washington State Bank v. Turnage, United States District Court for the Western District of Louisiana, Case No. 6:11-cv-0004-TLM-PJH*, Page 2 and 3, Docket No. 12-2)

Thus, by their own admission, Young Williams represents Turnage, a creditor with a claim up to almost $5 million against the Debtor.

16.

The Debtor has submitted a Plan which does not propose to pay WSB in full. Therefore, even if the Debtor was able to confirm its Plan and pay WSB, there is still a claim WSB will pursue against Turnage. And, according to Turnage, he will in turn have a claim against the Debtor (at least that is what has been represented to the Louisiana District Court in having the case transferred).

17.

Now, the Debtor's Plan (submitted by Young Williams) does not provide for any indemnity claims of Turnage to be paid by the Debtor. Therefore, it appears that in the Louisiana District Court, Turnage is entitled to indemnity and is a creditor. But in the United States Bankruptcy Court, Turnage is not a creditor and not entitled to indemnity. This is because, as everyone knows, Young Williams cannot represent a creditor of the bankruptcy estate and at the same time be representing the Debtor. There has to be a formal disclosure by Young Williams if there is representation of

Turnage and that he is a creditor. Since this has not been done, WSB would have to conclude that the representations in the Louisiana District Court are not true and Turnage is not a creditor.

18.

On the other hand, if Turnage is a creditor of up to $5 million, Young Williams has not disclosed that information or the questions of disinterestedness to the Court, the creditors of the bankruptcy estate or the Office of the United States Trustee. This Court will have to deal with that issue as it sees fit but, results can be severe (11 U.S.C. §328(e)). (See *In re Fish & Fisher, Inc.*, 2010 WL 5256992 (Bankr. S.D. Miss. Dec. 17, 2010); also found *In re Fish & Fisher, Inc.*, Bankruptcy Case No. 09-02747 EE, United States Bankruptcy Court for the Southern District of Mississippi, Docket No. 409).

19.

It is noted that the Disclosure Statement and Plan submitted by the Debtor and filed by Young Williams does provide for (i) Turnage to remain the manager of the Debtors, (ii) Turnage to be compensated through Dell Group, (iii) Turnage to receive a possible injunction for protection, (iv) Turnage to be granted a full and complete release by the Debtor, and (v) Turnage to be completely exculpated. The "Exculpation" provision in the Plan violates applicable Fifth Circuit Law. *See In re Pacific Lumber Co.,* 2009 WL 3082066, at *16 (5th Cir. Sept. 29, 2009). In *Pacific Lumber*, the court held that exculpation cannot extend to the Debtor's officers and directors. *See In re Pacific Lumber Co.*, 2009 WL 3082066, at *16 ("the essential function of the exculpation clause proposed here is to absolve the released parties [which include the debtors' officers and directors] from any negligent conduct that occurred during the course of the bankruptcy. The fresh start §524(e)

provides to debtors is not intended to serve this purpose.") Further, consistent with *Pacific Lumber*, the Plan should not release any non-debtor third parties, including the Debtor's officers or directors (Turnage). So why are these things being proposed for Turnage, a separate client of Debtors' counsel?

20.

Also, while the law firm of McCraney, Montagnet & Quin ("MM&Q") evidently has no direct representation of Turnage, MM&Q is co-counsel with Young Williams in the bankruptcy proceeding. MM&Q has had knowledge regarding Young Williams' dual representation. As co-counsel, MM&Q may have the same obligations of disclosure as Young Williams, or at least a disclosure obligation to the Debtor and the bankruptcy estate creditors and interested parties to provide the appropriate and correct information. Since MM&Q and Young Williams are both Debtors' counsel and co-counsel, they have the same duties and obligations.

21.

Pursuant to 11 U.S.C. §1112, the Court shall convert or dismiss a Chapter 11 case for cause. Cause is not defined and includes unlimited circumstances. This case was filed May 21, 2010. No payments have been made to WSB or the Indenture Trustee. These are the two main and largest creditors in the estate. A mediation completely failed. The Debtor filed a Plan because its time ran out to get something filed, but the Plan is flawed and cannot be confirmed. The Debtor has incurred and paid $1.4 million in professional and management fees. Since the filing date through June 2011 (13 months), the fees have been $1,426,186.05 or an average of $109,706.62 per month. There is no end in sight. There is litigation still pending and the Debtor has not even started the confirmation

process. The Indenture Trustee has filed a competing plan which in its simplest terms, is nothing more than a proposal to sell all the assets. There is no chance that the Debtors' Plan will be confirmed with the time frames established by the bankruptcy code. There is no reasonable likelihood of rehabilitation. There are issues with insider transactions and management. There are issues regarding Debtors' counsel and representation of Ben Turnage as an insider and creditor. The Debtors just have more debt than they can afford to pay. Prolonging this case serves no useful purpose for the pre-petition creditors of the estate.

22.

WSB requests the Court to convert the Chapter 11 case to Chapter 7.

23.

Or, in the alternative, the Court may appoint a trustee pursuant to 11 U.S.C. §1104. Grounds exist for the conversion but the Court has the discretion to appoint a trustee instead of conversion if it is in the best interest of the creditors and the estate. WSB has no objection to a Trustee if it is necessary to have an independent view of this case. The Debtor has not been able to present or confirm an acceptable plan. The current management may have kept the business operating, but no payments have been made to service debts, which is suppose to be the real focus and obligation of a Debtor-In-Possession. The Debtor needs to protect the estate, not just the owner's interest. The Court has the authority to appoint a trustee for cause which again is not defined but includes unlimited circumstances.

24.

If the Court looks at the posture of this case over the last fourteen (14) months including the

fact that nothing has been resolved, no payments have been made to creditors, the mediation attempt was a complete failure, the costs and expenses incurred and what appears to be never ending litigation over liens and plans, the appointment of an independent trustee would be in the best interest of the creditors and the bankruptcy estate.

25.

In the alternative to conversion, WSB requests the Court to appoint a Trustee. An independent Trustee is required insead of current management to protect the creditors of the bankruptcy estate. The Debtors' track record in this case proves it does not have the desire to pay creditors in a prompt and reasonable manner. The case needs to be policed by a disinterested party.

WHEREFORE, Washington State Bank requests the Court to find that its Motion to Convert to Chapter 7 or, in the Alternative, Motion to Appoint Trustee is well taken and should be granted.

          Respectfully submitted,

          WASHINGTON STATE BANK

    BY:   s / Derek A. Henderson
          DEREK A. HENDERSON
          ATTORNEY FOR WASHINGTON STATE BANK

**DEREK A. HENDERSON, MSB #2260**
**111 East Capitol Street, Suite 455**
**Jackson, Mississippi 39201**
**(601) 948-3167**
**d_henderson@bellsouth.net**

## **CERTIFICATE OF SERVICE**

I, DEREK A. HENDERSON, do hereby certify that I have this date served the foregoing Motion to Convert to Chapter 7 or, in the Alternative, Motion to Appoint Trustee , via the ECF Notification Service, which provides electronic notice to the all parties of record and the following:

O&G Leasing, LLC
125 S. Congress St, Ste 1610
Jackson, MS 39201

Performance Drilling, LLC
816 N. College St.
Brandon, MS 39042

Douglas C. Noble
McCraney, Montagnet & Quinn
602 Steed Rd, Ste 200
Ridgeland, MS 39157

Jim F. Spencer, Jr.
Watkins & Eager
PO Box 650
Jackson, MS 39205-0650

Robert L. Holladay, Jr.
Young Williams
PO Box 23059
Jackson, MS 39225-3059

Stephen W. Rosenblatt
Butler, Snow, O'Mara, Stevens & Canada
PO Box 22567
Jackson, MS 39225-2567

Office of the United States Trustee
501 E. Court Street
Suite 6-430
Jackson, MS 39201

Crews& Associates, Inc.
521 President Clinton Ave
Little Rock, AR 72201

First United Bank & Trust
1400 W. Main
Durant, OK 74701-4906

Unknown Bondholders
Reported Cusip #67084VAP3
First Security Bank
314 N. Spring St
Searcy, AR 72143

Sterne, Agee & Leach
11300 Cantrell Rd S, #101
Little Rock, AR 72212-1843

Octane Funding, LLC
125 S. Congress St, Ste 1610
Jackson, MS 39201

MCNB Bank & Trust
85 Wyoming St
Welch, WV 24801

IMS Capital Management
8995 SE Otty Road
Portland, OR 97266

Octane II Funding, LLC
125 S. Congress St, Ste 1610
Jackson, MS 39201

Steven Cauley
PO Box 25438
Little Rock, AR 72221

Sajac O&G Investors, LLC
125 S. Congress St, Ste 1610
Jackson, MS 39201

Hannah Kay Finley
1805 Wilaray Terrace
Cincinatio, OH 45230

Willis D. Shaw
1923 E. Joyce Blvd, Apt #330
Fayetteville, AR 72703

Murchison Living
38 Germany Court
Little Rock, AR 72223

Pruett Manufacturing
1001 W. Springhill Dr
Terre Haute, IN 47802

Christopher B. Allison
1800 N. Spruce St
Little Rock, AR 72207

Stephen E. Achon
6077 Wyndam Lane
Brighton, MI 48116

Nathan J. Ginsberg
7240 Isle of Palms Dr
Mobile, AL 36695

William H. Buckles
20 E. Plum St
Tipp City, OH 45371

David P. Chock
4389 Compton Way
Bloomfield Hills, MI 48302

    This, the 3rd day of August, 2011.

                                          s / Derek A. Henderson
                                          DEREK A. HENDERSON