**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| O&G LEASING, LLC, | ) | Case No. 10-01851 EE |
| PERFORMANCE DRILLING | ) | Case No. 10-01852 EE |
| COMPANY, LLC | ) | Chapter 11 |
| | ) | Jointly Administered |
| **Debtors** | ) | |

**PRELIMINARY OBJECTION OF ALAN BARKSDALE AND RED MOUNTAIN RESOURCES, INC. TO MOTION OF FIRST SECURITY BANK, AS INDENTURE TRUSTEE, FOR AN ORDER (A) ESTABLISHING SALES PROCEDURES IN CONNECTION WITH SOLICITATION OF OFFERS FOR SALE OF CERTAIN ASSETS; (B) APPROVING STALKING HORSE BID PROTECTION; AND (C) SETTING NOTICE OF OBJECTION DEADLINES AND DATES OF HEARINGS**

Alan Barksdale ("Barksdale"), in his individual capacity, and Red Mountain Resources, Inc. ("RMR", and collectively with Barksdale, the "Objecting Parties"), hereby jointly file this objection (the "Objection") to the *Motion of First Security Bank, as Indenture Trustee, for an Order (A) Establishing Sales Procedures in Connection With Solicitation of Offers for Sale of Certain Assets; (B) Approving Stalking Horse Bid Protection; and (C) Setting Notice of Objection Deadlines and Dates of Hearings* [Docket No. 441] (the "Sales Procedures Motion"), and respectfully represent as follows:

**I.**

**BACKGROUND**

1. Barksdale, in his individual capacity, is a holder of Series 2009 Debentures[1] issued by Debtor O&G Leasing, LLC.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Indenture Trustee Plan (as defined below).

29771 v1

2. Barksdale is also the Chief Operation Officer of RMR, an entity that, prior to the filing of this Objection, has expressed an interest in acquiring the Debtors' assets.

3. No trustee or examiner has been appointed in these cases. No official committee of unsecured creditors has been appointed by the United States Trustee.

4. On July 7, the Debtors filed their *Plan of Reorganization* [Docket No. 407] (the "Debtors' Plan") and the *Disclosure Statement for Debtors' Plan of Reorganization* [Docket No. 408] (the "Debtors' Disclosure Statement").

5. On July 26, 2011, the Indenture Trustee filed his competing plan, the *Indenture Trustee's Chapter 11 Plan for O&G Leasing, LLC and Performance Drilling Company, LLC* [Docket No. 423] (the "Indenture Trustee Plan"), and the *Disclosure Statement to the Indenture Trustee's Chapter 11 Plan for O&G Leasing, LLC and Performance Drilling Company, LLC* [Docket No. 425] (the "Indenture Trustee Disclosure Statement").

6. The sale proposed by the Indenture Trustee pursuant to the Sales Procedures Motion is the "lynchpin" of the Indenture Trustee Plan. Indenture Trustee Disclosure Statement, page 5.

## II.

## OBJECTION

7. Prior to the filing of this Objection, Barksdale, who is a Series 2009 Debenture Holder in his individual capacity, had, in his separate capacity as the CEO of RMR, made an offer to the Indenture Trustee, on behalf of RMR, to purchase the Debtors' assets on significantly better terms than the proposal of SolstenXP Drilling, LLC ("Solsten Drilling") referenced in the Indenture Trustee Plan. Furthermore, the Objecting Parties assert that certain aspects of the Sales Procedures proposed by the Indenture Trustee are highly inappropriate in these cases and should not be approved for the reasons set forth herein. Namely, (i) the Indenture Trustee has

failed to show that the Break-Up Fee is reasonable or appropriate; (ii) the Sales Procedures fail to provide sufficient oversight over the decisions of the Indenture Trustee and his professionals; and (iii) Solsten Drilling should not be approved as the Stalking Horse Bidder.

**A.    The Indenture Trustee has failed to show that the Break-Up Fee is reasonable or appropriate.**

8.    The proposed Sales Procedures include a Break-Up Fee of $500,000. Sales Procedures, page 1. However, neither the Sales Procedures Motion, the Indenture Trustee Plan, nor the Indenture Trustee Disclosure Statement explain how that amount was determined – i.e., as a percentage of the total consideration offered by the Purchaser, the actual amount of expenses incurred by Solsten Drilling, or some other rationale.

9.    It is well-established that "[a] break-up fee should constitute *a fair and reasonable percentage of the proposed purchase price*, and should be reasonably related to the risk, effort, and expense of the prospective purchaser." Official Committee v. Integrated Resources Inc. (In re Integrated Resources Inc.), 147 B.R. 650, 662 (S.D.N.Y. 1992) (emphasis added). Courts have generally taken one of two approaches when assessing the reasonableness of a break-up fee. Some courts have applied the "administrative expense" test articulated by the Third Circuit in Calpine Corp. v. O'Brien Envt'l. Energy Inc. (In re O'Brien Envt'l. Energy Inc.), 181 F.3d 527 (3d Cir. 1999). Other courts apply a less stringent business judgment standard such as that articulated in Integrated Resources.

10.   In Integrated Resources, the court used a modified "business judgment rule" to evaluate the validity of the proposed break-up fees, namely: "(1) is the relationship of the parties who negotiated the breakup fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price?" Integrated Resources at 657. Conversely, in O'Brien, the Third Circuit held

that under the circumstances of the particular case, the payment of a break-up fee was appropriate only if the fee was among the actual, necessary costs and expense of preserving the estate and therefore qualified as an administrative expense within the meaning of 11 U.S.C. § 503(b).  O'Brien, at 535.  The Third Circuit further stated that the business judgment rule should not be applied.  Id.  While a break-up fee to induce an initial bid is a permissible purpose in the bankruptcy context, it is impermissible to use it to advantage a favored purchaser over other bidders by increasing the acquisition cost to them.  Id.  See also, In re Reliant Energy Channelview LP, 594 F.3d 200, 206 (3d Cir. 2010) (break-up fee permissible where it induces party to make bid before auction or necessary to induce party to adhere to bid after auction).

      11.     Applying either the Integrated Resources or the O'Brien approach in these cases yields the same result:  the Break-Up Fee requested by Solsten Drilling is completely inappropriate and should not be approved.  First, the "purchase price" being paid by Solsten Drilling is derived entirely from the cash flow from the rigs and other assets that are being purchased.  This cash flow is to be used to make payments over time to the Debtors' creditors.  In other words, Solsten Drilling is putting up very little of its own cash to pay for the Debtors' assets.  The only cash commitment by Solsten Drilling are (i) up to $500,000 to fund Effective Date Cash payments to Administrative Expense Claims, Cure Costs, Professional Fees, and other Effective Date obligations under the Indenture Trustee Plan, and only if the Debtors' Cash on hand and "projected" Cash are insufficient; (ii) a $3 million capital contribution from SolstenXP to its wholly owned and controlled subsidiary, Solsten Funding; and (iii) a $1.5 million working capital credit facility from SolstenXP to support operations of Solsten Drilling.  Disclosure Statement, pages 6 and 10.  Thus, because the real consideration is derived from cash flow of future operations, the Break-Up Fee is totally unwarranted since it bears absolutely no

relationship to the risk, effort, and expense incurred by Solsten Drilling.  The worst case scenario for Solsten Drilling is that it might have to commit $500,000 to satisfy its conditional payment obligations on the Effective Date.  The Break-Up Fee requested by Solsten Drilling is <u>100% of this amount</u>.

       12.     In addition, the Indenture Trustee has failed to show either in the Sales Procedures Motion, the Indenture Trustee Plan, or the Indenture Trustee Disclosure Statement that the Break-Up Fee represents the actual amount of attorneys' fees, expenses, and third-party costs incurred by the Solsten entities.  Upon information and belief, Solsten Drilling has not even commenced due diligence.[2]  It follows that Solsten Drilling's due diligence expenses are minimal or non-existent.  Moreover, the Indenture Trustee has not demonstrated that the Break-Up Fee is a necessary cost of preserving the Debtors' estates.  The Indenture Trustee cannot show that no other party would have made a bid "but for" the Stalking Horse Bid and that as a result, the Stalking Horse Bid added value to the estate.  In fact, the record shows that there was no canvassing or solicitation to determine whether other offers could be obtained before the Indenture Trustee agreed to "chill" the bidding by requiring other interested parties to pay $500,000 as the price of entry into an auction.  RMR was an interested party before the Solsten Drilling proposal materialized, and the Indenture Trustee has advised that there have been other expressions of interest as well, presumably not as the result of Solsten Drilling's bid.  Accordingly, the Break-Up Fee will do <u>nothing</u> to encourage competing interest.  Such interest has always existed and the Break-Up Fee will serve only to discourage other proposals.

---

[2] Solsten Drilling's due diligence cannot commence until it is given access to the "Evaluation Materials" referenced in paragraphs 5-6 of the Indenture Trustee's Motion for Scheduling and Status Conference filed on August 5, 2011. (Doc. 440).  Upon information and belief, access has not yet been given by the Debtors.

29771 v1                        5

13. Furthermore, the Indenture Trustee has produced no evidence that the Break-Up Fee is either (a) reasonably related to the risk, effort, and expense incurred by Solsten Drilling, or (b) an actual, necessary cost of preserving the Debtors' estates[3]. Therefore, the Break-Up Fee is inappropriate and should be denied.

**B.    The Sales Procedures fail to provide sufficient oversight over the decisions of the Indenture Trustee and his professionals.**

14. The Sales Procedures are replete with provisions that give the Indenture Trustee substantial discretion and authority in overseeing the sale process (including, among other things, coordinating due diligence with Potential Bidders, determining whether any person or entity is a Qualified Bidder, evaluating and negotiating bids, and determining which bids should be the Lead Bid and the Secondary Bid). By singlehandedly wielding these powers, the Indenture Trustee could effectively eliminate a bid for any reason whatsoever. The Indenture Trustee is a fiduciary to Series 2009 Bondholders but not to the other constituents in these Chapter 11 proceedings. Based on this, the Indenture Trustee should not have unfettered discretion to determine, for example, whether a particular bid is a Qualified Bid or a Lead Bid. The Objecting Parties assert that if the Court authorizes the Indenture Trustee to exercise its discretion on any aspect of the proposed bid and sale procedures, in such case, the Objecting Parties and other parties in interest must be given the authority to seek Court intervention and that the Indenture Trustee's decision(s) abide the outcome of the Court's ruling.

---

[3] The Sales Procedures also provide that the "Break-Up Fee shall be paid in Cash from the proceeds of and concurrent with the closing of the Alternative Transaction *or as an Allowed Administrative Claim on the effective date of the Debtors' Plan in the event the Debtors' Plan is confirmed*." Sales Procedures, page 2 (emphasis added). In the event the Debtors' Plan is confirmed, the proposed Break-Up Fee cannot be paid as an administrative expense under 11 U.S.C. § 503(b) because that section allows only payment of administrative expenses that are "actual" and "necessary" expenses incurred and beneficial to the debtor's estate, neither of which is the case here.

29771 v1                                                              6

**C.    Solsten Drilling should not be approved as the Stalking Horse Bid.**

15.    The Indenture Trustee's proposed Sales Procedures seek to approve Solsten Drilling's proposal as the Stalking Horse Bid. In addition to the impropriety of approving any Break-Up Fee or other bid protection for Solsten Drilling, there is an insufficient record to approve Solsten Drilling's bid.

16.    The proposal made by RMR to the Indenture Trustee is much more beneficial to all of the estate's constituents than that of Solsten Drilling. Thus the Objecting Parties submit that before a record is developed concerning (i) a comparison of the RMR terms with those of Solsten Drilling; (ii) the expressions of interest made to the Indenture Trustee other than from Solsten Drilling; and (iii) the Trustee's marketing efforts prior to entering into a non-binding agreement with Solsten Drilling, it serves no purpose for the Court to approve a flawed and inferior proposal as a Stalking Horse Bid.

17.    In short, it is not beneficial to these cases to embark on a lengthy and expensive sales process, where the evidence will show that the Solsten Drilling proposal cannot be approved by the Court.

WHEREFORE, the Objecting Parties respectfully request that the Court (i) deny the Break-Up Fee and the other provisions of Sales Procedures Motion consistent with this Objection; (ii) authorize parties-in-interest to seek Court intervention to challenge the Indenture Trustee's decisions; (iii) deny approval of the Solsten Drilling proposal as the Stalking Horse Bid, and (iv) grant such other relief as deemed appropriate.

This the 2nd day of September, 2011.

        Respectfully submitted,

        */s/ John M. Lassiter* .
        Eric F. Hatten, MS Bar No. 10428
        John M. Lassiter, MS Bar No. 102235
        **Burr & Forman LLP**
        401 East Capitol Street, Suite 100
        Jackson, Mississippi 39201
        Telephone: (601) 355-3434
        Facsimile: (601) 355-5150
        ehatten@burr.com
        jlassite@burr.com

        and

        */s/ Michael D. Warner* .
        Michael D. Warner, (*Pro Hac Vice*)
        TX Bar No. 00792304
        Cole, Schotz, Meisel, Forman & Leonard, P.A.
        301 Commerce Street, Suite 1700
        Fort Worth, TX 76102
        Telephone: (817) 810-5250
        Facsimile: (817) 810-5255
        mwarner@coleschotz.com

        and

        */s/ Stuart Komrower* .
        Stuart Komrower, (*Pro Hac Vice*)
        NJ Bar No. 032751984
        Cole, Schotz, Meisel, Forman & Leonard, P.A.
        25 Main Street
        Hackensack, NJ 07601
        Telephone: (201) 525-6331
        Facsimile: (201) 678-6331
        skomrower@coleschotz.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Objection has been served on all parties via CM/ECF and/or by placing a copy in the U.S. mail, postage prepaid, to the following:

Robert L. Holladay, Jr., Esq.
E. Stephen Williams, Esq.
Young Williams P.A.
*Attorneys for Debtors*
210 E Capitol St Ste 2000
Jackson, MS 39201
Email: rob.holladay@youngwilliams.com
steve.williams@youngwilliams.com

Ronald H. McAlpin, Esq.
Office of the U.S. Trustee
501 East Court Street
Suite 6-430
Jackson, MS 39201
Email: ronald.mcalpin@usdoj.gov

Douglas C. Noble, Esq.
McCraney Montagnet & Quin, PLLC
*Attorneys for Debtors*
602 Steed Road, Suite 200
Ridgeland, MS 39157
Email: dnoble@mmqlaw.com

Office of the U.S. Trustee
A.H. McCoy Federal Building, Suite 706
100 W. Capitol Street
Jackson, MS 39269
Email: USTPRegion05.AB.ECF@usdoj.gov

Jim F. Spencer, Jr., Esq.
Paul H. Stephenson, III, Esq.
Watkins & Eager PLLC
*Attorneys for First Security Bank, as Trustee*
Post Office Box 650
Jackson, MS 39205-0650
Email: jspencer@watkinseager.com
pstephenson@watkinseager.com

Stephen W. Rosenblatt, Esq.
Christopher R. Maddux, Esq.
Butler, Snow, O'Mara, Stevens & Cannada, PLLC
*Attorneys for First Security Bank, as Trustee*
Suite 1400, 1020 Highland Colony Parkway
Ridgeland, MS 39157
Email: Steve.Rosenblatt@butlersnow.com
chris.maddux@butlersnow.com

Derek A. Henderson, Esq.
*Attorney for Washington State Bank*
111 E. Capitol St., Suite 455
Jackson, MS 39201
Email: d_henderson@bellsouth.net

Jeffery B. Kaiser, Esq.
Kaiser & Conrad, L.L.P.
*Attorneys for Gulf Coast International, L.L.C.*
1900 Bagby, Suite 200
Houston, Texas 77002
Email: jkaiser@kaiserconrad.com

Trent L. Rosenthal, Esq.
Beirne Maynard & Parson, LLP
*Attorneys for Indigo Minerals LLC*
1300 Post Oak Blvd., Ste. 2500
Houston, TX 77056
Email: trosenthal@bmpllp.com

Bradley J. Rome
Sr. Vice President Land
Indigo Minerals LLC
600 Travis St., Suite 4900
Houston, TX 77002
Email: b.rome@indigominerals.com

29771 v1                                  9

Eileen N. Shaffer. Esq.
*Attorneys for NFI Advisors, Inc.*
P.O. Box 1177
Jackson, MS 39215-1177
Email: enslaw@bellsouth.net

Marcus M. Wilson, Esq.
Bennett Lotterhos Sulser & Wilson, P.A.
Attorneys for Blue Cross & Blue Shield of
Mississippi Inc.
P.O. Box 98
Jackson, MS 39205
Email: mwilson@blswlaw.com

Joseph H Spiegel, Esq.
Joseph H. Spiegel, P.C.
*Attorneys for NFI Advisors, Inc.*
825 Victors Way, Ste. 300
Ann Arbor, MI 48108
Email: jhspclaw@aol.com

*/s/ John M. Lassiter*
OF COUNSEL